# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

DMITRIY SHIROKOV, on behalf of himself )
and all others similarly situated, )
)
     Plaintiff, )
)
v. )  Civ. A. No. 1:10-cv-12043-GAO
)
DUNLAP, GRUBB & WEAVER, PLLC; )
US COPYRIGHT GROUP; THOMAS DUNLAP; )
NICHOLAS KURTZ;  GUARDALEY, LIMITED; )
and ACHTE/NEUNTE BOLL KINO )
BETEILIGUNGS GMBH & CO KG, )
)
     Defendants. )
_____)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GUARDALEY LIMITED'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Dmitriy Shirokov ("Plaintiff") respectfully submits this response in opposition to Defendant Guardaley Limited's ("Guardaley" or "Moving Defendant") Motion to Dismiss the Second Amended Class Action (ECF No. 42) and its supporting memorandum of law (ECF No. 44, "Motion to Dismiss" or "MTD"), both filed May 18, 2011. For the reasons given in the following memorandum, the MTD should be denied.

## INTRODUCTION

Moving Defendant defrauded Plaintiff and thousands of similarly situated individuals (collectively, the "proposed Class" or the "Class"). Achte's copyright in its motion picture *Far Cry* was registered untimely, rendering it ineligible for awards of statutory damages or attorney's fees against any infringers. Despite this knowledge, Guardaley, Limited ("Guardaley") and its co-defendants acting as Achte's agents and/or co-conspirators—Dunlap, Grubb & Weaver, PLLC

("DGW"), US Copyright Group ("USCG"), Thomas Dunlap ("Dunlap"), and Nicholas Kurtz ("Kurtz")—misrepresented Achte's rights to the Copyright Office, federal courts, and Class members. In addition, Guardaley knew or had reason to know that many of members of the Class which it identified as infringers were innocent. Guardaley cannot sustain its burden on its MTD, which seeks to deny Plaintiff's injury and the well-pleaded claims in Plaintiff's Second Amended Class Action Complaint and Jury Demand (ECF No. 26; "Second Amended Complaint" or "SAC").

Most of Moving Defendant's arguments parrot arguments presented in motions to dismiss the SAC brought by its co-defendants DGW, USCG, Dunlap, and Kurtz (ECF No. 29, "DGW Motion") and by Achte (ECF No. 48), elsewhere refuted by Plaintiff. To avoid further duplication, Plaintiff will adopt arguments made in its opposition to the DGW Motion (ECF No. 32, "Opposition").

## STATEMENT OF FACTS

Achte is a German film production and distribution company that claims to own the copyright for the motion picture *Far Cry*. SAC ¶ 91, MTD p. 1. It is owned, in whole or in part, by Uwe Boll ("Boll"), *Far Cry*'s director and producer. *See* SAC ¶ 92. Boll has made dozens of films through Achte and/or other production companies that typically bear his name.[1] Boll's film copyrights have generally been registered with the U.S. Copyright Office prior to their release

---

[1] Boll's pre-*Far Cry* oeuvre included *Sanctimony* (copyright registered Sept. 8, 2000 to Boll Kino Beteiligungs, GmbH & Company KG); *Heart of America* (registered Feb. 13, 2002 to Dritte Boll Kino-Beteiligungs, GmbH & Co. KG); *House of the Dead* (registered July 7, 2003 to 3 Boll KINO Beteiligungs, GmbH und Co., KG); *Alone in the Dark* (registered March 19, 2004 by Dritte Boll Kino Beteiligungs, GmbH & Co. KG); Bloodrayne (registered April 11, 2005 to Vierte Boll Kino Beteiligungs, GmbH & Co. KG ); *Postal* (registered July 5, 2007 to Achte Boll Kino Beteiligungs, GmbH und Co., KG and Neunte Boll Kino Beteiligungs, GmbH und Co., KG); *Seed* (registered July 5, 2007 to Achte Boll Kino Beteiligungs, GmbH und Co., KG and Neunte Boll Kino Beteiligungs, GmbH und Co., KG); *In the Name of the King: A Dungeon Siege Tale* (registered Aug. 13, 2007 to Fuenfte Boll Kino Beteiligungs GmbH & Co. KG on basis of assignment from claimed author Vierte Boll Kino Beteiligungs GmbH & Co. KG).

dates. *Id.* ¶ 91.[2] But it failed to timely register *Far Cry*. *Id.* ¶¶ 93, 95-96. Achte released *Far Cry* in German theaters on October 2, 2008, and in United States theaters on December 17, 2008. *Id.* ¶¶ 99-100. *Far Cry* was released on DVD in the Netherlands on April 14, 2009; in the United Kingdom on September 7, 2009; and in Italy on October 14, 2009. *Id.* ¶¶ 101-103. The United States DVD release was on November 24, 2009. *Id.* ¶ 104. Achte's copyright registration application for *Far Cry* followed the film's first release by more than three months, so Achte cannot seek statutory damages or attorney's fees for any act of infringement that commenced before that date, pursuant to Section 412 of the Copyright Act (17 U.S.C. § 412).[3] *Id.* ¶¶ 9, 45, 95-96, 114, 128-129. But it has falsely persisted in doing just that. SAC ¶¶ 134, 141-143, 145-147, 154-160, 169-171, 179, 185, 187, 189-194 & Exhs. L, M, N, & P.

Achte's January 19, 2010 registration application falsely claimed that *Far Cry* was first published on November 24, 2009 in the United States[4]—giving the false impression that it was registered within Section 412's three-month savings clause. *Id.* ¶¶ 11, 105, 109. The application was filed on Achte's behalf by its counsel, Thomas Dunlap, a DGW managing partner. *Id.* ¶¶ 10, 36, 94, 111. The registration certificate issued by the Copyright Office reflected that materially false information. *Id.* ¶¶ 112, 124-125 & Exh. J. Pursuant to Section 412, the registration certificate would not have appeared to support claims for statutory damages or attorney's fees if it had stated the true publication history. *Id.* ¶¶ 109, 125-126.

---

[2] See also footnote 2 supra.

[3] Achte may pursue any actual damages suffered, not statutory damages or attorney's fees. 17 U.S.C. §§ 412, 504(a); SAC ¶¶ 107, 227.

[4] Boll's pre-*Far Cry* copyright registration applications typically made mention of the pre-existing source material that served as the basis of the film applied for. For example, the copyright registration for Boll's motion picture *Sanctimony* states the pre-existing registration of its screenplay. Likewise, pre-existing copyright registration information can be found in the following Boll motion picture registrations: *Postal*, *In the Name of the King: A Dungeon Siege Tale*, *Seed*, *Alone in the Dark*, and *House of the Dead*. The *Far Cry* application omitted such references to its prior history.

