# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DMITRIY SHIROKOV, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUNLAP, GRUBB & WEAVER, PLLC; US COPYRIGHT GROUP; THOMAS DUNLAP; NICHOLAS KURTZ;  GUARDALEY, LIMITED; and ACHTE/NEUNTE BOLL KINO BETEILIGUNGS GMBH & CO KG,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civ. A. No. 1:10-cv-12043-GAO<br>)<br>)   **LEAVE TO FILE GRANTED 8/24/2011**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT GUARDALEY LIMITED'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Dmitriy Shirokov ("Plaintiff") respectfully submits this surreply in further opposition to Defendant Guardaley Limited's ("Guardaley") Motion to Dismiss the Second Amended Class Action Complaint (Dkt. No. 42) and its supporting memorandum of law ("Motion to Dismiss," Dkt. No. 44), and in further support of Plaintiff's Memorandum of Law in Opposition to Defendant Guardaley Limited's Motion to Dismiss the Second Amended Class Action Complaint ("Opposition," Dkt. No. 56), to address contentions raised in Guardaley's Reply to the Opposition ("Reply," Dkt. No. 65) concerning the factual and jurisdictional basis for denying Guardaley's Motion to Dismiss, and certain relevant documents referenced in the Opposition. For the reasons given in the following memorandum and those given in Plaintiff's Opposition, the Motion to Dismiss should be denied. Plaintiff relies on the statement of facts contained within his Second Amended Complaint ("Complaint," Dkt. No. 26) and his Opposition.

## I.      Guardaley is subject to this Court's jurisdiction.

### A.      Plaintiff has made a prima facie showing of jurisdiction over Guardaley.

Plaintiff has sufficiently made a prima facie showing of personal jurisdiction[1] under the Massachusetts long-arm statute. See Opposition pp. 12-17, 20-23. It is sufficient for purposes of finding personal jurisdiction that to allege that the Defendants, including Guardaley,

> were in a joint venture, or at least held themselves out to be in a type of agency relationship. The Court need not determine whether the defendants were actually engaged in a joint venture between themselves, however. The facts, as asserted by the [Plaintiff] and construed in the light of whether he has made a prima facie jurisdictional showing, suffice to show a relationship between the two defendants sufficient to impute some of [DGW/USCG's] contacts to [Guardaley].

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 45, 56-59 (1st Cir. 2002). Plaintiff has properly alleged Guardaley's joint venture with its co-defendant attorneys. Complaint ¶¶ 35, 73.[2] To avoid jurisdiction, Guardaley characterizes its involvement in the Scheme as mere "tracking,"[3] erroneously comparing its activities to "passively operating a website … absent any affirmative act by [Guardaley]." Reply p. 3. Guardaley's analogy is inapt. Its online interaction with Plaintiff and the Class was far more extensive than maintaining a passive website. See *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 40 (citing *Panavison Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, (C.D. Cal. 1996) (finding jurisdiction when defendant intended to scam

---

[1] Guardaley refers the Court to its motion to dismiss as grounds for lack of subject matter jurisdiction, Reply p. 5, but does so without adding anything to further arguments already refuted by Plaintiff. See Opposition pp. 17-20, 20-23.

[2] Even if Plaintiff had not sufficiently pled personal jurisdiction, the First Circuit has found federal rules and practice flexible enough to allow jurisdictional discovery to develop an adequate record on a defendant's contacts with the United States without subjecting them to full-blown discovery. *Szafarowicz v. Gotterup*, 68 F. Supp. 2d 38, 42 (1st Cir. 1999). *See also United Elec. Radio & Mach. Workers of Am., v. Pleasant St. Corp.*, 987 F.2d 39, 48 & n.18 (1st Cir. 1993) (commenting on appropriateness of jurisdictional discovery); *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966) (plaintiff should be allowed jurisdictional discovery if its position on personal jurisdiction is not frivolous).

