**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DMITRIY SHIROKOV, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUNLAP, GRUBB & WEAVER, PLLC; US COPYRIGHT GROUP; THOMAS DUNLAP; NICHOLAS KURTZ; GUARDALEY, LIMITED; and ACHTE/NEUNTE BOLL KINO BETEILIGUNGS GMBH & CO KG,<br><br>Defendants. | Civ. A. No. 1:10-cv-12043-GAO<br><br>**LEAVE TO FILE GRANTED 10/6/2011** |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO THE MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT OF DEFENDANTS DUNLAP, GRUBB & WEAVER, PLLC, US COPYRIGHT GROUP, THOMAS DUNLAP, AND NICHOLAS KURTZ**

Plaintiff Dmitriy Shirokov ("Plaintiff") respectfully submits this surreply in further opposition to Defendants Dunlap, Grubb & Weaver, PLLC, US Copyright Group, Thomas Dunlap, and Nicholas Kurtz's ("the defendants") Motion to Dismiss Second Amended Class Action Complaint (Dkt. No. 28) and its supporting memorandum of law ("Motion to Dismiss," Dkt. No. 29), and in further support of Plaintiff's Memorandum of Law in Opposition to the defendants' Motion to Dismiss ("Opposition," Dkt. No. 32), to address contentions raised in the defendants' Reply to the Opposition ("Reply," Dkt. No. 71). For the reasons given in the following memorandum and those given in Plaintiff's Opposition, the Motion to Dismiss should be denied. Plaintiff relies on the statements of facts contained within his Second Amended Complaint ("Complaint," Dkt. No. 26) and his Opposition.

**A. Defendants' Wrongful Acts Are Nonprivileged and Actionable.**

A party asserting the Massachusetts litigation privilege has the burden of establishing that it applies. See Opposition p. 8. Defendants have not done so. Under the Supremacy Clause, a litigation privilege cannot be applied to defeat Plaintiff's federal causes of action. *Id.* pp. 14-15.

Federal common law governs application of privileges to state claims in federal court, but "there is no ... 'federal litigation privilege.'" *Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 412 (D.N.J. 1999)).[1] Defendants do not contend otherwise. See Opposition pp. 14-15. States apply their litigation privileges differently, as Defendants concede.[2] Federal courts repeatedly deny state litigation privileges as subordinate to a broad variety of federal claims.[3] Defendants have not established that *Massachusetts*' litigation privilege applies to federal claims, and do not even argue that Massachusetts cases support applying the privilege when federal claims are pleaded. See *Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 158 (D. Mass. 1999) (attorney's "purportedly false statements in open court may subject [his law firm] to liability under

---

[1] "[O]nly in a narrow class of cases involving defamation claims has the Supreme Court acknowledged a common law tradition of absolute immunity for private lawyers." *Robinson v. Volkswagenwerk AG*, 940 F. 2d 1369, 1371 (10th Cir. 1991). Defamation claims are not at issue in this case, and even the common law "immunity for defamatory statements made in the course of judicial proceedings ... would not have covered a conspiracy" by counsel. *Tower v. Glover*, 467 U.S. 914, 922 (1984).

[2] See Reply p. 2 n.2 (distinguishing the Massachusetts and Florida litigation privileges) & p. 3 (noting that "the district court applied New Jersey's state law litigation privilege" in *Waterloov*).

[3] *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 708 (N.D. Ill. 2006) (state privilege not applicable to Lanham Act claims); *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 803 (D. Minn. 2009) (FDCPA; "Obviously, a state cannot 'privilege' a debt collector to violate federal law."); *Hill v. Lazarou Enters.*, 2011 U.S. Dist. LEXIS 24142 (S.D. Fla. Feb. 18, 2011) (Title VII); *Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996) (42 U.S.C. § 1983); *Kredietbank N.V. v. Joyce Morris, Inc.*, 1985 U.S. Dist. LEXIS 15014, *16 (D.N.J. Oct. 11, 1985) (wire and mail fraud as RICO predicates; "The fact that a particular mailing might be 'privileged' under state law is not a defense to mail fraud."); *Martinez v. California*, 444 U.S. 277, 284 (1980) (42 U.S.C. § 1983; "It is clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state courts."); *Pardi v. Kaiser Found. Hosps.*, 349 F. 3d 840, 851 (9th Cir. 2004) (ADA); *Religious Tech Ctr. v. Wollersheim*, 971 F.2d. 364, 367 n. 10 (9th Cir. 1992) (RICO and Copyright Act); *Ramos v. Hoyle*, 2009 U.S. Dist. LEXIS 61062 (S.D. Fla. July 16, 2009) (FLSA); *Rosania v. Taco Bell of Am., Inc.*, 303 F. Supp. 2d 878 (N.D. Ohio 2004) (FMLA); *Rudzinski v. Metro Life Ins. Co.*, 2008 U.S. Dist. LEXIS 54454 (N.D. Ill. July 9, 2008) (ERISA); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (Title VII and ADA) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action.")