Achte initiated a lawsuit (the "Achte action") in the United States District Court for the District of Columbia by filing a complaint on March 18, 2010, alleging copyright infringement by 2,094 Class members, including Plaintiff, listing their IP addresses and alleged dates and times of infringement. *Id.* ¶¶ 134, 138-139. Achte's counsel DGW sought subpoenas from that court, which they then issued to the Class members' Internet Service Providers ("ISPs"). SAC ¶ 135-136. On behalf of Achte, DGW sent a letter signed by Kurtz to Plaintiff and to each other Class member whose address was provided by the ISPs, describing the copyright infringement lawsuit against them and claiming an intention to seek remedies, including statutory damages of up to $150,000 and attorney's fees, if the claim was not settled. *Id.* ¶¶ 136-137, 158-184 & Exh. N. On May 12, 2010, Achte filed an amended complaint in the Achte action against all 4,577 members of the Class. *Id.* ¶ 142 & Exh. M.

Almost none of the Class members were subject to jurisdiction in the District of Columbia, where the Achte action was filed. SAC ¶¶ 199-201, 213. Many Class members informed the Court in the Achte action that they lived in remote locations and/or moved to dismiss on jurisdictional grounds, and the Court ordered Achte to show cause why those outside its jurisdiction should not be dismissed. *Id.* ¶ 204. On November 19, 2010 the Court, noting the jurisdictional issues, ordered Achte to file a second amended complaint against only those Class members "over whom [Achte] reasonably believes the Court has personal jurisdiction and whom it wants to sue" or otherwise continued to claim as subject to that Court's jurisdiction. *Id.* ¶ 208. On November 24, 2010, Plaintiff filed his proposed class action against Achte and its co-defendants, seeking redress for their fraudulent pursuit of remedies barred by the Copyright Act. *Id.* ¶ 210. On December 6, 2010, Achte, by and through the Moving Defendants, filed a second amended complaint making a single Class member a named defendant and alleging infringement by 139 unnamed others, and filed a notice of dismissal of its claims against all other 4,437 members of the Class, including Defendant. *Id.* ¶ 209. Since those claims were dismissed, and after Plaintiff filed this class action, Achte has

filed an additional sixteen lawsuits against select Class members individually.[5] *Id.* ¶¶ 212, 214. Achte filed four of those lawsuits in the United States District Court for the District of Massachusetts[6] on February 16, 2011, and another four the next day in the United States District Court for the Middle District of Florida.[7]

Achte has been on notice that its claims for heightened damages are without merit since, at latest, its first notice of the complaint in this action. But it has continued to pursue them. In the Achte action (as originally filed in March 2010, and as amended in May and December) and in its sixteen more recent lawsuits, and in its agents' communications with the Class, Achte claims entitlement to, and prays for relief including, statutory damages and attorney's fees. *Id.* ¶¶ 216-217.

## STATEMENT OF FACTS SPECIFIC TO GUARDALEY

Guardaley is a German technology company located at Rubensstraße 31, 76149 Karlsruhe, Germany. It lists a drop box as its principal office in the United Kingdom, and employs a sales representative, Barbra Mudge, in California. SAC ¶ 38, Exhibit A. Guardaley monitors and records online instances of alleged copyright infringement of films. SAC ¶ 4.

USCG, Guardaley's partnership with DGW, advertises itself as providing the film industry a means to collect copyright infringement claim settlements far in excess of any actual damages suffered, while avoiding trials on the merits. SAC ¶¶ 75-82. To gain the power to compel records from an ISP, the copyright holder must first file a complaint to get the power to subpoena. On the basis of Guardaley's records, DGW files a single civil complaint against thousands of individuals and petitions the Court to issue subpoenas to Internet Service Providers ("ISPs"), seeking contact

---

[5] Achte had filed eight such individual infringement suits as of February 9, 2011, when Plaintiff's Second Amended Complaint was being prepared.

[6] *Achte v. Hennessy*, Case No. 1:11-cv-10266; *Achte v. Peatfield*, Case No. 1:11-cv-10267; *Achte v. Plebaniak*, Case No. 1:11-cv-10268; *Achte v. Ross*, Case No. 1:11-cv-10269 (each D. Mass. Feb. 16, 2011).

[7] *Achte v. Canales*, Case No. 1:11-cv-00069; *Achte v. Palmer*, Case No. 1:11-cv-00070; *Achte v. Zimmerman*, Case No. 1:11-cv-00071; *Achte v. Felix*, Case No. 1:11-cv-00072 (each M.D. Fla. Feb. 17, 2011).

information for the alleged infringers. SAC ¶ 6. The information provided by Guardaley, as they admit themselves, therefore, is the gateway to implementing the Copyright Scheme.[8]

Guardaley, in conjunction with DGW, manages and does business as USCG. Guardaley consists of two employees, Patrick Achache and Benjamin Perino, and two sales representatives, Barbra Mudge and Mark Schneider.

Guardaley portrays itself as a mere servant to USCG and its clients.[9] But Guardaley has a far more significant role. "Guardaley identifies the IP addresses of suspected infringers, logs all necessary data, and turns this information over the lawyers. But the firm is deeply implicated in the US Copyright Group, not just a mere contractor." *See* Exhibit B p.8. At least one of the managers of USCG, Benjamin Perino, is also a managing director of Guardaley. SAC ¶ 73.

> As a Manager of the USCG, I am responsible for coordinating the USCG's worldwide enforcement effort against internet piracy, which necessarily includes enforcement within the District of Columbia. My duties include supervision of our online copyright infringement campaign, identification and development of Internet anti-piracy technologies, identification of online torrent (see definition and description below in paragraph 7) copyright infringers, and I also assist with coordination of Internet antipiracy efforts around the globe.

*See* Declaration of Benjamin Perino, Doc. 4-1, ¶ 2, No. 1:10-cv-00452-RMC (D.D.C. filed Mar. 18, 2010).

Other law firms in the copyright settlement business regard DGW and Guardaley as having an agency relationship, in which Guardaley, not DGW, pulls the strings. ACS Law, run by Andrew Crossley, was a United Kingdom law firm known for its actions against persons allegedly infringing copyrights through peer-to-peer file sharing. When Crossley sought to

---

[8] Memorandum of Law in Support of Defendant Guardaley Limited's Motion to Dismiss the Second Amended Class Action Complaint, Doc. 44, at p.3, *Shirokov v. DGW, et al*, No. 1:10-cv-12043-GAO (D. Mass. filed May 18, 2011); Declaration of Patrick Achache in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, Doc. 4-2, at ¶ 12, *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577*, No. 1:10-cv-00452-RMC (D.D.C. filed March 18, 2010).