[3] Guardaley continues to seek to define Plaintiff and similarly situated individuals in unproven absolutes, e.g., "plaintiff's act of copyright infringement." Reply p. 4. Of the 60,000+ individuals targeted by DGW/USCG/Guardaley, not a one has gone to trial and been found to have infringed the rights of Achte or any of their other clients.

plaintiff and knew that "effects" of the harm would be felt in the forum state); *Digital Equip. Corp. v. AltaVista Tech.*, 960 F. Supp. 456 (D. Mass.1997).

In order to "track" infringement, Guardaley had to actively participate in the infringement by offering files for download. See Opposition Exh I, p. 10 ("Bittorrent monitoring program [of] Petitioner No 1 [Guardaley] was set in such a way that it represented to other users, i.e., to their programs, by means of a falsified bit field, that it was always in possession of 50% of the file being sought, i.e., as to which inquiry was being made."); Opposition Exhibit K, pp. 4-7. By installing peer-to-peer (P2P) software such as BitTorrent and logging onto a P2P network to "track" infringers, Guardaley transformed its computer into an interactive site. See *Virgin Records Am., Inc. v. John Does 1-35*, 79 U.S.P.Q.2D (BNA) 1061, 2006 U.S. Dist. LEXIS 20652, *11 (D.D.C. 2006). In so doing, Guardaley was actively disseminating copyrighted works to all comers—including residents of this jurisdiction. *Id.* at *12. "Engaging in such 'interactive' electronic transactions provides the sort of 'continuous' and 'systematic' contacts" that courts have recognized as sufficient to support jurisdiction. *Id.*  See also *Capitol Records, Inc. v. MP3tunes*, LLC, 2008 U.S. Dist. LEXIS 75329, *11-12 (S.D.N.Y. 2008) (website is interactive because it permits transfer of digital files to and from users). "[T]he defendant, through its interactive Web site, invited jurisdiction by other states." *Hasbro*, 994 F. Supp. at 40 (citing with approval *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328,  1333 (E.D. Mo. 1996) ("defendant electronically responded 'automatically and indiscriminately' to users of the site regardless of their originating location.") Benjamin Perino, a manger of USCG as well as Guardaley, stated in the Achte action that he is "responsible for coordinating the USCG's *worldwide* enforcement effort against internet piracy, which necessarily includes enforcement within the District of Columbia."[4]  Declaration of Benjamin Perino in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26

---

[4] The First Circuit has found personal jurisdiction over a defendant based in part on statements similar to Perino's, e.g., "Clue provides services for clients *anywhere* on the planet." *Hasbro*, at 38.

(f) Conference, ¶ 2, No. 10-453 (D.D.C. Mar. 18, 2010) ("Perino Declaration") (emphasis added); SAC ¶ 73 n. 33; Opposition pp. 6, 15. Guardaley likewise has "necessarily" availed itself of the jurisdiction of this court by "automatically and indiscriminately" tracking alleged infringers.

In the alternative, and despite Guardaley's consternations otherwise, the Court may find personal jurisdiction based on the doctrine of national contacts to function as a species of federal long-arm statute. *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999) hereinafter "*Swiss I*"); (F.R. Civ. P 4(k)(2)).

> The personal jurisdiction inquiry in federal question cases like this one differs from the inquiry in diversity cases. Here, "the constitutional limits of the court's personal jurisdiction are fixed . . . not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment." *United Elec. Radio & Mach. Workers of Am., v. Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1993). This distinction matters because under the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state.

*In re Lupron Mktg. & Sales Practices Litig.*, 245 F. Supp. 2d 280, 302 (D. Mass. 2003) (citing *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)). See also *Richards v. Tsunami Softgoods*, 239 F. Supp. 2d 80, 82 (D. Me. 2003).