the FDCPA whereas such statements are subject to a privilege under state common law").[4] Because Plaintiff's federal and state law claims are based on identical or overlapping theories of liability, neither should be subject to the privilege.[5]

The Reply cites three cases[6] applying *New Jersey's* "extremely protective 'absolute litigation privilege'" (Reply p. 4, quoting *Waterloov* at 414), which does not traverse I-95 to shield these Virginia Defendants from liability to this Massachusetts Plaintiff and the proposed nationwide Class.[7] Defendants misleadingly cite *Waterloov* as their sole example of a "court [applying] a state common law litigation privilege in cases arising out of federal causes of action," Reply p. 3, but that case applied the privilege only to *non-federal* counterclaims against the plaintiff's attorneys, *not* to the plaintiff's federal patent claims. *Id.* at 401. By contrast, a litigation privilege would directly undermine this Plaintiff's federal causes of action; Plaintiff's RICO claims would be undermined even if a litigation privilege were applied only to Plaintiff's state causes of action, such as fraud and conspiracy.

---

[4] *Cf. Westfield High Sch. L.I.F.E. Club v. Westfield*, 249 F. Supp. 2d 98, 113-14 (D. Mass. 2003) (Massachusetts Students' Freedom of Expression Law's "promise of absolute immunity is illusory, as the Supremacy Clause prevents Massachusetts from limiting remedies provided by federal law as, for instance, under 42 U.S.C. § 1983 for violations of the Establishment Clause") (citing *Kimes v. Stone*, 84 F. 3d 1121, 1127 (9th Cir. 1996) & *Yeo v. Lexington*, 131 F.3d 241, 249 n.3 (1st Cir. 1997)).

[5] *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 805 (D. Minn. 2009) (lawyer had no immunity from claims under FDCPA or related state law); *Hartman v. Asset Acceptance Corp.*, 467 F. Supp. 2d 769, 777-80 (S.D. Ohio 2004) (in suit against debt collection agency and its attorneys, state law litigation privilege abrogated by FDCPA and not applied to Ohio Consumer Sales Practices Act claim); *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 667-68 (S.D. Ohio 2004) (same); *Nix v. O'Malley*, 160 F.3d 343, 352 (6th Cir. 1988) (declining to immunize attorneys for violations of federal and state wiretap laws); *Religious Tech Ctr. v. Wollersheim*, 971 F.2d. 364, 367 n. 10 (9th Cir. 1992) (not applying California litigation privilege to RICO, Copyright Act, and state tort claims against lawyers and clients).

[6] Reply pp. 3-4, citing *Waterloov* (attorney malpractice, common law fraud, and New Jersey Consumer Fraud Act violations); *Ogbin v. Fein*, No. 09-2829, 2011 U.S. App. LEXIS 3499 (3d Cir. Feb. 22, 2011) (not precedential) (FDCPA, negligence, and misrepresentation under New Jersey law); and *Loigman v. Twp. Comm. of Middletown*, 185 N.J. 566 (N.J. 2006) (42 U.S.C. § 1983).

[7] The Reply references two other cases in which no federal claims were raised: *Kipp v. Kueker*, 7 Mass. App. Ct. 206 (1979) (defamation) and *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986) (wrongful death claim against government litigators).

*Waterloov*'s policy-based rationale for the privilege (Reply p. 4) does not support its application here. The pertinence "limitation[] on the availability of the privilege do[es] not run counter to the policy upon which absolute privilege rests." *Robert L. Sullivan, D.D.S., P.C. v. Birmingham*, 11 Mass. App. Ct. 359, 362 (1981).[8] As the Supreme Court explained one rationale for privileging litigation statements: "the truthfinding process is better served if the witness' testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.'" *Briscoe v. LaHue*, 460 U.S. 325, 333-34 (1983) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 440 (1976) (White, J., concurring in judgment)).[9] A privilege for statements that will be subject to the "crucible" of litigation does not justify its extension to the Achte action, a discovery suit filed to obtain Class members' contact information. Defendants argued the Class members were *not even parties* to the action because they had not been served process and named therein (Complaint ¶ 197), and all but one of the Class members were outside the Court's personal jurisdiction and so were dismissed before being served (*id.* ¶¶ 198-201 & 208-209). Defendants' statements to the Class in that context "constituted a malicious abuse of process as to which no 'litigation privilege'

[8] See also *Milford Power Ltd. P'ship v. New England Power Co.*, 918 F. Supp. 471, 486 (D. Mass. 1996) (communications "regarding a judicial proceeding have been found to be outside this privilege [when they] do not advance the policy upon which the privilege rests") (citing *Sullivan*); *Ezekiel v. Jones Motor Co., Inc.*, 374 Mass. 382, 385 (1978) ("Generally the recognition of an absolute privilege in defamation cases is limited to cases in which public policy or the administration of justice requires complete immunity from the threat of defamation suits.").