[9] Memorandum of Law in Support of Defendant Guardaley Limited's Motion to Dismiss the Second Amended Class Action Complaint, Doc. 44, at p.2.

involve DGW in a collaborative venture, he introduced himself to Dunlap in an email stating as follows:

> "I own and operate the most prolific firm in the UK that identifies and pursues copyright infringements committed through peer to peer networks ... I have a growing number of clients, existing and potential, including US based copyright owners and are actively looking to expand our work into the US, especially because of the ability to receive statutory damages for infringement and jury-awarded assessments of damages. **I note that you act for Guardaley**, a client of the person who introduced the file sharing work previously carried out by Davenport Lyons in the UK to my firm. It is a small world!"

Exhibit B at pp.6-7.

This interpretation, that it is Guardaley who runs the Copyright Scheme, or at the very least maintains a partnership role, is supported by an email from Guardaley to Baumgarten Brandt ("Baumgarten"), a German law firm. In an email dated December 10, 2008, long before the emergence of USCG, Guardaley solicits Baumgarten in the development of a Copyright Scheme. *See* Exhibit C. In pertainent part, Guardaley refers to the proposed relationship as one *"between Guardaley as the data provider and the law offices as acting partner."*

Guardaley does not traffic solely through intermediary law firms; it has operated a sales division in Los Angeles since at least early 2010, headed by Barbara Mudge, to directly solicit client business. Mudge is also a board member of the Independent Film & Television Alliance, whose members include Boll AG and several other USCG clients. *See* Exhibits A, D and E.

On November 10, 2009, DGW informed the Virginia State Corporation Commission that USCG was a fictitious name for DGW. *See* Exhibit F. Guardaley had begun its share of work as part of USCG more than six months before, when it began tracking Internet distribution of *The Gray Man*. *The Gray Man* is distributed by Worldwide Film Entertainment ("Worldwide"), whose CEO, not coincidentally, is Barbara Mudge. Worldwide became one of the first studios to bring suit under the USCG model in January 2010. Dunlap and Mudge recently presented at a

symposium "The Scope of Illegal Downloading and Film Piracy" at Widener Law's Delaware campus. *See* Exhibit G.

At least as early as January 5, 2011, Baumgarten informed Mudge that there were serious questions as to the reliability of Guardaley's methods in identifying infringers. *See* Exhibit H; Exhibit I p. 3. Guardaley itself, if it hadn't known before, was on notice as early as **November 18, 2009**. *See* Exhibit I pp. 5-6 and pp. 9-11; Exhibit J; and Exhibit K.[10]

In fact, Baumgarten, who had entered into a relationship with Guardaley, filed suit after it discovered that Guardaley was aware of the flaws but chose not to disclose them. CITE In its appeal to an injunction brought by Guardaley, Baumgarten asserted that when identifying alleged infringers, Guardaley:

1.    includes mere inquiries, regardless as to whether any file was actually shared;

2.    identifies people who neither upload or download;

3.    operates a 'honeypot'—that is they represent "by means of a falsified bit field, that it was always in possession of 50% of the file being sought." If the actual file is being offered than an implied license is operative. If it is a garbage file, than no infringement occurs. In either instance, IP addresses are being identified that did not infringe; and

4.    does not indicate how it identifies each IP address, so there is no way to discern actual infringers from the innocent.

Id.

---

[10] Exhibit I is the English translation of Exhibit H; and Exhibit K is the English translation of Exhibit J.

On May 3, 2011, the State Court of Berlin found the allegations above to be truthful, and ruled against Guardaley. The "honeypot" allegation is further substantiated by paragraph 8 of Achache's Declaration in the underlying Achte action.

> All of the torrent infringers named as Doe Defendants were identified in one of two ways. We either:(1) searched for files corresponding to Plaintiff's motion picture title *"Far Cry"* and then identified the users who are offering the files for unlawful transfer or distribution; or (2) **reviewed server logs obtained from P2P networks** to determine the users who were offering the files of this copyrighted movie. In the first identification method, we used the same core technical processes that are used by the P2P users on each respective network to identify users who are offering the *"Far Cry"* motion picture files on the network, or to directly locate the files of the film. **In the second identification method, we reviewed the same data that would be available to the operator of a server that is part of the P2P network.** Under the first method of identification, any user of a P2P network can obtain the information that is obtained by us from the P2P network. **Under the second method of identification, any operator of a server that is part of the P2P network can obtain the information that is obtained by us from the P2P network.**

As P2P networking does not enlist the use of a central server, Guaradley must be accessing its own, implying the use of a honeypot. Or accessing the computers of the Class without authorization, implying a violation of the CFAA.

Despite these facts, Guardaley continues its charade of innocence and persists in casting its technology and methodology for identifying infringers in terms of absolutes.

### STANDARD OF REVIEW

"A motion to dismiss tests the legal sufficiency of the complaint, not the plaintiff's likelihood of ultimate success." *Canney v. City of Chelsea*, 925 F. Supp. 58, 63 (D. Mass. 1996) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *Sheridan v. Int'l Bhd. of Elec. Workers, Local 455*, 940 F. Supp. 368, 372 (D. Mass. 1996). In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the

plaintiff the benefit of all reasonable inferences therefrom." *Vernet v. Serrano-Torres*, 566 F.3d 254, 258 (1st Cir. 2009) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F. 3d 1, 5 (1st Cir. 2007)). "While a defendant may seek dismissal under Rule 12(b)(6) for failing to state a claim upon which relief can be granted, a complaint only requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Krasnor v. Spaulding Law Office*, 675 F. Supp. 2d 208, 209 (D. Mass. 2009) (quoting Fed. R. Civ. P. 8(a)(2)). "According to the Supreme Court, this means that a plaintiff must allege enough facts so that the claim is 'plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). That is, "the factual content pled should 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 209-10 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "At bottom, a complaint will survive a Rule 12(b)(6) dismissal if 'the facts, evaluated in [the required] plaintiff-friendly manner, contain enough meat to support a reasonable expectation that an actionable claim may exist.'" *Id.* at 210 (quoting *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F. 3d 48, 51 (1st Cir. 2008)).

A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Despite the particularity requirement, a plaintiff "need not plead all of the evidence or facts supporting his claim." *United Air Lines v. Gregory*, 716 F. Supp. 2d 79, 85 (D. Mass. 2010). "Rule 9 requires a specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1996).

## ARGUMENT

### I. Guardaley Is Subject To Jurisdiction In Massachusetts.

Guardaley may be sued in Massachusetts for its tortious acts within the Commonwealth.