In *Swiss I*, the First Circuit Court of Appeals considered this very issue in a suit by the United States under federal law to recover, from foreign banks, deposits that a convicted felon conceded were fruits of his criminal racketeering and money laundering. After a U.S. court issued a forfeiture ruling in the criminal case, the defendant foreign banks disbursed these funds to the foreign government where they were organized. The United States based its claims on conversion, unjust enrichment and breach of contract, which the court held had their source in federal law. After determining that the Massachusetts long-arm statute would not reach the defendants, the Court rejected a requirement for "a plaintiff to prove a negative fifty times over—an epistemological quandary which is compounded" by the defendant's control over the relevant information as to the number and extent of contacts with other jurisdictions. *Id.*, 191 F.3d at 40.

4

Instead, the Court fashioned a "special burden-shifting framework" under which the plaintiff is required to make a prima facie showing of satisfying the elements of the rule. This includes a tripartite showing: (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. *Id.*, at 41. In addition, the plaintiff is required to certify that "based on information readily available to plaintiff and his counsel" no state's long-arm statute is applicable. *Id.* The burden then shifts to the "defendant to produce evidence which, if credited, would show" amenability to service under a state long-arm statute or insufficiency of nationwide contacts for Fifth Amendment purposes.

The Seventh Circuit has ruled that Rule 4(k)(2) applies when a defendant who contests the reach of the long-arm statute of the state where the district court is located "refuses to identify any other [state] where suit is possible." *ISI Int'l Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). See also *Mwini v. bin Laden*, 417 F.3d 1, 11-12 (D.C. Cir. 2005). (finding jurisdiction over the defendant when it has "not conceded to the jurisdiction of any other state" and for due process purposes had "purposefully directed" its activities to residents of the United States).

Plaintiff's claims arise under no fewer than three distinct federal statutes, 17 U.S.C. §§ 501 *et seq*, 18 U.S.C. §§ 1961 *et seq*, and 18 U.S.C. §§ 1030 *et seq*. SAC ¶ 28. Although Guardaley's contacts with the nation as a whole satisfy the applicable constitutional requirements, it has not conceded to, and has argued against, the jurisdiction of any other states. Should the Court find jurisdiction lacking under the Massachusetts long-arm statute, Plaintiff hereby certifies that based on information readily available to Plaintiff and his counsel, no other state's long-arm statute is applicable. Thus, under Rule 4(k)(2), jurisdiction remains appropriate.

**B.     The Court's jurisdiction over Guardaley is properly based not only on its direct tortious acts against Plaintiff and the Class, but also Guardaley's active and direct involvement in tortious acts with its co-defendants.**

As pleaded, "DGW, in conjunction with Guardaley, manages and does business as USCG," i.e., defendant US Copyright Group. Complaint ¶ 73. "USCG is a registered alias for a partnership between DGW and Guardaley." *Id.* ¶ 35. This allegation, recognized and not denied by Guardaley (see Reply p. 6), is well supported in the Complaint. Plaintiff has further alleged that "Guardaley has been a primary participant in structuring the USCG litigation, including the Achte action." Opposition p. 14. Guardaley has not denied that allegation, which is fully supported by and consistent with the facts alleged in the Complaint and Opposition.

Guardaley claims plausible deniability, because it did not directly "have any involvement in filing the Achte action or sending settlement demand letters." Reply p. 8. That is no grounds for dismissal on the facts alleged. "[W]here the agents acted jointly in the arrangement, it was not inappropriate for just one to have been delegated the task of conducting the formalities." *Aritex Land Co. v. Baker*, 482 P.2d 875, 884 (Ariz. Ct. App. 1971) (quoting Restatement (Second) of Agency § 41 cmt. a). It also claims naïveté, asserting that the Complaint has not properly pleaded "that Guardaley had any knowledge of the alleged untimely copyright registration for *Far Cry* or any knowledge about the alleged ineligible remedies."[5] Reply p. 8. Guardaley is far too modest. It marketed a litigation mill business model to law firms around the world. See Opposition pp. 6-7 & Exhs. B & C. It is widely considered the principal by such law firms. *Id.*; see also Plaintiff's Response in Opposition to Defendant Guardaley Limited's Motion to Strike pp. 10-11 ("Response to Motion to Strike"; Dkt. No. 66). For USCG, its American litigation mill, Guardaley provided the grist: accusations of copyright infringement against Plaintiff, the Class, and thousands of others. And Guardaley has not denied responsibility for designing the mill as well.