[9] *Accord FMC Techs., Inc. v. Edwards*, 464 F. Supp. 2d 1063, 1071 (W.D. Wash 2006) ("Encouraging frank, candid, honest witness testimony without fear of future 'perjury' litigation is precisely the policy goal behind the privilege that will *not* be accomplished if the Court now protects, in the name of the litigation privilege, the evasive, fabricated, and dishonest testimonial conduct that allegedly occurred here."); *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir. 1986) (denying immunity to government attorneys engaged in cover-up; "the open conflict of a court battle, which creates the need for protective immunity to enable the government attorney to perform his duty fearlessly, was totally absent"); *cf. Jones v. Robbins*, 74 Mass. (8 Gray) 329, 344 (1857) ("The right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury, in case of high offences, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty.").

could apply (there having been no actual, but only a pretextual, litigation)." *Eberle v. Diviacchi*, 5 Mass. L. Rep. 213, 1996 Mass. Super. LEXIS 433, *3-4 (Mass. Super. Ct. Mar. 29, 1996) (lawsuit brought by attorney purportedly on behalf of client in bankruptcy, whose trustee had not authorized suit, was an unauthorized nullity).

Defendants argue that the privilege fosters a federal interest in unfettered freedom for attorneys, neglecting a countervailing federal interest in the integrity and reliability of statements made by counsel, and the interest of federal agencies, courts, Plaintiff and the Class in not being defrauded. See, e.g., *Waterloov*, 64 F. Supp. 2d at 420-21.[10] "Bar membership provides no cloak of immunity for an attorney's false representations."[11] *Nova Assignments, Inc. v. Kunian*, 77 Mass. App. Ct. 34, 38 (2010). The Court should not help Achte cut such a cloak from whole cloth.

### B. The Complaint Consistently Pleads Defendants' Lack of Good Faith in Threatening and Bringing Claims that Are Barred as a Matter of Law.

Achte has never been entitled to pursue claims for statutory damages or attorney's fees in any action concerning *Far Cry*, because it did not timely register its copyright. As explained in the Complaint, Defendants could not have contemplated litigation with a good faith belief in the merits of those claims. Complaint ¶¶ 152-153, 157, 218-219, 426-428. Defendants' heedless acts are both

---

[10] *See also Fire Ins. Exch. v. Bell*, 643 N.E.2d 310 , 312-313 (Ind. 1994) ("The reliability of lawyers' representations is an integral component of the fair and efficient administration of justice. The law should promote lawyers' care in making statements that are accurate and trustworthy and should foster the reliance upon such statements by others."); *Raymark Indus., Inc. v. Stemple*, 1990 U.S. Dist. LEXIS 6710, *50-52 (D. Kan. May 30, 1990) (quoting, *inter alia*, 7 James Wm. Moore et al., Moore's Federal Practice ¶ 60.33 (an attorney's "loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court.")); *cf. Moody v. IRS*, 654 F.2d 795, 800 (D.C. Cir. 1981) ("The integrity of the adversary process is not furthered by protecting a lawyer who steps outside his role as 'an officer of the court … work(ing) for the advancement of justice while faithfully protecting the rightful interests of his clients.'") (work product privilege) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

[11] See also Restatement (Second) of Torts § 674 cmt. d ("If ... the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, … he is subject to the same liability as any other person."), *quoted by*, *inter alia, Chevrin v. Travelers Ins. Co.*, 448 Mass. 95, 109 n. 12 (2006) (reversing summary judgment granted in favor of defendant and attorney on malicious prosecution claim) & *Hayes v. Zaleznik*, 2001 Mass. App. Div. 107, 111 (2001) (discussing logic behind refusing to recognize absolute privilege for attorneys against malicious prosecution claim).

actionable and unprivileged. Defendants overlook swaths of the Complaint explaining their liability, and invoke only isolated paragraphs that concern a copyright owner's right to sue, even absent registration – for any *actual damages*. If Defendants had a valid copyright,[12] they could have sought to recover their actual damages without running afoul of the copyright law, but they chose not to. Their threats to the Class never mentioned actual damages, but were rife with references to exorbitant penalties to which Achte has no right. *Id.* ¶¶ 178, 190-192, & 227. In the 17 cases they have brought against named individuals to date, Defendants have continued to claim to pursue statutory damages and attorneys' fees. *Id.* ¶¶ 216-217; Opposition p. 4 & n.1.

Defendants began to name and serve individuals in lawsuits only after the Court in the Achte action denied as "patently unfair" their motion for an extension of time of *over 58 months* to serve any defendant (Complaint ¶¶ 207-208 & nn. 69-70), and after Plaintiff filed his lawsuit (*id.* ¶¶ 209-210). Defendants' subsequent filing of 17 cases does not indicate, much less demonstrate, that Defendants seriously contemplated case-by-case litigation against any more than a handful of Class members *at the time* they sent their extortionate letters.[13] Instead, the low volume (less than 0.4%

---

[12] It is not clear that Achte has a valid registration. "In the rare instances where a plaintiff's registration was procured through fraud … the registration becomes invalid …" *Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007); see also *id.* at 161 ("where the registration was approved because the Copyright Office believed that it had accurate information, but the information contained in the application was, in reality, untrue, the plaintiff was put in a position legally equivalent to someone who had never submitted a complete application for copyright registration") (citing cases); Complaint ¶¶ 242 (b)-(c) & 252(f). Defendants profess to specifically dispute Plaintiff's support for his "position that the *Far Cry* registration is invalid," Reply p. 2 n.1, but not the Complaint's core allegations: that the registration was filed untimely, with false information, and that the remedies Defendants falsely threatened to seek are unavailable as a matter of law.