### A. Plaintiff Need Only Make a Prima Facie Showing of Personal Jurisdiction.

"The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002) (citing *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995) and *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992)). "The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675. The prima facie approach is appropriate in this case, and Guardaley has not contended otherwise. See MTD p. 5. "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing … the 'prima facie' standard governs its determination." *Edvisors Network, Inc. v. Educ. Advisors*, Inc., 2010 U.S. Dist. LEXIS 131822, *2-3 (D. Mass. Oct. 12, 2010) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)). "The court will 'take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim.'" *Id*. at *3 (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)). "It will then 'add to the mix facts put forward by the defendants, to the extent that they are uncontradicted.'" *Id*. (quoting *Mass. Sch. of Law*, 142 F.3d at 34). When applying the prima facie standard, "the district court acts not as a factfinder, but as a data collector. That is to say, the court, in a manner reminiscent of its role when a motion for summary judgment is on the table, *see* Fed. R.Civ.P. 56(c), must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Foster-Miller*, 46 F.3d at 145.

**B.     Guardaley Is Subject to Both General and Specific Jurisdiction in Massachusetts.**

"A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." *Mass. Sch. of Law*, 142 F.3d at 34. Guardaley is subject to both general and specific jurisdiction in Massachusetts, so this Court may exercise either form.

In either case, personal jurisdiction is appropriate only if the defendant falls within the Massachusetts long-arm statute, Mass. G.L. c. 223A § 3, and jurisdiction comports with due process. "Because the Massachusetts Supreme Judicial Court has interpreted the state's long-arm statute to extend to the limits permitted by the United States Constitution, the court may sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Newman v. European Aeronautic Defence & Space Co. EADS N.V.*, 700 F. Supp. 2d 156, 163 (D. Mass. 2010) (internal quotations omitted); *accord Edvisors Network*, at *12-13.

1.   **Guardaley Has Had Sufficient Contacts with the Forum to Justify This Court's General Jurisdiction.**

"To justify the exercise of general jurisdiction, (1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances." *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010) (citing *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005)). The fact that a defendant does not maintain a place of business within the state is not dispositive of this inquiry. See *Snyder v. Ads Aviation Maintenance*, 11 Mass. L. Rep. 97, 2000 Mass. Super. LEXIS 5, *1-16 (Mass. Super. Ct. Jan. 10, 2000) (denying out-of-state defendant's Rule 12(b)(2) motion to dismiss). Sufficient contacts are shown where the defendant has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit." *Daynard*, 290 F.3d at 51 (quoting *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)). In a federal question case, "the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment .... [and] the Constitution

requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case)." *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (citing *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991) and *Trans-Asiatic Oil, Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, 959 (1st Cir. 1984) ("Federal jurisdiction being national in scope, due process only requires sufficient contacts within the United States as a whole.").

Guardaley's contacts with the United States have been continuous and systematic. Guardaley compiled the IP addresses of purported infringers of *Far Cry*, identifying the ISP of each accused infringer and the date and time of each alleged copyright infringement. SAC ¶ 198 & n. 60 (citing Declaration of Patrick Achache in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, No. 10-453 (D.D.C. Mar. 18, 2010)). Between September 17, 2009 and February 9, 2010, Guardaley tracked the usage of the 2,094 alleged infringers of *Far Cry* identified in the first complaint in the Achte action (SAC ¶ 134 & Exhibit L), including at least thirty at IP addresses located in Massachusetts. See Declaration of Erin Fitzgerald ("Fitzgerald Decl.") ¶ 6, attached hereto as Exhibit L, and Exhibit A thereto. In support of Achte's motion seeking subpoena power, Patrick Achache, Guardaley's director of data services, submitted a declaration dated December 31, 2009 but filed on March 18, 2010 along with the complaint in the Achte action. Declaration of Patrick Achache in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, No. 10-453 (D.D.C. Mar. 18, 2010); see SAC n. 60. In that declaration, Achache stated "USCG and Guardaley continue to monitor, on an on-going and continuous basis," alleged infringements of *Far Cry*, and identifying alleged infringers. Id. ¶ 18. By that declaration, Guardaley conceded that its contacts with the forum are and have been continuous. Between September 17, 2009 and May 5, 2010, Guardaley tracked the usage of 4,577 alleged infringers—the Class identified in the first amended complaint in the Achte action. See SAC ¶ 142 & Exhibit M. Of those,

Guardaley tracked at least 93 to computers with IP addresses located in Massachusetts. See Fitzgerald Decl. ¶ 6.[11]

But Guardaley's role in the USCG litigation has not been limited to *Far Cry*. Guardaley has partnered with DGW, a United States law firm, to apply its copyright model to United States film plaintiffs and thousands of United States defendants through USCG, establishing sufficient minimum contacts with the forum. Guardaley began engaging in business in the United States even before USCG was formed. Since at least as early as April 2009, Guardaley has targeted computers with IP addresses located within the United States, monitored their Internet usage, and provided the results to its partners in USCG to yield further settlements. Guardaley developed the technology and the methodology underpinning the USCG model. In the past 2 years, Guardaley has monitored and compiled more than 62,000 U.S. IP addresses for use in ten different USCG cases. Each week Guardaley continues to add more names to its lists; in an average week Guardaley accesses and tracks the Internet usage of more than 500 IP addresses within the United States. More than 100 of those alleged infringers tracked by Guardaley in cases other than the Achte action belong to likely Massachusetts users. Fitzgerald Decl. ¶ 12 & Exh. B.

Guardaley portrays itself as remote from Plaintiff's claims. MTD p. 9. But Guardaley has been a primary participant in structuring the USCG litigation, including the Achte action. Guardaley is far from an innocent servant; it is the apparent source of the USCG business model. *See* Exhibit C. Guardaley provided DGW not only its technological tools but also the strategic and tactical methods it had used in earlier cases in other countries. *Id.* In a December 10, 2008 email from Guardaley's Patrick Achache to German attorney Philipp Brandt, Guardaley solicited Brandt's law firm as a potential partner in its copyright infringement litigation model. *Id.*

---

[11] Guardaley has accessed and tracked Massachusetts computers over many months. In the *Far Cry* case alone, it accessed and tracked at least 47 Massachusetts computers in 2009 (four in September, four in October, five in November, and thirty-four in December) and 45 in 2010 (sixteen in January, fourteen in February, eight in March, six in April, and one in May). Fitzgerald Decl. ¶ 8.