Guardaley's managing director, by his own confession, is one of the managers of USCG. Perino Declaration; Complaint ¶ 73 & n. 33. DGW registered USCG as an alias in Virginia on November 10, 2009. *Id.* n. 32. But as early as March 2009, Guardaley began to apply that business

---

[5] Guardaley nowhere *denies* such knowledge, asserting only that it has not been sufficiently pleaded.

model, tracking alleged infringers of Achte's copyright.[6] Guardaley began its partnership with DGW, and its services related to Achte, nearly a year before Dunlap submitted the false copyright registration in January 2010, and over a year before DGW filed the complaint in the Achte action in March 2010. See Opposition p. 15. At least as early as November 2009, USCG marketed its business model to film studios, in which settlements would be obtained from lawsuits filed without a genuine intent of proceeding upon them in court. See Complaint ¶¶ 77-80 & nn. 38 & 39. USCG represented that it offers Guardaley's services as its own. *Id.* ¶ 77 ("At no cost to our clients, *the US Copyright Group* will identify illegal downloaders by ISP address ...") (emphasis added). Nearly a year after the earliest alleged infringements that Guardaley tracked in its USCG work related to Achte, USCG confronted the problem of Achte's failure to register, *id.* ¶¶ 93-105, by committing fraud. As a principal in USCG, Guardaley is bound by those acts.

Guardaley contends that Plaintiff seeks to "disregard[] the corporate form" in ascribing liability to Guardaley for acts by USCG and other co-defendants. Reply p. 6. But in the Achte action, it was Guardaley's director Benjamin Perino who disregarded that form, misdirecting the court as to its role within USCG. Perino failed to identify himself as *Guardaley's* managing director, though this is evident in other public filings, declaring instead, "I am one of four Managers of the US Copyright Group (USCG) ..." Perino Declaration ¶ 1; SAC ¶ 73 n. 33. Guardaley may not overlook corporate distinctions and then re-establish them at its convenience.

Guardaley contends that its relationship with USCG is not a sufficient basis for jurisdiction, because "the critical element of control" has not been sufficiently alleged. Reply p. 6. Such an

---

[6] Achte submitted claims of such pre-registration infringements in exhibits to its complaints in the Achte action in the United States District Court for the District of Columbia, extensively discussed in Plaintiff's Complaint in this action. See Complaint ¶¶ 134 & n. 48, 138, 142-43 & Exhs. L & M. Guardaley's directors Benjamin Perino and Patrick Achache filed declarations attesting to the accuracy of those claims, also referenced in the Complaint. See *id.* ¶ 73 n. 33 (citing the Perino Declaration) & 198 n. 60. The Court may take judicial notice of these matters of public record referenced within the Complaint. Fed. R. Evid. 201(b). Plaintiff hereby incorporates and adopts by reference its arguments concerning judicial notice, given at Response to Motion to Strike, pp. 5-7 & 10 n. 7, and admissibility, *id.* at 10-14.

argument is premature at the pleading stage, before discovery. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 46-47 (1st Cir. 1999); *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 111 (D. Mass. 2010) ("The existence of an agency relationship under Massachusetts law is ordinarily a question of fact for the jury.") (internal quotation omitted). The argument is also wrong. Jurisdiction over Guardaley is appropriate both for its role in the conspiracy and the acts its agents undertook for its benefit. See Opposition p. 6 & Exh. B (discussing U.K. attorney commenting to Dunlap, "I note that you act for Guardaley"); see also *Westfall v. United States*, 20 F. 2d 604 (6th Cir.) (a "direct participant and joint principal" in criminal act, who "did not simply counsel, plot, and plan the crime, but he acted and aided in its commission ... may be prosecuted both as a principal in, and as a conspirator to commit, an offense."), *aff'd*, 274 U.S. 256 (1927).