[13] Defendants raise no more than a question of fact as to whether their statements qualify for the litigation privilege. The privilege is unavailable when Defendants make a disputed factual argument concerning their good faith contemplation of litigation at the time they threatened suit. See *Meltzer v. Grant*, 193 F. Supp. 2d 373, 381 (D. Mass. 2002) (denying motion to dismiss claims based on prelitigation statements where question of fact remained regarding whether those statements were made when plaintiff was seriously contemplating litigation in good faith); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1070 (N.D. Cal. 2005) (same); *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 102-03 (D. Mass. 2006) (not applying Massachusetts litigation privilege upon finding a genuine issue of material fact as to whether defendant had forged or misappropriated documents she allegedly used to defame the plaintiff, which left the issue for jury's determination). *Id*. at 102-03.

of their 4,577 settlement targets) *supports* Plaintiff's allegations.[14] They contemplated little more than a settlement fraud racket using the imprimatur of Copyright Office and the federal courts. Defendants sold their operation to prospective clients as a means to *avoid*[15] actual prosecution of individual claims, while obtaining settlements far greater than any actual damages suffered. *Id.* ¶¶ 77-82.

Defendants consider it inarguable that, once they had filed a discovery suit in the District of Columbia to determine whom to defraud, any statement they then made in settlement letters could not be "unconnected with litigation." Reply p. 2. Impressively, that contention manages to be wrong as a matter of law, logic, facts, and morality, as discussed below.

*Legally wrong:* The Reply misstates the operative legal standard. Statements "entirely disconnected with the litigation" are indeed nonprivileged, Restatement (Second) of Torts § 587 cmt. c, but the Massachusetts litigation privilege "is available only when the challenged remarks are *relevant or pertinent* to the judicial proceedings." *Sullivan v. Birmingham*, 11 Mass. App. Ct.

---

[14] *See Meltzer*, at 381 (threats of criminal prosecution that never materialized provide basis for challenging good faith contemplation and/or serious consideration of civil litigation).

[15] There is no privilege to sue thousands *en masse* without a genuine intent to proceed against them individually. See Opposition pp. 11-12. The litigation privilege "does not apply either when a proceeding is not contemplated in good faith and/or is not under serious consideration." *Meltzer v. Grant*, 193 F. Supp. 2d 373, 377 (D. Mass. 2002) (quoting Restatement (Second) of Torts § 586 cmt. e: "The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered."); see also *Edwards v. Centex Real Estate Corp*., 53 Cal. App. 4th 15, 35 (Cal. Ct. App. 1997) ("even a threat to file a lawsuit would be insufficient to activate the privilege if the threat is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court.").

359, 362 (1981) (emphasis added).[16] Plaintiff hereby adopts by reference and fully incorporates herein his argument in Plaintiff's Surreply to Defendant Achte's Motion to Dismiss (Dkt. No. 72, pp. 17-20) concerning the litigation privilege's pertinence requirement.

*Logically wrong:* Despite the Reply's sophistry, statements in letters demanding settlement may be so irrelevant to any putative litigation as to be unprivileged. *See In re Cobb*, 445 Mass. 452, 478 (2005) (attorney "reasoned that because his own [G.L. c. 93A] demand letter was absolutely privileged under *Sriberg v. Raymond* [370 Mass. 105 (1976)], it could not provide a good faith basis for a defamation action ... The motion judge rejected this argument, as did the Appeals Court."). Even statements made during active litigation may be so irrelevant to the proceedings that they give rise to liability. In *McLaughlin v. Cowley*, 127 Mass. 316 (1879), an attorney was found liable for libel for signing and filing a client's declaration in prior litigation that contained immaterial statements:

> [P]arties, counsel, and witnesses['] statements made in the course of an action must be pertinent and material to the case. ... in order that the protection given to individuals in the interest of an efficient administration of justice may not be abused as a cloak from beneath which to gratify private malice. ...
>
> ... the statements which are here charged to be libellous ... were not necessary nor material to a full and complete presentation of the case on which [the attorney's client] asked for damages. *The ground of action was not strengthened by adding them, nor did they furnish any basis for enhancing the damages which might be recovered.* They were not pertinent to the action ...

---

[16] *Accord Clough Mktg. Servs., Inc. v. Main Line Corp*., 2007 U.S. Dist. LEXIS 34425, *14 (N.D. Ga. May 10, 2007) (no privilege for post-litigation fraud regarding settlement agreement under Florida law; "the determination of whether to apply the litigation privilege is properly focused on the purpose and timing of the misconduct, i.e., whether the conduct was in furtherance of the party's defense or prosecution of the lawsuit"); *see also id.* at *17 ("simply 'relating to' the judicial proceeding is not enough. The allegedly tortious conduct must have been taken to prosecute or defend the lawsuit ..."); *Source Entm't Grp., LLC v. Baldonado & Assocs*., PC, 2007 U.S. Dist. LEXIS 39209, *23 (D.N.J. May 31, 2007) (no litigation privilege for statements that "cannot be said to be intended to achieve the object of the Chancery Action"). The "furtherance" test "cannot be satisfied by communications which only serve interests that happen to parallel or complement a party's interests in the litigation." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1137 (Cal. Ct. App. 1996). "Stated another way ... the test can be satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case." *Id.* at 1148.