Describing Guardaley as "specialised in producing forensic technical evidence for criminal and civil rights proceedings," Achache stated, "[w]e are searching for a strong partner allowing us to claim damages from several hundred infringers to stop them to spread our client's product ..." Id. Achache's reference to "our client's product" indicates that Guardaley contracts directly with film studios, not only through intermediary law firms. The extent of Guardaley's direct agreements with Achte and other DGW clients is a matter of fact to be determined by discovery. But it is already clear that Guardaley has operated a sales division in Los Angeles since at least early 2010, headed by Barbara Mudge, to directly solicit client business. *See* Exhibit A.

On November 19, 2009, five days before DGW applied to register Achte's copyright using materially false information, DGW filed its application for the "US Copyright Group" trademark. See SAC Exhibit F. Guardaley had begun its share of work as part of USCG more than six months earlier, when it began tracking Internet distribution of *The Gray Man* distributed by Worldwide. Worldwide became one of the first studios to bring suit under the USCG model in January 2010. Guardaley tracked Massachusetts IP addresses and alleged infringements by Massachusetts computers at least as early as April 6, 2009, according to an exhibit accompanying Worldwide's *Gray Man* complaint; Guardaley tracked users in the United States at least as early as March 8, 2009.

Guardaley is subject to jurisdiction in this Court to the same extent as USCG, "where there is confused intermingling between corporate entities or where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control." *Am. Home Assurance Co. v. Sport Maska, Inc.*, 808 F. Supp. 67, 73 (D. Mass. 1992). Benjamin Perino, the Managing Director of Guardaley, is also one of the four Managers of USCG. Guardaley has held itself out as a partner in USCG. SAC ¶ 73 & n. 33. DGW and USCG often state that it is *USCG*, not Guardaley, that conducts the monitoring. See SAC ¶ 81 & Ex. G (USCG's LinkedIn web page: "Our unique partnerships allow us to monitor filing sharing [*sic*],

uploads and downloading."); http://www.dglegal.com/dgw-blog/the-mechanic-conan-producers-hire-us-copyright-group.html (DGW blog post dated Feb. 1, 2011; "As has been widely reported, the US Copyright Group monitors the illegal uploading and downloading of its clients' motion pictures ..."). Other law firms in the copyright settlement business regard DGW and Guardaley as having an agency relationship, in which Guardaley, not DGW, pulls the strings. When Andrew Crossley sought to involve DGW in a collaborative venture, he observed: *I note that you act for Guardaley.* Exhibit B. Due to Guardaley's agency in USCG and/or its partnership with DGW, it is estopped from denying that it is subject to personal jurisdiction. *Daynard*, 290 F.3d at 55-57; see *id.* at 56-57 ("Even if the defendants' relationship were to fall slightly outside of the confines of these specific doctrines, the question before us is whether a sufficient relationship exists under the Due Process Clause to permit the exercise of jurisdiction, not whether a partnership, joint venture, or other particular agency relationship between the two defendants exists.").

Guardaley plays a central role in USCG, but Guardaley and DGW have deliberately obscured their respective roles within USCG and the Copyright Scheme. USCG's website does not identify its officers, members, or mailing address. See, e.g., Marcia Coyle, *Rights Groups Enter Illegal Downloading Fight*, National Law Journal (June 4, 2010), available at http://www.law.com/jsp/article.jsp?id=1202459212707 ("The Copyright Group, which has no identified officers, members or phone number on its website....") Dismissal prior to discovery on the jurisdictional issue would be inappropriate.

Guardaley's access of hundreds of Massachusetts computers constitutes purposeful business activity because, like its partners in USCG, Guardaley treats copyright claims as a profit center. As Achache told Philipp Brandt, "[w]e are searching for a strong partner allowing us [i.e., Guardaley] to claim damages from several hundred infringers ..." *See* Exhibit C.

While Guardaley protests that "it does not know in advance the physical location of the computer connected with the IP address" it seeks to identify, MTD p. 9, it could have readily determined at

any time that it was tracking IP addresses within the Commonwealth by using freely available online searches. Fitzgerald Decl. ¶ 5. And such knowledge is irrelevant to the question of whether Guardaley purposefully availed itself of the forum by targeting or expressly aiming at conduct within the forum.

> [T]he technology of the Internet can, in at least some cases, provide a means whereby specific, targeted, conduct may be "expressly aimed" at a particular individual or entity, despite the fact that the person engaging in the conduct may not know the *geographic* location of the individual or entity. To engage in the conduct at issue in this litigation, [Defendants] needed only [Plaintiff's] "virtual" address, not its physical address.
>
> ...   The mere fact that the Internet provided [Defendants] a tool by which they could carry out their conduct against [Plaintiff] without first making efforts to learn its geographic location is not a reason to excuse them from jurisdiction to which they would otherwise be subject.

*Facebook, Inc. v. ConnectU LLC*, 2007 U.S. Dist. LEXIS 61962, *14-15 (N.D. Cal. Aug. 13, 2007). In toto, Guaradley's persistent course of business activity in Massachusetts and the United States establishes sufficient minimum contacts to supports general jurisdiction.

**2.   Guardaley Has Had Sufficient Contacts With Massachusetts to Satisfy the Massachusetts Long-Arm Statute and Support Specific Personal Jurisdiction.**

To establish specific jurisdiction over a defendant, a plaintiff must satisfy the Massachusetts long-arm statute, M.G.L. c. 223A, §3, which states in pertinent part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or

consumed or services rendered, in this commonwealth…"

M.G.L. c. 223A, § 3(a)-(d). At least clauses 3(a), 3(c), and 3(d) are satisfied.

Section 3(a) "gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979). The "transacting any business" clause is interpreted broadly. *Nova Biomedical Corp. v. Moller*, 629 F. 2d 190, 193 (1st Cir. 1980); "Physical presence in Massachusetts is not required in order to 'transact business in Massachusetts.'" *Hannon v. Beard*, 524 F.3d 275, 280 (1st Cir. 2008) (citing cases). The provision "'does not require that the defendant have engaged in commercial activity. [The] language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial.'" *Id.* (quoting *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982 (1st Cir. 1986)). In *Hannon*, as in this case, communications and interactions between an out-of-state defendant and the forum state constituted sufficient "transaction of business" to satisfy the statute, even though those communications were non-commercial. Any purposeful act directed at Massachusetts may satisfy this requirement. *Ross v. Ross*, 371 Mass. 439, 441 (1976); *Nova Biomedical*, 629 F.2d at 193 (mailing two letters to Massachusetts resident alleging patent infringement and threatening litigation was a "purposeful act" sufficient to satisfy transacting business under section 3(a)); *Ealing Corp.*, 790 F.2d at 983 (single telex to plaintiff). Under this standard, Guardaley acted purposefully when it intentionally monitored the Internet use of thousands of individuals in the United States, including, in the Achte action, Plaintiff and at least ninety-two others in Massachusetts. Plaintiff's cause of action arises from that monitoring, establishing both "'cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action).'" *United Elec., Radio & Mach. Workers*, 960 F.2d at 1089. It is not relevant whether Guardaley knew the locations of Plaintiff and the Class before ensnaring them in the Copyright

Scheme, *Facebook, Inc. v. ConnectU LLC*, 2007 U.S. Dist. LEXIS 61962, *14-15 (N.D. Cal. Aug. 13, 2007), and it was fully foreseeable that Massachusetts defendants would be among those affected.