A principal's liability for its agents' fraudulent acts is well recognized. "[A] principal's liability for tortious acts of its agent ... is exclusively vicarious, having been imposed by operation of law notwithstanding the principal's lack of fault or involvement in the actionable transaction." *Medeiros v. Middlesex Ins. Co.*, 48 Mass. App. Ct .51, 56-57 (1999). See also *Lowell v. Five Cents Sav. Bank v. Winchester*, 90 Mass. (8 Allen) 109, 116-117 (1864) (following "the doctrine that a principal is responsible for the deceit or fraud or misrepresentations of his agent ... though unauthorized, [when those acts] are committed during the existence of the agency, and while the agent is employed in doing the business committed to his hands"); *Bank of Commerce & Trust Co. v. Schooner*, 263 Mass. 199, 205 (Mass. 1928) (affirming liability for conspiracy to defraud; "The present action is not founded upon any representation of the defendant. It is brought against him as a joint principal and tortfeasor in a fraud instituted and carried out for his benefit with respect to which the representations involved were not incidents in the scheme to defraud.") Liability is appropriate in such cases. "[W]here one undertakes to profit by the act of another as agent, he must adopt that act as a whole and take the bitter with the sweet. One cannot take the gains of a fraud without also bearing its burdens." *Tremont Trust Co. v. Noyes*, 246 Mass. 197, 207 (1923).

"Imposing exemplary damages on the corporation when its agent commits intentional fraud creates a strong incentive for vigilance by those in a position to guard substantially against the evil to be prevented." *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991) (internal quotation omitted).

The defendant attorneys' role as agents of Achte does not preclude a finding that they served also as Guardaley's agents. See Restatement (Second) of Agency § 41(1) (1958) ("Unless otherwise agreed, authority given by two or more principals jointly includes only authority to act for their joint account."); *id.* § 20 cmt. f ("Joint principals") ("A number of persons, such as the members of a partnership, may act jointly in the authorization of an agent. In such case, the agent may have power to subject them to joint liability to third persons ..."); 2A C.J.S. Agency § 245 ("Where several principals, for their mutual interest and advantage, as joint principals, employ a common agent, they all become bound by the acts of such agent within the scope of his authority and they must share the consequent responsibility of acts done or representations made by the agent."); *Lumbermen's Mut. Ins. Co. v. Slide Rule & Scale Eng'g Co.*, 177 F. 2d 305, 310 (7th Cir. 1949) ("we know of no reason why such an arrangement by their common agent should not be binding upon each") (insurance agents' acts binding on two principals).

## II.    Plaintiff has sufficiently pleaded facts that subject Guardaley to liability.

Guardaley claims that Plaintiff has not alleged facts plausibly suggesting Plaintiff is entitled to relief. Reply p. 7.[7] Guardaley argues that Plaintiff's "claims are based on legal conclusions rather than well-pleaded factual allegations," *id.*, implying a plethora of perceived flaws, but it points to no improper conclusions in Plaintiff's well-pleaded Complaint and identifies only one in the Opposition: Plaintiff's allegation of Guardaley's knowledge. *Id.* at 8 (quoting Opposition at pp. 1-2). Plaintiff has pleaded sufficient facts to support that allegation and the others in the complaint, as discussed above.

_____

[7] Though the Reply cites to Mass. R. Civ. P. 12(b)(6) as the operative legal standard, *id.*, Plaintiff proceeds on the assumption that Guardaley intended to invoke the analogous Federal Rule.

"Non-conclusory factual allegations in the complaint must be treated as true, even if the allegations seem incredible." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 9 (1st Cir. 2011). "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id*. (quoting *Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1949 (2009)). When "conclusions are logically compelled, or at least supported by, the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, ... 'conclusions' become 'facts' for pleading purposes." *Schaer v. Brandeis Univ*., 432 Mass. 474, 479 (Mass. 2000).