> ... The defendant stands, therefore, as to liability to action on account of these statements, precisely as if he had published them in a newspaper, and cannot justify, by showing his belief that they were true, the sources of his information, or his instructions from his client.

*Id.* at 319-20 (emphasis added) (citing *Hoar v. Wood*, 44 Mass. (3 Met.) 193 (1841) and *Rice v. Coolidge*, 121 Mass. 393 (1876)). Defendants' immaterial statements about ineligible remedies leave them similarly liable. "The potential of abuse in prelitigation communications can be prevented by active enforcement of the relevancy and pertinency requirement." *Rosen v. Brandes*, 105 Misc. 2d 506, 510 (N.Y. Sup. Ct. 1980).

Moreover, Defendants' fraudulent copyright application preceded, and was not a prerequisite for, litigation.[17] Defendants note that Achte, as a foreign entity, had no need to register Far Cry before filing suit (Reply p. 2), but they overlook the significance of this fact: Prosecuting Achte's rights as a copyright plaintiff did not call for fraud in the registration, so that fraud, and Defendants' claims for damages predicated on that false and belated registration, are not privileged. See Opposition pp. 8-9.

*Factually wrong:* The Reply ignores the facts alleged in the complaint, detailing the lack of relevance to the case of their demands for Ineligible Remedies. Defendants' material misrepresentations about their claims were irrelevant to the Achte action precisely because they categorically misstated any remedies Achte could have legitimately pursued. Defendants' $26.99 copyright claims, if valid, could not privilege irrelevant threats to seek $150,000-plus-fees in

---

[17] The false registration they obtained, and relied on in their threats to the Class, was "connected with litigation" only by its subsequent use therein to commit further acts of fraud. Defendants were not privileged to make false statements to the Copyright Office, nor to sue on their basis, and are not immune from suit over claims they made on the basis of fraudulently obtained "evidence" falsely imputing timely copyright registration. Litigation does not privilege such fraud.

litigation. Complaint ¶¶ 218-227. There is no privilege for asserting grossly exaggerated damages claims that do not relate to any that Defendants could justly raise.[18]

*Morally wrong:* The litigation privilege "exists out of the fear of a flood of actions being brought against attorneys *honestly performing their duties*." *Meltzer v. Grant*, 193 F. Supp. 2d 373, 377 (D. Mass. 2002) (emphasis added) (citing *Lucas v. Newton Wellesley Hosp.*, 2001 Mass. Super. LEXIS 329, *3 (Mass. Super. Ct. 2001)). But defendants persist in arguing that a colorable claim of copyright infringement privileges any statement about that claim, no matter how fraudulent, dishonest, or irrelevant. This exemplifies "a common thread throughout defendants' arguments—that they should have carte blanche to do anything under the guise of their 'ethical' zealous advocacy requirement. What the defendants fail to recognize is that ethical requirement must be balanced with their other ethical duties." *Raymark Indus., Inc. v. Stemple*, 1990 U.S. Dist. LEXIS 6710, *49-50 (D. Kan. May 30, 1990) (denying litigation privilege); *Clough Mktg. Servs.*, 2007 U.S. Dist. LEXIS 34425, at *17 (same; "A party is given very broad parameters with which to litigate its case, but a party is not given free rein to deceive a court or the opposition ..."). Litigants

[18] In *Ssangyong (U.S.A.), Inc. v. Innovation Grp., Inc.*, 2000 U.S. Dist. LEXIS 16282, *53 (S.D. Iowa July 27, 2000) (applying New Jersey law), the Court found a letter to a non-party was "both grossly inaccurate and reckless" and constituted defamation per se; while the author could have believed the defendant "had wrongfully retained as much as $ 15 million of its receivables, there is no basis for alleging it had 'stolen as much as $ 24 million.'" See also *id.* at 56 (denying litigation privilege even if the parties were in the process of litigation; the letter "was not made 'within the context of that litigation' to 'achieve the objects of the litigation.'"); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 802 (S.D. Ohio 2006) (prayer for relief in complaint, seeking attorney's fees barred by statute, constituted false representation).

(and their counsel) are not privileged to commit settlement fraud. *Living Designs v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 372 (9th Cir. 2005) (Hawaii law).[19]

**C. The *Noerr-Pennington* Doctrine Does Not Affect Plaintiff's Claims.**

Both parties agree that this is not an antitrust case.[20] Therefore, the *Noerr-Pennington* doctrine does not apply to Defendants' acts. Defendants continue to flog a dead horse. Their Reply's grounds for dismissal rehashes previously addressed arguments. Plaintiff hereby adopts by reference and fully incorporates herein his arguments in his Opposition (pp. 16-20); his Opposition to Defendant Achte's Motion to Dismiss (Dkt. No. 51, pp. 7-11; and his Surreply to Defendant Achte's Motion to Dismiss (Dkt. No. 72, pp. 12-17) concerning the inapplicability of *Noerr-Pennington* outside the antitrust context.