Under Section 3(c), the long-arm statute is satisfied by a defendant "causing tortious injury by an act or omission in this commonwealth." A defendant may cause such injury indirectly, through other defendants, and remain liable. *Rosenthal v. MPC Computers, LLC.*, 493 F.Supp.2d 182, 185 (D. Mass. 2007) (defendant who supervised and managed tortious injury in Massachusetts caused by another defendant). Fraudulent representations provide a basis for jurisdiction under Section 3(c). *Ealing Corp.*, 790 F.2d at 982 (collecting cases). "[T]he First Circuit Court of Appeals has assumed, without deciding, that a Chapter 93A violation would constitute a tortious injury under Chapter 223A." *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296, 300 (D. Mass. 2002) (citing *Lyle Richards, Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir. 1997)). Guardaley's fraudulent acts and computer hacking into computers within the Commonwealth, purposefully directed at Massachusetts residents, caused tortious injury in the Commonwealth under Section 3(c).

Jurisdiction is proper under Section 3(d) of the long-arm statute because Guardaley caused tortious injury from outside Massachusetts, but engaged in a persistent course of conduct with Massachusetts. See *Info Techs. Int'l, Inc. v. ITI of N. Fla., Inc.*, 2001 U.S. Dist. LEXIS 19475, *21 (N.D. Ill. Nov. 28, 2001) (jurisdiction by long-arm statute appropriate when injury takes place in-state "even if all other conduct takes place elsewhere"). GuardaLey's monitoring of IP addresses, which clearly included many in Massachusetts, was "a persistent course of conduct" spanning many months, and it was a cause in fact and legal cause of tortious actions injuring Plaintiff and the Class. See *Rosenthal*, 493 F. Supp. 2d at 185 (interpreting § 3(d) to apply to a co-defendant's tortious acts).

Moreover, personal jurisdiction may be established as long as the case comports with the Constitutional due process limits. *Edvisors Network*, at *12-13; *Newman*, 700 F. Supp. 2d at 163. It does, as discussed below.

**3.     Guardaley's Contacts With Massachusetts Are Sufficiently Related to Plaintiff's Claims to Support Specific or General Personal Jurisdiction.**

The requirement of relatedness is satisfied if the plaintiff's claim "relates to or arises out of the defendant's contacts with the forum." *Edvisors Network*, 2010 U.S. Dist. LEXIS 131822, at *14. This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Id.* at *14 (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994)). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Id.* at *13 (quoting *Mass. Sch. of Law*, 142 F.3d at 34). "The 'relatedness' test is a flexible, relaxed standard that focuses on the nexus between the plaintiff's claim and the defendants' contacts with the forum state." *Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 232 (D. Mass. 2010) (internal citations omitted). Under Massachusetts' flexible interpretation of the relatedness requirement, GuardaLey's monitoring and compiling of IP addresses both inside and outside of Massachusetts for the sole purpose of giving them to DGW and/or USCG so they could "bring lawsuits" is a sufficient nexus between Plaintiff's claims and Guardaley's forum-based activities.

**4.     Guardaley Purposefully Availed Itself of the Forum to Support Specific or General Personal Jurisdiction.**

The "two cornerstones of purposeful availment" are foreseeability and voluntariness. *Ticketmaster-New York*, 26 F.3d at 207. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court adopted an "effects test" for purposeful availment, under which personal jurisdiction is satisfied where a defendant aims conduct toward a forum state with the intent to cause injury there.

"The defendant allegedly causing harm in a state may understandably have sought no privileges there; instead the defendant's purpose may be said to be the targeting of the forum state and its residents." *Digital Equip. Corp. v. Altavista Tech, Inc.*, 960 F. Supp. 456, 467 (D. Mass. 1997). Guardaley voluntarily reached into Massachusetts to remotely track Internet usage of computers with Massachusetts IP addresses. It was foreseeable that the harms would fall in Massachusetts, even though at the time Guardaley knew only the Plaintiff and Class members' "'virtual' address, not physical address." *Facebook*, 2007 U.S. Dist. LEXIS 61962, at *15. When a "defendant intended to scam the plaintiff and knew that the 'effects' of the harm would be felt in the forum state ... defendant's actions, anything but 'random, fortuitous or attenuated' justified personal jurisdiction." *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 40 (D. Mass. 1997) (citing *Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616 (C.D. Cal. 1996) (internal quotation omitted)).

GuardaLey expressly targeted Internet users in the United States, including Massachusetts, and knew the effects would be felt in *each* state where alleged infringers were tracked. It has not claimed to have made any effort to exclude Massachusetts from its targeted conduct, making it foreseeable that its monitoring included Massachusetts residents. Additionally, while it did not have the Class members' physical location, it had their "virtual addresses" and the technological knowhow to discover that it had tracked 93 Massachusetts residents in the *Fry Cry* searches (four of whom have been sued individually by Achte, on the basis of Guardaley's tracking), and more than 100 Massachusetts residents in its other USCG cases. Jurisdiction is proper under the effects test.

**5.    It Is Reasonable Under the Gestalt Factors to Subject Guardaley to Personal Jurisdiction.**

To determine the reasonableness of jurisdiction, courts apply a variety of other "Gestalt factors." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). "The Court has

identified five relevant criteria: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *United Elec. Workers*, 960 F.2d at 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Applying those factors demonstrates that the exercise of jurisdiction over Guardaley is reasonable.