Under Federal Rule of Civil Procedure 9, knowledge may be averred generally. "The clear weight of authority is that Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980). "Because the circumstances of the misrepresentation were specified, it was sufficient under Rule 9" for Plaintiff to plead intent and knowledge generally. *Id.* at 229. Moreover, the "particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim. Courts have noted that where the information needed to plead the particulars of fraud are in the hands of the defendant, allegations of fraud that are sufficiently particular to suggest that the plaintiff is not engaged in a frivolous suit and enables the defendants to respond will not be dismissed prior to discovery." *In re Paul*, 399 B.R. 81, 111-12 (Bankr. D. Mass. 2008) (citations omitted). Guardaley's knowledge may be reasonably inferred.

### III. Guardaley's protests against documents referenced in Plaintiff's Opposition are unavailing.

Guardaley again asks the court to disregard the exhibits filed with Plaintiff's Opposition. Reply pp. 1-2; see also Guardaley Limited's Motion to Strike ("Motion to Strike"; Dkt. No. 58). In both the Motion to Strike and the Reply, Guardaley treats Federal Rule of Civil Procedure 12(b)(6)

as if it alone dictates the Court's review of documents that go beyond the pleading. Guardaley filed its Motion to Dismiss under Rules 12(b)(1) and 12(b)(2) as well, but cites to Rule 12(b)(6) alone as the applicable standard of review. Reply p. 2. Guardaley again fails to apply (much less distinguish) the standards for review applicable to motions for lack of jurisdiction under those Rules.[8] Consideration of materials outside the complaint is appropriate in ruling on a motion under Rule 12 (b)(1), *Aversa v. United States,* 99 F.3d 1200, 1209-10 (1st Cir. 1996). ("the court may consider whatever evidence has been submitted") and under Rule 12(b)(2), *Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 152-53 (D. Mass. 2001) ("The consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction."). A Rule 12(b)(2) motion *requires* the plaintiff to go beyond the pleadings. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). Further, in evaluating a motion pursuant to Rule 12(b)(6), "we take into consideration 'the allegations in the complaint, although *matters of public record*, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000) (emphasis added) (quoting 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 299 (1990)).

Guardaley raises no grounds for disregarding the material it objects to, beyond those already discussed and refuted by Plaintiff's Response, which Guardaley had access to before filing this Reply. Because Guardaley fails to distinguish or otherwise raise a colorable argument as to law or fact that would subvert Plaintiff's previously stated arguments in support of the following claims, Plaintiff hereby adopts and incorporates by reference its argument in support of its Response to Motion to Strike.

---

[8] Guardaley accuses Plaintiff of violating the Rules of Civil Procedure by attaching exhibits to its Opposition, but fails to cite any particular rule. Reply p. 2. As Plaintiff has noted, such exhibits are an appropriate means of refuting misrepresentations introduced by Guardaley in its Motion to Dismiss. See Response to Motion to Strike pp. 10-12.

## CONCLUSION

For all the above reasons, and those in Plaintiff's Memorandum of Law in Opposition to Defendant Guardaley Limited's Motion to Dismiss the Second Amended Class Action Complaint, Plaintiff respectfully renews its request that the Court deny Guardaley's motion to dismiss in its entirety, and award attorney's fees and expenses to Plaintiff, and such other further relief that the Court deems just and proper.

Respectfully submitted,

Dmitriy Shirokov

/s/  Jason Sweet
Jason Sweet (BBO # 668596)
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883

*Co-Counsel for Plaintiff and Proposed Class*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Jason Sweet, hereby certify that on August 4, 2011, I informed Guardaley's counsel Kevin Cain, by telephone, that Plaintiff anticipated filing a proposed surreply to Guardaley's Motion to Dismiss. On August 5, 2011, I sent Attorney Cain an e-mail message to request Guardaley's assent to the relief requested herein. On August 5, 2011, I received an e-mail message from Attorney Cain stating that he did not have the authority to assent at that time.

/s/  Jason Sweet