**D. The Complaint Adequately Pleads Claims for Violations of RICO.**

Defendants offer three arguments that Plaintiff has not adequately pled claims for RICO violations: 1) filing a frivolous lawsuit and/or fabrication of evidence are not predicate acts for the Hobbs Act;[21] 2) Plaintiff alone has not pled a casual link between the alleged conduct and an actual injury; and 3) Plaintiff has not pled a a pattern of racketeering activity or established continuity of the conduct alleged. None of these arguments has merit.

---

[19] There is also no privilege to sue, or threaten to sue, anyone (much less, the thousands in the Class) on the basis of information known to be false. *See Edwards v. Centex Real Estate Corp*., 53 Cal. App. 4th 15, 34 (Cal. Ct. App. 1997) ("A prelitigation privilege that is extended too far in advance of litigation could promote fraudulent misrepresentations made to head off a lawsuit, when the victims of such misrepresentations have fewer means to discover the fraud. Such an extension of the privilege would actually hinder access to the tools of discovery available in litigation, thereby defeating one of the original purposes of the privilege itself."); *see also id.* at 37 ("We simply decline to extend the privilege, as respondents would have us do, to all settlement negotiations. Such an approach would effectively condone fraud and deceit once any tort has been committed or claim has been made, on the theory that litigation 'might' result. We need not encourage fraud in an effort to secure free access to the courts.").

[20] Opposition p. 30 ("this is not an antitrust case."); Reply p.8 ("this … is not an antitrust case").

[21] Through this argument, Defendants implicitly admit the frivolousness of the underlying Achte action and that evidence was fabricated in support. Notably, Defendants do not argue in the alternative, but rather declare these acts carry no liability.

A predicate act for extortion may be shown by either statutory or case law. The Hobbs Act defines extortion to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Defendants do not contest Plaintiff has satisfied the statutory definition.

Case law also finds extortion under the Hobbs Act whenever property is obtained by "inherently wrongful means" regardless of whether or not the defendant had a lawful claim to the property.[22] Or as Defendants prefers to argue: "[n]umerous courts have held that litigation conduct cannot constitute a predicate act for RICO purposes." Reply p. 9. Although instituting a lawsuit is not inherently wrongful, Defendants' use of a lawsuit to obtain property to which they had no lawful claim converted otherwise lawful activity into 'wrongful means.' Their reliance on *United States v. Pendergraft*, 297 F. 3d 1198, 1208 (11th Cir. 2002), a case "narrowly tailored" to the proposition that the Hobbs Act does not apply when the government is the intended beneficiary of the allegedly extortionate acts, is misplaced.[23] Likewise, the remaining cases Defendants cite for support frame the issue in terms of a *pattern* of extortion, without holding that litigation *per se* "cannot constitute a predicate act." Reply p. 9, citing inter alia *I.S. Joseph Co., Inc., v. J. Lauritzen A/S*, 751 F. 2d 265, 266 (8th Cir. 1984) (one threat to file a civil action, and one instance of travel for the purpose of making such a threat, did not constitute a "pattern of racketeering activity" so the threats to sue did not qualify as acts of racketeering); *Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001) (citing the rationale of *I.S. Joseph*); and *Gabovitch v. Shear*, 1995 U.S. App. LEXIS 32856, *6 (1st Cir. 1995) (finding no predicate act of extortion where the

---

[22] *Viacom, Inc., v. Icahn*, 747 F. Supp. 205, 211 (S.D.N.Y. 1990); *United States v. Clemente*, 640 F. 2d 1069, 1077-1078 (2d Cir. 1981) ("a broad spectrum of legitimate business transactions" can constitute wrongful means if used to obtain property to which no lawful claim exists); *Lemelson v. Wang Labs., Inc.*, 874 F. Supp. 430 (D. Mass. 1994) (defendant filed RICO counterclaim alleging plaintiff used frivolous litigation of infringement claims based on fraudulently obtained patents to extort millions of dollars).