Guardaley may be inconvenienced by appearing in Massachusetts, but no more than any other foreign defendant. *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996). For a foreign defendant to demonstrate a suitable burden, it must show the circumstances are "special, unusual, or … significant." *Id.* (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (D.P.R. 1994)). Guardaley cannot. By contrast, Massachusetts has an interest in having the claim adjudicated here. Guardaley monitors Massachusetts residents' Internet use for the purpose of supporting illusory legal claims so Defendants may stake claims on settlements out of proportion with their legal rights, causing direct damages in Massachusetts. On the basis of Guardaley's tracking, Defendants alleged infringement of *Far Cry* by 93 Internet users with Massachusetts IP addresses. 55 of their Massachusetts targets (including Plaintiff) were alleged to have infringed before *Far Cry*'s effective date of registration, 12 of whom were alleged to have infringed before the film's falsely stated date of first publication. Massachusetts has an interest in allowing those defrauded Class members to pursue justice and appropriate remedies for their injuries. Similarly, Plaintiff has a strong interest in having the claim adjudicated here, as indicated by his filing suit in this Court, as do the other Massachusetts Class members. The judicial system's interest in obtaining the most effective resolution to the controversy weighs against assuming that a foreign jurisdiction would be appropriate, where "it is far from clear that there will be any judicial resolution, let alone the most effective judicial resolution, of this controversy" if this case is

dismissed. *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 987 F.2d 39, 46 (1st Cir. 1993). Finally, Guardaley has not identified any foreign sovereign's substantive social policies that counsel against exercising jurisdiction, and there are none that outweigh the interest of Plaintiff, the Class, and Massachusetts in litigating the dispute. See *id.* at 47. Due process requirements make it reasonable for this Court to find Guardaley within its jurisdiction.

**II. Plaintiff has sufficiently pleaded all remaining counts.**

Movant raises no grounds for dismissal that were not already discussed and refuted in Plaintiff's Opposition, which Movant has access to. Nonetheless, content with relying almost wholly on the DGW Motion in its motion to dismiss, Movant fails to distinguish or otherwise raise a colorable argument as to law or fact that would subvert Plaintiff's previously stated arguments in support of the following claims.

**A.  Plaintiff Sufficiently Pleaded Claims of Conspiracy and Aiding and Abetting.**

Guardaley contends that Plaintiff "cannot assert any plausible theory of liability against Guardaley." MTD p. 16. Guardaley spoke too soon. As outlined in the Statement of Facts, above, Guardaley is directly implicated as a participant in the fraud and conspiracy alleged in the complaint, and has committed independent tortious misrepresentations above and beyond those described in the SAC. These independent acts of fraud constitute the underlying tort necessary to support a conspiracy claim. Guardaley intended to capitalize on infringement claims, despite its knowledge of material flaws in its data on alleged acts of infringement and in its related declarations. This provides substantial basis for finding it shared a common design with its co-defendants to support Plaintiff's allegation of conspiracy. Moreover, because USCG is a joint venture between DGW and Guardaley, Guardaley's knowledge of USCG's wrongful acts can be imputed.

If this court deems it necessary, Plaintiff requests leave to amend the complaint as needed to incorporate information recently obtained by Plaintiff that provides sufficient basis for Guardaley's liability. In any event, Plaintiff has alleged, between the SAC and this opposition, ample basis for finding Guardaley liable as a conspirator, aider and abettor, and participant in the tortious activity alleged in the SAC. Plaintiff hereby adopts by reference all additional grounds for finding conspiracy alleged in its oppositions to the motions to dismiss filed by Achte (Dkt. No. 51, pp. 11-13) and the other co-defendants (Dkt. No. 32, pp. 24-26).

**B. Copyright Misuse and Fraud on the Copyright Office are Recognized Causes of Action for which Moving Defendant's Liability Is Well-Founded.**

The information provided by Guardaley served as the basis to implementing the Copyright Scheme. Furthermore, Guardaley has separately implicated itself as either the architect of the Scheme or at the very least an active participant in USCG, and therefore is liable for its own acts as well as those of its co-defendants. Because Movant's grounds for dismissal adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument concerning its claims related to the unlawful retention of money (ECF No. 32 at pp. 7-8). Accordingly, Movant's motion to dismiss must be denied. Because Movant's grounds for dismissal adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument in support of its Copyright Misuse and Fraud on the Copyright Office claims (ECF No. 32 at pp. 28-30). Accordingly, Movant's motion to dismiss must be denied.

**C. Plaintiff Sufficiently Pleaded a Claim for Fraud on the Court, Abuse of Process and Malicious Prosecution.**

The information provided by Guardaley served as the basis to implementing the Copyright Scheme. Furthermore, Guardaley has separately implicated itself as either the architect of the Scheme or at the very least an active participant in USCG, and therefore is liable for its own acts as well as those of its co-defendants. Because Movant's grounds for dismissal adopts the

argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its arguments concerning Fraud on the Court (ECF No. 32 at p. 28); Abuse of Process (ECF No. 32 at pp. 31-32); and Malicious Prosecution (ECF No. 32 at pp. 32-33). Accordingly, Movant's motion to dismiss must be denied.

### D. Plaintiff Sufficiently Pleaded a Claim for Negligent Representations and Omissions by Moving Defendants.

The information provided by Guardaley served as the basis to implementing the Copyright Scheme. Furthermore, Guardaley has separately implicated itself as either the architect of the Scheme or at the very least an active participant in USCG, and therefore is liable for its own acts as well as those of its co-defendants. Because Movant's grounds for dismissal adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument in support of its claims related to Negligent Misrepresentations and Omissions (ECF No. 32 at p. 26). Accordingly, Movant's motion to dismiss must be denied.

### E. Plaintiff Has Standing to Bring Claims, including Unjust Enrichment, Money Had and Received, Conversion and Constructive Trust, on Behalf of Other Members of the Class.

The information provided by Guardaley served as the basis to implementing the Copyright Scheme. Furthermore, Guardaley has separately implicated itself as either the architect of the Scheme or at the very least an active participant in USCG, and therefore is liable for its own acts as well as those of its co-defendants. Because Movant's grounds for dismissal adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument concerning its claims related to the unlawful retention of money (ECF No. 32 at pp. 7-8). Accordingly, Movant's motion to dismiss must be denied.

### F. Plaintiff Properly Stated RICO Claims Including Injury Caused by Defendant's Racketeering Activity.

The information provided by Guardaley served as the basis to implementing the Copyright Scheme. Furthermore, Guardaley has separately implicated itself as either the architect of the Scheme or at the very least an active participant in USCG, and therefore is liable for its own acts as well as those of its co-defendants. Because Movant's grounds for dismissal adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument concerning its standing under RICO (ECF No. 32 at pp. 23-24). Accordingly, Movant's motion to dismiss must be denied.

### G. Plaintiff Sufficiently Pleaded a Claim Under the Computer Fraud and Abuse Act.

Moving Defendant proves itself adept at stringing together random sentences and calling it an argument. Moving Defendant's interpretation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), misreads the statute and fails to cite any case law.[12]

The information provided by Guardaley is the gateway to implementing the Copyright Scheme. Without the IP addresses, no complaint could be filed and therefore no subpoenas issued. As to how Guardaley acquired that information, Movant has implicated itself by stating that it "reviewed server logs obtained from P2P networks." P2P networking does not enlist the use of a central server, implying that Guaradley may be accessing the computers of the Class without authorization, a violation of the CFAA. Likewise, Guardaley has implicated itself as either the architect of the Scheme or at the very least an active participant in USCG, and therefore is liable for its own acts as well as those of its co-defendants.