[23] The rationale for *Raney's* reliance on *Pendergast* is unexplained. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004). *Cf. Wilkie v. Robbins*, 551 U.S. 537, 563 (2007).

defendants prevailed in their state court suit). In this District, the filing of a lawsuit for the purpose of extorting property may constitute a RICO predicate. *Lemelson v. Wang Labs., Inc.*, 874 F. Supp. 430 (D. Mass. 1994). See also *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51 (1st Cir. 2000) (assuming goal filing of frivolous suits may constitute RICO extortion in some instances).[24]

Defendants' second argument conflates standing with proximate cause. As noted before, Plaintiff satisfies the standing requirements for multiple counts, but need not do so for *all* counts, because other Class members do. Opposition p. 7 (citing *Harris v. White*, 479 F. Supp. 996, 1009 (D. Mass. 1979)). Defendants cite *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007), which addresses standing, in support of their proximate cause argument. While RICO "standing" and the requirement of "proximate cause" are both derived from the same statutory "by reason of" language, they are distinct. Regardless, proximate cause is an issue of fact over which a gate-keeper would expect to exercise a lesser role, in deference to the fact-finder, and as such is inappropriate for a motion to dismiss. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613 (6th Cir. 2004). Nonetheless, Plaintiff agrees with Defendants' citation of *Walter*. Plaintiff's injuries, and to an extent the Class', are from attorney fees incurred in the underlying Achte action, which Defendants note can constitute standing for RICO injury. Complaint ¶¶ 232, 233; Opposition

---

[24] See also *Reynolds v. Condon*, 908 F. Supp. 1494. 1516 (N.D. Iowa 1995) (divorce lawyer knowingly participated in extortion of divorce settlement based on threat to cause baseless prosecution of husband for sexual abuse of his son); *Hall American Center Associates Ltd. Partnership v. Dick,* 726 F. Supp. 1083, 1097 (E.D. Mich. 1989) (filing of lawsuit as part of scheme to extort property).

pp. 17, 24 n. 57 (citing *Lemelson*; "Where legal fees are expended as an intended consequence of a defendant's racketeering activities, those fees may constitute RICO damages.").[25]

The Reply's reliance argument is at odds with itself. Defendants question Plaintiff's reliance but concede that the Supreme Court has held that first-party reliance is not required for a plaintiff to assert a civil RICO claim predicated on mail or wire fraud. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657-658 (2008). The breadth of the unanimous *Bridge* opinion's reasoning and holding suggests that not only is reliance not a necessary element for civil RICO actions predicated upon mail or wire fraud, but that reliance is not a necessary element to satisfy the proximate cause requirement embodied in the "by reason of" language of subsection 1964(c). Even prior to the *Bridge* opinion, proximate cause has been found in circumstances where the injury flowing to a plaintiff resulted from the defendant's deception of a *third party*. See *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 104 (1st Cir. 2002) ("RICO bases its own brand of civil liability simply on the commission of specified criminal acts … and criminal fraud under the federal statute does not require 'reliance' by anyone."). To quote Justice Thomas: "if [defendant's] proposed requirement of first party reliance seems to come out of nowhere, there is a reason: Nothing on the face of the relevant statutory provisions imposes such a requirement." *Bridge*, at 648.

---

[25] See also *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) (holding plaintiff's expenditure of attorneys' fees in objecting to defendant's allegedly fraudulent claims in other litigation sufficient injury within the meaning of RICO); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (allowing legal fees to be recoverable under RICO); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (holding plaintiff could recover under RICO for past legal fees and expenses incurred "in fighting defendants' frivolous lawsuits in New York state court"); *Geraci v. Women's Alliance, Inc.*, 436 F. Supp. 2d 1022, 1039 (D.N.D. 2006) (holding plaintiff had standing because he incurred out-of-pocket expenses that included attorneys' fees); *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004) (holding legal expenses incurred in other proceedings as a result of a RICO defendant's wrongful conduct can be recovered; "[l]egal expenses are concrete financial losses"); *LaBarbera v. Angel*, 95 F. Supp. 2d 656, 662 (E.D. Tex. 2000) ("To the extent that the plaintiffs incurred expenses as a result of defending [the defendant's] claim and asserting a counter-claim against him those expenses can be the subject of a civil RICO cause of action.").

Defendants' final argument against Plaintiff's RICO claim is that it neither sets forth a pattern nor alleges a threat of continuity. Because continuity is an element of establishing a pattern, Plaintiff addresses Defendants' argument as it relates to continuity.

A plaintiff need not allege that at least two acts were perpetrated against him, so long as he alleges that he has been injured by an act that is part of a pattern of racketeering activity. *Brown v. Cassens Transport Co.*, 546 F.3d 347, 353 (6th Cir. 2008) ("nowhere does the statute require that the injury to each plaintiff must have independently consisted of a pattern of activity by the defendant"). In *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229 (1989), the Supreme Court rejected the notion that a pattern must encompass more than one criminal scheme.[26] Rather, it held that a plaintiff need only prove two requirements to establish a "pattern": continuity and relationship among the predicate acts. In so doing, the Court requires lower courts to examine the individual facts of each case to determine whether there is the type of continuity and relationship required to form a pattern of racketeering activity. *Id.* at 239. Defendant does not contest Plaintiff has met the relationship prong of establishing a pattern.