Because Movant's grounds for dismissal otherwise adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument in support of its CFAA claim (ECF No. 32 at pp. 20-23). Accordingly, Movant's motion to dismiss must be denied.

### H. Plaintiff Sufficiently Pleaded a Claim for Violations of Chapter 93A.

---

[12] For example, the MTD makes no reference to the landmark cases *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001); *Theofel v. Farey-Jones*, 341 F.3d 978 (9th Cir. 2003); and *Shurgard Storage Ctrs. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wa. 2000).

For the reasons noted above in Section I, Plaintiff has shown that this Court has jurisdiction over the Movant and consequently, its violation(s) of M.G.L. c. 93A. Because Movant's grounds for dismissal otherwise adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its argument concerning its Chapter 93A claim (ECF No. 32 at pp. 33-35). Accordingly, Movant's motion to dismiss must be denied.

**III. Plaintiff Suffered an Injury-in-Fact and Has Standing to Bring His Claims.**

Moving Defendant erroneously claims that its actual and threatened lawsuits against the Class do not constitute an injury sufficient to provide standing.

The information provided by Guardaley is the gateway to implementing the Copyright Scheme. Without the IP addresses, no complaint could be filed and therefore no subpoenas issued. Likewise, Guardaley has implicated itself as either the architect of the Scheme or at the very least an active participant, and therefore liable for its own acts and/or the acts of its co-defendants. Defendants caused injuries-in-fact to Plaintiff and the Class in the form of unwarranted legal expenses and other damages incurred in defense of the Achte action and Defendants' Copyright Scheme as it knew at the time suit was filed that its identification of infringers is flawed.

Defendant misreads *New Hampshire Right to Life Political Action Comm. v. Gardner*,[13] as pertaining to "specific and narrow application to standing issues related to claims arising out of the free speech clause of the First Amendment." MTD p.28 Nowhere in the opinion is such a statement made. Indeed, the Court states that any inquiry into standing is "always case-specific." p.13 "To clear the Article III hurdle, the party who invokes a federal court's authority must show that (1) he or she personally has suffered some actual *or threatened injury* as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court." *Id*. The second and third prongs of the test are

---

[13] *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8 (1st Cir. 1996).

were not an issue in *Gardner*. *Id*. Instead, the Court focused on the first prong: the existence *vel non* of an actual or threatened injury and considered potential injuries. "First, there is the injury which attends the threat of enforcement." *Id*. More so, the Court stated it was only the second type of injury that was peculiar to the First Amendment—hen the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences. *Id*. With regard to the first injury, the Court found "a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement." *Id.* (citing *Doe* v. *Bolton*, 410 U.S. 179, 188, 35 L. Ed. 2d 201, 93 S. Ct. 739 (1973). In this regard, *Gardner* is applicable to the case before the Court.

Likewise, Movant reads into *Shimer v. Foley, Hoag & Eliot LLP* and *Cantu v. St. Paul Cos.*.[14] Though the claims arise in the legal malpractice context there is nothing in the holding that would indicate, as Movant argues, that it is limited specifically to legal malpractice claims.

Plaintiff has pleaded claims based on statutes that grant standing to recover such fees, as exceptions to "the 'American Rule.' Movant does not dispute such expense-based injury is supported for Plaintiff's causes of action, including abuse of process (*DePiero v. Burke*, 70 Mass. App. Ct. 154, 158 (2007)), malicious prosecution (*Millennium Equity Holdings v. Mahlovitz*, 456 Mass. 627, 644-46 (2010), and fraud (*Amgen, Inc. v. F. Hoffmann-La Roche, Ltd.*, 480 F. Supp. 2d 462, 469 (D. Mass. 2007).[15] Plaintiff has also properly pleaded costs incurred in investigating and

---

[14] *Shimer v. Foley, Hoag & Eliot LLP*, 59 Mass. App. Ct. 302 (2003); *Cantu v. St. Paul Cos*., 401 Mass. 53 (1987).

[15] See also *Universal City Studios, Inc. v. Nintendo Co.. Ltd*., 615 F. Supp 838, 864-65 (S.D.N.Y. 1985) (awarding as damages all legal fees expended defending trademark and patent infringement claims brought by a party that knew it lacked the sweeping rights claimed and viewed litigation as a "profit center" for settlements).

defending a lawsuit are a sufficient RICO injury,[16] CFAA injury,[17] and Chapter 93A injury.[18]

Because Movant's grounds for dismissal otherwise adopts the argument made in the DGW Motion, Plaintiff hereby adopts and incorporates by reference its standing argument. (ECF No. 32 at pp. 5-8). Accordingly, Movant's motion to dismiss must be denied.

## CONCLUSION

For all the above reasons, Plaintiff respectfully requests that the Court deny Moving Defendant's motion to dismiss in its entirety, and award attorney's fees and expenses to Plaintiff, and such other further relief that the Court deems just and proper.


Respectfully submitted,

Dmitriy Shirokov

/s/  Jason E. Sweet
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street, Suite 1A
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883

*Co-Counsel for Plaintiff and Proposed Class*

---

[16] *Lemelson v. Wang Labs., Inc*, 874 F. Supp. 430, 433 (D. Mass. 1994); *Eagle Inv. Sys. Corp. v. Tamm*, 146 F. Supp. 2d 105, 110 (D. Mass. 2001)

[17] *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065 (S.D. Iowa 2009); *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 647 (E.D. Pa. 2007). See also *Resdev, LLC v. Lot Builders Ass'n, Inc.*, 2005 U.S. Dist. LEXIS 19099, *10-12 (M.D. Fla. 2005).

[18] *Schubach v. Household Finance Corp.*, 375 Mass. 133 (1978).

## CERTIFICATE OF SERVICE


I hereby certify that on June 6, 2011, I electronically filed the foregoing Plaintiff's Opposition to Defendant Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG's Motion to Dismiss Second Amended Class Action Complaint by using the ECF system.

I hereby certify that a true copy of the aforementioned document will be served upon counsel of record for Defendants Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG; Guardaley, Limited; and Dunlap, Grubb & Weaver, PLLC, US Copyright Group, Thomas Dunlap, and Nicholas Kurtz by Notice of Electronic Filing through the ECF system.


/s/  Jason E. Sweet
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street, Suite 1A
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883