Despite Defendants' claim that Plaintiff failed "to allege continuity and/or the threat of continuity," there is no requirement that the criminal conduct be ongoing or open-ended at the time suit is filed. In *H.J. Inc.,* the Court defined two forms of continuity: closed-ended, which is a "closed period of repeated conduct," and open-ended, defined as "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241. Defendants have not specified which form it is contesting. Regardless, their continuity argument contests facts, not

[26] See also *Eastern Corp. Fed. Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1535, 1536 n.2 (D. Mass 1986); ("This court is not prepared to rule that, as a matter of law, one scheme to defraud may not constitute a pattern of racketeering activity … This approach is consistent with many of the recent decisions finding that one scheme to defraud did satisfy the RICO requirement of a pattern.")

law.[27] When ruling on a motion to dismiss, the court accepts as true all factual allegations and draws all reasonable inferences in the non-movant's favor. Fed. R. Civ. P. 12(b)(6). Though Defendants cite cases that discuss a multi-factor approach, they adopt the *Fleet Credit* approach and focus on only the number of acts and duration of time to determine continuity. *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445-446 (1st Cir. 1990) (multi-factor approach unreliable after *H.J. Inc*; many related predicate acts committed over a substantial period of time establishes continuity regardless of other factors). The most recent First Circuit opinion on point again lends support to the *Fleet Credit* approach. *Fabrica De Muebles J.J. Alvarez, Inc. v. Westernbank De P.R.*, 2009 U.S. Dist. Lexis 112843, *27 (D.P.R. Dec. 4, 2009); see also *Lemelson*, 874 F. Supp. at 434 (denying motion to dismiss defendant's RICO counterclaim contending only that plaintiff "extorted millions of dollars in settlement monies through a pattern of litigation involving infringement claims based on fraudulently obtained patents.")

This is not a case where Defendants committed a limited number of predicate acts against a handful of people over the course of a few months. Defendant Guardaley has done business for the USCG scheme as early as March 2009, when it began to apply the USCG business model by tracking alleged infringers of Achte's copyright. Plaintiff's Surreply to Defendant Achte's Motion to Dismiss (Dkt. No. 73) pp. 6-7 & n.6. Indeed, Defendants alleged acts of infringement commencing on September 18, 2009. Complaint ¶ 149. Defendants continue to pursue fraudulent

---

[27] Defendants note courts "generally" require the complaint to state the time, place and content of the alleged mail and wire communications perpetrating the fraud, but this is not so when plaintiffs are not in a position to know specific facts until after discovery. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987) (where specific information regarding defendant's use of the mails or wires is exclusively within the defendant's control the court may allow discovery). Regardless, Defendants do not dispute Plaintiff has pled Rule 9(b) sufficient to provide adequate notice of the acts giving rise to the action, so that a meaningful answer and defense can be prepared. Fed. R. Civ. P. 9(b).

claims against members of the Class.[28] Defendants' acts of fraud alone include not only any communications made to the 4,577 members of the Class, but any communications made in furtherance of the scheme. Defendants have argued that each act of infringement they purported to challenge is part of a continuous chain. Complaint ¶¶ 148-149 & Exh. M. Absent judicial intervention, the door is open for Defendants to continue pursuing claims for Ineligible Remedies against an untold number. Their Copyright Scheme has been operating for no fewer than 30 months, continues to operate, and at a minimum includes 4,577 acts of extortion and/or mail and wire fraud. Defendants' contention of a business model "less than eighteen months" in existence, with a "limited life expectancy," targeting one individual, Reply p. 12, is directly contradicted by Plaintiff's well-pleaded complaint.

## CONCLUSION

For all the above reasons, and those in Plaintiff's Memorandum of Law in Opposition to Defendants Dunlap, Grubb & Weaver, PLLC, US Copyright Group, Thomas Dunlap, and Nicholas Kurtz's Motion to Dismiss Second Amended Class Action Complaint, Plaintiff respectfully renews its request that the Court deny the defendants' motion to dismiss in its entirety, and award attorney's fees and expenses to Plaintiff, and such other further relief that the Court deems just and proper.

Respectfully submitted,

Dmitriy Shirokov

/s/ Jason Sweet
Jason Sweet (BBO #668596)
BOOTH SWEET LLP

---

[28] *See* Complaint ¶ 184 n. 56 ("Defendants anticipated that infringements would continue, and pleaded for the opportunity to add more targets, on the belief that "the information obtained in discovery will lead to the identification of additional infringing parties to be added to this Complaint as defendants, since monitoring of online infringement of Plaintiff's motion picture is ongoing."); *id.* ¶ 248 ("In the absence of appropriate injunctive and/or declaratory relief, Defendants will continue to gather contact information for alleged infringers, threaten them with illegitimate claims, and collect settlements stemming from the same activity."); and Opposition p. 4 n.1 (noting Defendants have filed suit as recently as February 17, 2011). Further, members of the Class continue to receive demand letters in which Defendants make fraudulent claims for Ineligible Remedies.

32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883

*Co-Counsel for Plaintiff and Proposed Class*

**CERTIFICATE OF SERVICE**

I, Jason Sweet, hereby certify that on this October 7, 2011, I electronically filed the foregoing Plaintiff's Surreply to Dunlap, Grubb, & Weaver, PLLC, US Copyright Group, Thomas Dunlap, and Nicholas Kurtz's Motion to Dismiss Second Amended Class Action Complaint, by using the ECF system, thereby causing a true copy of said documents to be served upon counsel of record for each Defendant identified on the Notice of Electronic Filing.

/s/ Jason Sweet