UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
DMITRIY SHIROKOV, on behalf of      )
himself and all others similarly situated,   )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )          Civil Action No. 10-12043-GAO
                                    )
DUNLAP, GRUBB & WEAVER              )
PLLC, et al.,                       )
                                    )
        Defendants.                 )
_____)

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**
[Docket Nos. 28, 42, and 46]

March 1, 2012

Boal, M.J.

        In this proposed class action, Plaintiff Dmitriy Shirokov ("Shirokov") alleges that the

defendants defrauded him and thousands of similarly situated individuals.  He alleges that the

defendants entered into a scheme to profit from copyright infringement allegations through fraud

and extortion, which caused members of the class to make millions of dollars in excess

settlement payments to the defendants.  According to Shirokov, with the help of defendants

GuardaLey, Limited ("GuardaLey") and the United States Copyright Group ("USCG"),

defendants Thomas Dunlap ("Dunlap"), Nicholas Kurtz ("Kurtz") and law firm Dunlap, Grubb

& Weaver PLLC ("DGW"), misrepresented defendant Achte/Neunte Boll Kino Beteiligungs

Gmbh & Co KG's ("Achte") rights in the movie Far Cry to the United States Copyright Office

(the "Copyright Office"), federal courts and class members.  In summary, Shirokov alleges that

the defendants told him and class members that Achte was entitled to statutory damages and

attorneys' fees for Shirokov and others' alleged copyright infringement, knowing that Achte was not entitled to those remedies.

All of the defendants have moved to dismiss the Second Amended Complaint. For the following reasons, this Court recommends that the District Judge assigned to this case GRANT the motions in part and DENY them in part.

I.     PROCEDURAL HISTORY

Shirokov filed his original complaint on November 24, 2010. (Docket No. 1). In response, the Dunlap Defendants filed a motion to dismiss the complaint and a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. (Docket Nos. 4, 6).

On February 8, 2011, Shirokov filed a First Amended Complaint. (Docket No. 10). The Dunlap Defendants filed renewed motions to dismiss and for sanctions under Rule 11 on February 22, 2011. (Docket Nos. 15, 17).

On March 9, 2011, the District Court granted Shirokov's motion to file a Second Amended Complaint and Shirokov filed such complaint on March 18, 2011. (Docket Nos. 25 and 26). All defendants have moved to dismiss the Second Amended Complaint. (Docket Nos. 28, 42, 46). The Dunlap Defendants have also filed a renewed motion for sanctions under Rule 11. (Docket No. 30). On May 13 and 24, 2011, the District Court referred the pending motions to this Court for a report and recommendation.

The pending motions have been the subject of extensive briefing by the parties. (See Docket Nos. 29, 36, 44, 48, 51, 55, 56, 64-66, 71-73, 77). The Court heard oral argument on February 15, 2012.

II.     <u>FACTS</u>[1]

    A.     <u>The Defendants</u>

Defendant DGW is a Virginia law firm with offices in Leesburg, Virginia, Washington, D.C., and Naples, Florida.  (Second Amended Complaint ("Complaint"), ¶ 34).  DGW holds itself out as having special expertise in intellectual property law, and in copyright law specifically.  (Complaint, ¶ 58).  Defendant Dunlap is an attorney and the managing partner at DGW and USCG.  (Complaint, ¶ 36).  Defendant Kurtz is an attorney at DGW.  (Complaint, ¶ 37).

Defendant USCG is a Virginia corporation that acts as a registered alias for a partnership between DGW and GuardaLey.  (Complaint, ¶ 35).  USCG also acts as a registered alias of several corporations with ties to DGW.  (<u>Id.</u>).

GuardaLey, a German company with offices in the United Kingdom, is a partner with DGW in managing USCG.  (Complaint, ¶ 38).  Defendant Achte is a German limited partnership in the business of motion picture creation and distribution.  (Complaint, ¶ 39).

    B.     <u>The Alleged "Copyright Scheme"</u>

Shirokov alleges that DGW, in connection with USCG, Dunlap, Kurtz, GuardaLey, and Achte, has developed a lucrative trade "in monetizing copyright infringement allegations." (Complaint, ¶ 2).  GuardaLey monitors and records online instances of alleged copyright infringement of motion pictures.  (Complaint, ¶ 4).  USCG provides information of the alleged infringement to film industry clients, but cautions them that civil prosecution of copyright claims is not "practical," in light of the financial status of individual infringers.  (<u>Id.</u>).

---

[1] Because this case is presently before the Court on motions to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Second Amended Complaint and drawing all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Morales-Tañon v. P.R. Elec. Power Auth.</u>, 524 F.3d 15, 17 (1st Cir. 2008).

On the basis of GuardaLey's records, the Dunlap Defendants typically file a single civil complaint in the United States District Court for the District of Columbia against hundreds of John Does from all over the country, regardless of the jurisdiction where the alleged infringements took place.  (Complaint, ¶ 6).  The complaint alleges mass online infringement and petition the court to issue subpoenas to Internet Service Providers ("ISPs"), seeking contact information for the alleged infringers.  (Id.).

The Dunlap Defendants use the information provided by the ISPs to send to the alleged infringers virtually identical "litigation settlement demand" letters.  (Complaint, ¶ 7).  The letters demand $1,500 from each recipient, increasing to $2,500 if not sent promptly, under deceptive threats of impending litigation.  (Id.).  The Dunlap Defendants and their clients, however, have no intention of litigating these claims to resolution, and indeed do not have the capacity to do so, should the alleged infringers not pay the amount demanded.  (Complaint, ¶ 8).

Shirokov alleges that he and the class members received these settlement demand letters from the Dunlap Defendants on behalf of Achte.  (Complaint, ¶¶ 158-161 and Exhibit N thereto).  Shirokov alleges that the defendants acted together in an effort to coerce him and other class members to pay the amounts demanded, even though the Dunlap Defendants knew that Achte could never prevail on its claims for statutory damages.  (Complaint, ¶¶ 15, 24, 176, 178-182).

C.    Achte's Copyright

Achte is a German film production company that has made over twenty feature-length motion pictures.  (Complaint, ¶ 91).  One of its pictures, Far Cry, was filmed in Canada in the summer of 2007.  (Complaint, ¶ 98).  Far Cry was first released in theaters in Germany on October 2, 2008.  (Complaint, ¶ 99).  It premiered on over 200 different screens in the first week of release.  (Id.).

4

Far Cry was first released in United States theaters on December 17, 2008.  (Complaint, ¶ 100).  The film was first published on DVD on April 14, 2009, when the DVD was offered for sale in the Netherlands.  (Complaint, ¶ 101).  Far Cry was also offered for sale to the public in the United Kingdom and Italy on September 7, 2009 and October 14, 2009, respectively.  (Complaint, ¶ 102-103).  The film was commercially released on DVD in the United States and Canada on November 24, 2009.  (Complaint, ¶ 104).

DGW submitted a copyright registration application for Far Cry to the Copyright Office.  (Complaint, ¶ 111).  The application falsely stated that Far Cry was first published on November 24, 2009.  (Id.).  Defendants knew that the statement that Far Cry was first published on November 24, 2009 was false.  (Complaint, ¶ 115).  Accordingly, Shirokov claims that Achte's registration for Far Cry is invalid.  (Complaint, ¶ 22).

Shirokov alleges that DGW and Achte intentionally lied to the Copyright Office about the first publication date in order to maximize the infringement damage awards that Achte could pursue.  (Complaint, ¶¶ 11-12).  Properly registered works, asserts Shirokov, enjoy the benefits of statutory damage awards of between $750 and $30,000 for each infringed work and $150,000 for each infringed work if the infringement was committed willfully.  (Complaint, ¶ 43).  If DGW and Achte had been truthful about the first publication date, however, Achte would be limited to recovering actual damages for each alleged act of infringement.  (See generally Complaint at ¶¶ 44-57, 90-130).  For every act of infringement allegedly committed by Shirokov and Class members, the most that Achte could recover is $26.99, the list price of a new DVD of Far Cry.  (Complaint, ¶¶ 219-221).

D.    The Underlying Achte Lawsuit

On March 18, 2010, DGW filed a suit in the United States District Court for the District of Columbia on behalf of Achte against 2,094 anonymous individuals ("John Doe Defendants"), alleging infringement of Far Cry (the "Achte Lawsuit").[2]  (Complaint, ¶ 134).  The Achte Lawsuit alleged that the John Doe Defendants had infringed Achte's copyright in Far Cry.  (Id.). On the same date, DGW sought leave of court to serve subpoenas on ISPs across the country to determine the identity of the John Doe Defendants and their contact information.  (Complaint, ¶ 135).  The court granted leave on March 23, 2010.  (Id.).

Pursuant to the subpoenas, DGW obtained the names and contact information of the John Doe Defendants.  (Complaint, ¶¶ 136-137).  Shirokov was identified as one of the John Doe Defendants.  (Complaint, ¶ 139).

On May 12, 2010, DGW filed a First Amended Complaint for Copyright Infringement on behalf of Achte, raising to 4,577 the alleged number of infringers of Far Cry.  (Complaint, ¶ 142).  DGW repeatedly sought to extend the time for serving the complaint, prolonging the pendency of the Achte Lawsuit against the class members.  (Complaint, ¶ 195).  More than six months after filing the original complaint, Achte asserted through DGW that the class members (who had not been yet formally served and had not been named) were "not yet named parties" and therefore had no standing to seek dismissal.  (Complaint, ¶ 197).

On September 10, 2010, the court in the Achte Lawsuit ordered Achte to show cause why class members who had submitted affidavits regarding their locations should not be dismissed on the basis of lack of personal jurisdiction.  (Complaint, ¶ 204).  On the same date, certain John Doe Defendants filed an omnibus motion to quash a subpoena issued by Achte and to dismiss the

---

[2] Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. Kg v. Does 1-2,094, No. 10-cv-453 (D.D.C.).

moving defendants from the Achte Lawsuit.  (Id.).  The motion sought dismissal on jurisdictional grounds and explained that geographic location information available in the IP addresses, which served as the basis for the Achte Lawsuit, revealed that each of the moving defendants was located outside of Washington, D.C. at the time of the alleged infringement.  (Id.).  In opposition to the motion, Achte argued that "it would not make practical sense to dismiss particular Doe Defendants on a piecemeal basis" before the court-ordered deadline to name and serve all defendants.  (Complaint, ¶ 205).

On November 18, 2010, the last day of its already extended time to name and serve defendants, Achte filed a motion asking the court to extend the deadline for service for five years, arguing that it should not be forced to litigate its case against any class member until every class member had been identified.  (Complaint, ¶ 207).

On November 19, 2010, the court ordered Achte to file a second amended complaint "identifying by name and address Defendants over whom it reasonably believes the Court has personal jurisdiction and whom it wants to sue," or if it did not have that information, the IP address of those over whom Achte continued to claim the court had jurisdiction.  (Complaint, ¶ 208).  The court also ordered Achte to file a status report by February 18, 2011 as to any class members for whom it did not yet have identifying information from the ISPs.  (Id.).

In response to the November 19, 2010 order, Achte filed a second amended complaint on December 6, 2010.  (Complaint, ¶ 209).  The second amended complaint named only one class member as a defendant, along with 139 unnamed John Doe Defendants, out of the 4,577 class members Achte had identified in the first amended complaint.  (Id.).  Achte also filed a notice of dismissal without prejudice of its claims against all other members of the class.  (Id.).  On

December 14, 2010, the court entered an order approving Achte's dismissal of its claims against all other members of the class. (Complaint, ¶ 212).

After voluntarily dismissing the claims against 4,437 of the members of the Class, Achte filed suit against eight class members as named defendants in individual lawsuits in other courts. (Complaint, ¶ 214). Since the dismissal of most of the John Doe Defendants in the Achte Lawsuit, Achte has not refiled any claims against any member of Subclass I (defined below) and has filed only one case against a named member of Subclass II (defined below). (Complaint, ¶ 215). At oral argument, the parties confirmed that Shirokov has not been named in any lawsuit.

E.      The Settlement Demand Letters

On or about May 19, 2010, Defendant Kurtz sent a letter to Shirokov, accusing him of infringing the copyright in Far Cry (the "Letter"). (Complaint, ¶ 158 and Exhibit N thereto). The Letter stated that DGW had filed suit on behalf of Achte in the District of Columbia and that Shirokov's ISP had supplied DGW with Shirokov's contact information, identifying him as "one of the Defendants who has illegally obtained or shared our client's copyrighted motion picture through a peer-to-peer network. . ." (Complaint, ¶ 162 and Exhibit N thereto). The Letter also stated, in relevant part:

> We are sending you this letter as a courtesy before we are required to take more formal legal action which would involve adding you as a named Defendant to the lawsuit.
>
> ***
>
> The law provides protection for copyright owners through the Federal copyright statute found at 17 U.S.C. §§ 501-506, which allows the copyright owner to impound your material, recover their attorney's fees, and seek damages of $750 - $150,000 per work, depending on the circumstances surrounding the infringement. . . .
>
> In exchange for a comprehensive release of all legal claims which will enable you to avoid becoming a named Defendant in the lawsuit, our firm is authorized to

accept the sum of **$1,500** as full settlement for its claims.  **This offer will expire at 5pm EST on June 11, 2010.**  Thereafter, our client will accept no less than the sum of **$2,500** to settle this matter, but this increased settlement offer will expire on June 30, 2010.  In addition, you must remove the file from the shared folder or location where our client's film can be shared or copied within three (3) days of paying a settlement.  If you have chosen not to settle by June 30th, we may add you to the list of defendants to be served with a lawsuit.

***

We look forward to resolving this without further action on our part, however if you do not comply with the above requests we may be forced to name you as a Defendant to the lawsuit and proceed directly against you on behalf of our client. If forced to do so, our client will be seeking to recover the maximum amount of fees provided under the Copyright Act for copyright infringement, which is up to $30,000 per illegally downloaded film, plus attorneys' fees and costs of litigation. Because torrent-file sharing requires *deliberate* action by the uploader or downloader of a movie, we may be able to prove that your actions were intentional, rather than just negligent.  In the event we are able to prove that the infringement was intentional, our client will be seeking the maximum statutory damages allowed by the Copyright Act in the amount of $150,000 per infringement, attorneys' fees and costs.

***

**We strongly encourage you to consult with an attorney to review your rights and risk exposure in connection with this matter.**  You should also visit the Frequently Asked Questions web page we have posted at www.farcry-settlement.com, which will provide additional information and hopefully answer many of the questions you have. . . .

(Exhibit N to Complaint) (emphasis in original).

The Letter directed Shirokov to a "Frequently Asked Questions" website.  That website

included the following information:

<u>2.  I have received a letter in the mail about a lawsuit.  Why did I get this letter?</u>

This letter is a demand letter.  A lawsuit has been filed against you in the United States Federal District Court for the Federal District of Columbia for copyright infringement as a result of information about your infringing download of a motion picture.  If you pay the settlement amount and accept the terms of the settlement agreement proposed on your case then you will be dismissed from the lawsuit and your information will remain anonymous.  If you do not accept the settlement agreement you may subsequently be served with the lawsuit and

expected to defend the claim of copyright infringement as alleged in the complaint.

***

4.  What are the consequences or damages that can be awarded in a copyright infringement case?

Statutory damages are available to the owner of a registered work under Title 17, Section 504 of the United States Code in an amount of between $750 and $30,000 per infringed work, if the infringement was not willful.  If the infringement was willful, as asserted in the Complaint filed in this case, damages may be as much as $150,000 per infringed work.

5. Are there potential benefits to settling this claim?

We are not your attorneys and we are not providing you legal advice.  We strongly recommend that you seek advice from an attorney.  There are several aspects of settling the copyright infringement claim against you that you might find beneficial.  Settling the claim allows you to pay a relatively nominal, one-time lump sum payment to completely resolve the claim, without having to defend yourself in court.  The legal fees incurred in defending a copyright infringement claim will almost always exceed the settlement amount demanded by our client.  Second, your settlement, identity and contact information will remain private, in that we will not release your information to any third party unless legally required to do so.  Third, by settling, you will avoid the potential for a jury verdict against you that could exceed the amount of the settlement (up to $150,000, for willful infringement) and include an award of our client's attorneys' fees, which will be certainly be several thousand dollars more.  Finally, settling allows you to resolve the claim quickly and easily, over the Internet or by mail.

(Exhibit P to Complaint).  Beyond factually specific allegations, the defendants have sent

substantially identical letters to the members of the class.  (Complaint, ¶¶ 159-160).

Shirokov did not pay to settle the claims.  (Complaint, ¶ 232).  However, he alleges that

he has incurred costs in retaining counsel "in reliance on the false allegations of the Letter and in

order to determine the merits of its claims. . . Plaintiff would have avoided those costs had the

Letter been truthful."  (Complaint, ¶ 232).

Based on his allegations, Shirokov has brought nineteen causes of action, including conspiracy, Computer Fraud and Abuse Act claims, RICO violations, fraud on the court, abuse of process, malicious prosecution, fraud on the copyright office, copyright misuse, and unfair and deceptive practices under Chapter 93A.

F.      The Putative Class

Shirokov brings this action on behalf of a class of all 4,577 persons who defendants allege infringed Achte's copyright in Far Cry prior to May 12, 2010, the date on which Achte filed its amended complaint in the Achte Action. (Complaint, ¶ 239).  The class is further divided into two subclasses: (1) a subclass of all 917 persons ("Subclass I") who defendants allege infringed Achte's copyright prior to its claimed date of publication, November 24, 2009; and (2) a subclass of all 3,644 persons ("Subclass II") who defendants allege infringed Achte's copyright prior to its effective date of registration, January 19, 2010.  (Id.).  Shirokov alleges that he is a member of Subclass II.  (Complaint, ¶ 139).

III.   ANALYSIS

A.      GuardaLey's Motion To Dismiss For Lack Of Personal Jurisdiction

In addition to moving to dismiss the Complaint for failure to state a claim, defendant GuardaLey also argues that the Complaint must be dismissed against it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, because this Court does not have personal jurisdiction over GuardaLey.  (Docket No. 44 at 4-14).  "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  Therefore, the Court first addresses the jurisdictional issue before reaching GuardaLey's motion to dismiss for failure to state a

claim.  For the reasons that follow, this Court recommends that the motion to dismiss for lack of

personal jurisdiction be ALLOWED.

    *1.    Documents Outside Of The Complaint*

    In order to determine precisely which materials are properly before the Court for

purposes of deciding the defendants' motions to dismiss, this Court must first decide

GuardaLey's motion to strike.  (Docket No. 58).  Shirokov has submitted certain exhibits in

connection with his opposition to GuardaLey's motion to dismiss the Complaint.  (See Ex. A

through L to Docket No. 56).   In addition, he has included a section entitled "Statements of

Facts Specific to GuardaLey" on pages 5 through 9 of his opposition.  (Docket No. 56 at 5-9).

For the reasons set forth below, the Court denies in part and grants in part GuardaLey's motion

to strike.  The Court will consider those materials only in connection with GuardaLey's motion

to dismiss the Complaint for lack of personal jurisdiction but not in connection with the motion

to dismiss the Complaint for failure to state a claim.[3]

    GuardaLey is correct that, generally, the Court may not consider documents outside of

the complaint in connection with a motion to dismiss under Rule 12(b)(6).  Nollet v. Justices of

the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) (Harrington, J.), aff'd, 248

F.3d 1127 (1st Cir. 2000).  Nevertheless, on a motion to dismiss for lack of personal jurisdiction,

the court may consider facts outside of the complaint.  Boit v. Gar-Tec Prods., Inc., 967 F.2d

671, 675 (1st Cir. 1992) (citations omitted) (In order to sustain burden of proving personal

jurisdiction, "plaintiff must go beyond the pleadings and make affirmative proof."); Callahan v.

---

[3] Shirokov argues that the Court may also consider materials outside of the Complaint in
connection with the defendants' motion to dismiss on the basis of subject-matter jurisdiction
(standing).  (Docket No. 66 at 9-10).  However, none of the challenged materials have any
relevance to the issue of subject-matter jurisdiction.  As such, the Court does not consider them
for that purpose.  In addition, the Court finds that none of the exceptions regarding the
prohibition against considering materials outside the Complaint in connection with a Rule
12(b)(6) motion apply to the challenged materials.  See Nollet, 83 F. Supp. 2d at 208.

Harvest Board Int'l, Inc., 138 F. Supp. 2d 147, 152-53 (D. Mass. 2001) ("The consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction."). This Court, therefore, declines to strike any of the challenged submissions but will consider them only in connection with GuardaLey's motion to dismiss for lack of personal jurisdiction under the following framework:

> On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists . . . In conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim . . . We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted . . . We caution that, despite the liberality of this approach, the law does not require us struthiously to credit conclusory allegations or draw farfetched inferences.

Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (internal citations omitted). As part of this analysis, the Court does not act as a fact finder. Rather, the Court must determine "whether the facts duly proffered [when] fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997). However, "allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001).

2.      *Standard of Review*

Although GuardaLey filed the motion to dismiss, Shirokov ultimately bears the burden of persuading the Court that it has personal jurisdiction over GuardaLey. Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008). In considering a motion to dismiss for lack of personal jurisdiction, a court may choose from three methods for determining whether the plaintiff has met his burden of establishing personal jurisdiction. Adelson v. Hananel, 510 F.3d 43, 48 (1st

Cir. 2007).  These methods include the prima facie method, the "preponderance of the evidence"

method, and the "likelihood" method.  Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d

138, 145-47 (1st Cir. 1995). When, as here, a court rules on a motion to dismiss for lack of

personal jurisdiction without holding an evidentiary hearing, the "prima facie" standard governs

its determination.   United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).

Under the prima facie standard, Shirokov must "go beyond the pleadings and make affirmative

proof" to demonstrate the existence of personal jurisdiction.  Id. at 619.  However, the Court

"accept[s] the plaintiff's (properly documented) evidentiary proffers as true" and construes those

facts "in the light most congenial to the plaintiff's jurisdictional claim."  Hannon, 524 F.3d at

279 (internal quotation marks and citations omitted).

      In his Complaint, Shirokov stated that this Court had jurisdiction over the subject-matter

of the dispute on the basis of both diversity of citizenship, 28 U.S.C. § 1332, and the existence of

federal questions, 28 U.S.C. § 1343.  (Complaint, ¶¶ 27-28).  "When the district court's *subject-

matter* jurisdiction rests wholly or in part on the existence of a federal question, the constitutional

limits of the court's *personal* jurisdiction are drawn in the first instance with reference to the due

process clause of the fifth amendment."  Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 719

(1st Cir. 1991) (emphasis in original).  In such circumstances, the Fifth Amendment requires

only that the defendant have "minimum contacts" with the United States, rather than with the

particular forum state (as would be required in a diversity case).  Id.; United Elec., Radio and

Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) (citations

omitted).

      "Nevertheless, while courts in federal question cases have found 'that sufficient contacts

[to justify the assertion of personal jurisdiction] exist whenever the defendant is served within

the sovereign territory of the United States,' the basis for service of process returnable to a particular court must be grounded within a federal statute or Civil Rule." <u>United Elec., Radio and Mach. Workers of Am.</u>, 960 F.2d at 1085 (quotation omitted).  "In other words, though personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction." <u>Id.</u> (citations omitted).

Rule 4 of the Federal Rules of Civil Procedure is the principal mechanism for service of process in federal courts. <u>Id.</u>  Under most circumstances, Rule 4(f) limits service of process "to the territorial limits of the state in which the court is held." <u>Id.</u> at 1085-86 (quoting <u>Johnson Creative Arts, Inc. v. Wool Masters, Inc.</u>, 743 F.2d 947, 950 (1st Cir. 1984)).  However, "a number of federal laws provide for either nationwide or worldwide service, and Rule 4(e) authorizes extraterritorial service in such circumstances." <u>Id.</u> at 1086 (internal citations omitted).

The Racketeer Influenced and Corrupt Organizations Act ("RICO") allows broader service of process than Rule 4.  18 U.S.C. § 1965(d); <u>see also</u> <u>Omni Video Games, Inc. v. Wing Co., Ltd.</u>, 754 F. Supp. 261, 263 (D.R.I. 1991).  Here, Shirokov brings a RICO claim (Count 6). However, RICO authorizes nationwide, not international, service of process. <u>In re Lupron Mktg. and Sales Practice Litig.</u>, 245 F. Supp. 2d 280, 288 n. 23 (D. Mass. 2003); <u>Omni Video Games, Inc.</u>, 754 F. Supp. at 263.  Defendant GuardaLey was served under the Hague Convention in the United Kingdom and Germany.  (Docket Nos. 27-2, 27-3).  Accordingly, RICO's nationwide service of process provision does not allow the Court to exercise jurisdiction over defendant GuardaLey.[4]

---

[4] Shirokov also asserts claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, <u>et</u> <u>seq.</u> (Count 4).  However, the CFAA does not authorize nationwide service of process. <u>Id.</u>; <u>see</u> <u>US Bioservices Corp. v. Lugo</u>, No. 08-2342-JWL, 2008 WL 4747473, at *1 (D. Kan. Oct. 23, 2008).

Hence, the Court's analysis comes full circle.  "When insufficient statutory authorization for extraterritorial service exists, Rule 4(e) allows such service 'only to the extent permitted by the law of the state in which the district court sits.'"   United Elec., Radio and Mach. Workers of Am., 960 F.2d at 1086.  Because there is no federal statute permitting service of process on GuardaLey in Germany or the United Kingdom, the Court's inquiry must focus on Massachusetts law concerning personal jurisdiction, notwithstanding that this is a federal question case.  Id.  "And because state law is subject to Fourteenth Amendment limitations, the minimum contacts doctrine, while imposing no direct state-by-state constraint on a federal court in a federal question case, acts indirectly as a governing mechanism for the exercise of personal jurisdiction."  Id.  Accordingly, the Court's analysis must focus on GuardaLey's contacts with Massachusetts.

   3.   *The Court Does Not Have General Jurisdiction Over GuardaLey*

A court may exercise authority over a defendant by virtue of either general or specific jurisdiction.  Mass. Sch. of Law, 142 F.3d at 34.  Here, Shirokov argues that the Court has both general and specific jurisdiction over GuardaLey.  (Docket No. 56 at 11).  This Court disagrees.

General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit.  United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1088.  "In evaluating whether the exercise of personal jurisdiction is warranted, courts concentrate on the 'quality and quantity of contacts between the potential defendant and the forum.'"  Swiss Am. Bank, 274 F.3d at 619 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).  In addition to showing that the defendant has "continuous and systematic" contacts with the forum, the plaintiff must also show that the exercise of jurisdiction would be reasonable.  Id.  "As a threshold matter, 'the

standard for evaluating whether these contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions.'" Id. (quotation omitted).

In arguing that GuardaLey's contacts are "continuous and systematic," Shirokov focuses on GuardaLey's contacts with the United States as a whole.  However, as stated supra, the proper focus is on GuardaLey's contacts with Massachusetts.  Shirokov only identifies the following contacts between GuardaLey and Massachusetts: that GuardaLey has tracked and identified "at least thirty [alleged infringers'] at IP addresses located in Massachusetts" in connection with the Acthe Lawsuit and more than one hundred alleged infringers in cases other than the Achte Lawsuit.  (Docket No. 56 at 13-14).  The Court finds these contacts insufficient to satisfy general jurisdiction.

The Supreme Court's decision in Perkins v. Benguet Consol. Mining Co.[5] "remains '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'"  Goodyear Dunlop Tires Ops. v. Brown, 131 S.Ct. 2846, 2856 (2011) (citation omitted).  Sued in Ohio, the defendant in Perkins was a Philippine mining corporation that had ceased activities in the Philippines during World War II.  Perkins, 342 U.S. at 447-48.  To the extent that the company was conducting any business, it was doing so in Ohio. The corporation's president maintained his office there, kept the company files in that office, and supervised from the Ohio office the limited activities of the company.  Id.  Although the claim-in-suit did not arise in Ohio, the Supreme Court ruled that it would not violate due process to submit the defendant to the jurisdiction of the Ohio court.  Id. at 448.

Later, in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984), the Supreme Court addressed the exercise of general jurisdiction over a Colombian corporation.  In

_____
[5] 342 U.S. 437 (1952).

Helicopteros, survivors of United States citizens who died in a helicopter crash in Peru brought a wrongful death action in a Texas state court against the owner and operator of the helicopter, a Colombian corporation.  466 U.S. at 410.  The Colombian corporation had no place of business in Texas and was not licensed to do business in Texas.  Id. at 416.  "[The company's] contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session, accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas enterprise] for substantial sums; and sending personnel to [Texas] for training."  Id.  The Supreme Court found that those contacts were not continuous and systematic and were insufficient to support the exercise of general jurisdiction over the defendant.  Id. at 418-19.

"For an individual, the paradigm focus for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home."  Goodyear Dunlop Tires Ops., 131 S.Ct. at 2853-54 (citation omitted).  Shirokov has presented no evidence (or even unsupported allegations) that GuardaLey is a resident of Massachusetts, owns property in Massachusetts, regularly transacts business in Massachusetts, or has otherwise engaged in continuous and systematic activity in Massachusetts.  "Measured against Helicopteros and Perkins, [Massachusetts] is not a forum in which it would be permissible to subject [GuardaLey] to general jurisdiction."  Id. at 2857.  GuardaLey is in no sense at home in Massachusetts.  Therefore, this Court finds that GuardaLey's attenuated connections with Massachusetts fall short of the "continuous and systematic general business contacts" necessary to empower a federal court in Massachusetts to entertain a suit against it there.

4.      *The Court Does Not Have Specific Jurisdiction Over GuardaLey*

"In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction." Mass. Sch. of Law, 142 F.3d at 34.  To establish specific jurisdiction, Shirokov must demonstrate that the Massachusetts long-arm statute grants jurisdiction over GuardaLey and that the exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  Lorelei Corp., 940 F.2d at 720.

The Court need not pause to consider the particulars of the Massachusetts long-arm statute because even if that statute, correctly applied, would purport to grant jurisdiction over GuardaLey, Shirokov must still demonstrate that "the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." Mass. Sch. of Law, 142 F.3d at 35; see also Hannon, 524 F.3d 275, 280 (1st Cir. 2008) ("Because we have construed the Massachusetts long-arm statute to be coextensive with the limits allowed by the United States Constitution, we often 'sidestep the statutory inquiry and proceed directly to the constitutional analysis.'").  The constitutional analysis has three distinct components: "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Hannon, 524 F.3d at 282 (internal quotations and citations omitted).

To satisfy the relatedness component, Shirokov's claims must "arise out of, or be related to, the defendant's in-forum activities." Hannon, 524 F.3d at 282.  This standard is flexible and focuses on the nexus between the defendant's contacts with the forum and the plaintiff's cause of action. Id.  However, there are some constraints on its application.  The First Circuit has described the relatedness standard as follows:

> The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection.  This court steadfastly rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect.  Instead, the

> defendant's in-state conduct must form an important, or at least material, element
> of proof in the plaintiff's case.  A broad but-for argument is generally insufficient.
> Because "but for" events can be very remote, due process demands something
> like a "proximate cause" nexus.

Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (internal citations, quotations and modifications omitted).

As described above, the only conceivable contacts with Massachusetts consist of GuardaLey's "tracking" of IP addresses of alleged infringers who happened to be located in Massachusetts.  (Docket No. 56 at 13-14).  Shirokov has presented no evidence that GuardaLey performed such tracking anywhere other than its place of business in the United Kingdom.  Shirokov also alleges that GuardaLey provided that information to the Dunlap Defendants, who then used that information to file the Achte Lawsuit, obtain subpoenas, obtain the alleged infringers' contact information and, ultimately, send the Letter to Shirokov and others.  (See generally Complaint at 4, 133-137, 156-160).  The Court finds that such a chain of events does not satisfy the relatedness requirement.  To be sure, it could be argued that the Achte Lawsuit and subsequent Letter would not have been possible without the information provided by GuardaLey.  However, a "but-for" argument that DGW would not have sent a settlement demand letter to Shirokov had GuardaLey not documented his downloading of Far Cry is insufficient to satisfy the relatedness prong because it is too attenuated and too remote in the causation link.  Although GuardaLey's alleged activities may have provided the other defendants with information that they in turn used to perpetrate the alleged copyright scheme, those activities are not a material element of Shirokov's case.  Shirokov has provided no evidence (and has not even alleged) that GuardaLey itself knew of or participated in the copyright scheme.  See Section III(B)(6) below.

Even if Shirokov could demonstrate that GuardaLey's contacts with Massachusetts were related to his cause of action, he must also show that GuardaLey's contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." Hannon, 524 F.3d at 284. This requirement "ensures that jurisdiction is not based on merely random, isolated or fortuitous contacts with the forum state, and is based upon the 'cornerstones of voluntariness and foreseeability." Id. (internal modifications and citations omitted). The defendant's contacts "must be voluntary and not based on the unilateral actions of another party" and "must be such that [the] defendant could reasonably anticipate being haled into court there." Id. (internal modifications omitted). "Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable." Id. (citing Phillips Exeter Acad., 196 F.3d at 292).

Again, Shirokov alleges only that GuardaLey "tracked" the internet usage of alleged infringers. (Docket No. 56 at 13-14). He argues that such tracking constitutes purposeful availment because it was foreseeable that the effects of such tracking would be felt in each state, including Massachusetts, and GuardaLey did not make any efforts to exclude Massachusetts from its targeted conduct. (Docket No. 56 at 21). Shirokov states that in order to track infringement, GuardaLey had to actively participate in the infringement by offering files for download. (Docket No. 73 at 3). GuardaLey, on the other hand, characterizes its activities as simple observation and monitoring of infringement activity. (Docket No. 65 at 4, n. 3). Therefore, the key issue is whether GuardaLey purposefully availed itself of the privilege of conducting business in Massachusetts if its internet activities interacted with Massachusetts

residents.  In making their respective arguments for and against the exercise of personal

jurisdiction, both parties rely on caselaw regarding website owners.  (Docket No. 65 at 4; Docket

No. 73 at 3). While that caselaw may not be directly on point, the Court nevertheless finds it

useful for purposes of its analysis.

Most circuits and lower courts have adopted a test developed in <u>Zippo Mfg. Co. v. Zippo</u>

<u>Dot Com, Inc.</u>, a 1997 trademark infringement case involving an internet domain name.  952 F.

Supp. 1119 (W.D. Pa. 1997); <u>see also</u> <u>Sportschannel New England Ltd. Partnership v. Fancaster,</u>

<u>Inc.</u>, No. 09cv11884-NG, 2010 WL 3895177, at *5 (D. Mass. Oct. 1, 2010) (collecting cases);

<u>Hasbro, Inc. v. Clue Computing, Inc.</u>, 994 F. Supp. 34, 40 (D. Mass. 1997) (collecting cases).

One judge describes the <u>Zippo</u> test as follows:

> *Zippo* creates a sliding scale in which the likelihood of personal
> jurisdiction is 'directly proportionate' to the level of interactivity of the website.
> At one end of the spectrum, personal jurisdiction is clearly established where a
> defendant conducts regular business over the internet, for example by entering
> into contracts with foreign users to transmit files to their home computers for a
> fee.  At the other end of the spectrum are passive websites that do no more than
> share information.
>
> And in the middle of the spectrum are interactive websites where a user
> exchanges information with a host computer.  Here, the *Zippo* court examines the
> 'level of interactivity' and the 'commercial nature of the exchange of information'
> on the site.  Mere interactivity is not enough.  Something more is required.
>
> *Zippo* and its progeny do not provide much guidance to courts in
> determining what kind of 'something more' is required to render an interactive
> website subject to a court's personal jurisdiction.  While courts have found that
> passive websites do not expose themselves to jurisdiction of every forum, they
> have been less clear about how much interactivity does.

<u>Sportschannel New England Ltd. Partnership</u>, 2010 WL 3895177 at * 5 (internal citations

omitted).

Shirokov compares GuardaLey's activities to an interactive website, while GuardaLey

compares it to a passive website.  The activities appear to be somewhere in between.  In any

event, the Court finds that GuardaLey's activities are not sufficient to satisfy the purposeful

availment requirement.  In this case, GuardaLey is not selling a product or providing information

to the public via the internet.  Although it may be interacting in some sense with the alleged

infringers, in doing so, it only identifies IP addresses and adds them to a list of copyright

infringers.  The fact that GuardaLey then provided that information to the Dunlap Defendants

does not equate with purposeful availment of the benefits and protections of Massachusetts laws.

Indeed, "[i]n the era of Facebook . . . most websites now allow users to 'share' an article, choose

to 'like' a particular page, add comments, and email the site owners . . . If virtually every website

is now interactive in some measure, it cannot be that every website subjects itself to litigation in

any forum-unless Congress dictates otherwise." Id. at *6.  "Interactivity alone cannot be the

linchpin for personal jurisdiction." Id.

Perhaps because GuardaLey's contacts with Massachusetts are so attenuated, Shirokov

attempts to impute other defendants' activities in Massachusetts to GuardaLey by invoking the

doctrine of piercing the corporate veil as a basis for its argument that the Court has personal

jurisdiction over GuardaLey.  (Docket No. 56 at 15).  He also argues that USCG is an agent of

GuardaLey.  (Docket No. 73 at 7-8).  In support of this argument, Shirokov points out that at

least one of the managers of USCG, Benjamin Perino, is also a managing director of GuardaLey.

In addition, Shirokov argues that GuardaLey and DGW are both partners in USCG.  (Docket No.

56 at 15).  Shirokov fails to recognize, however, that the mere existence of a business

relationship between two corporate entities does not establish an agency relationship or a basis

for disregarding the corporate form.  Am. Home Assurance Co. v. Sport Maska, Inc., 808 F.

Supp. 67, 72 (D. Mass. 1992).  In addition, Shirokov has not proffered sufficient evidence of an

agency relationship between GuardaLey and any of the other defendants.

Although Shirokov argues in his brief that GuardaLey has been a primary participant in structuring the Achte Lawsuit and similar litigation and that USCG acts for GuardaLey (see Docket No. 56 at 14; Docket No. 73 at 8), he has put forth no competent evidence to support those arguments.  In order to defeat a motion to dismiss for lack of personal jurisdiction, Shirokov "must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality."  Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001).  His lawyers' unsupported arguments in the opposition to the motion to dismiss are insufficient, even under the relaxed prima facie standard, to establish jurisdictional facts.  Id.  Accordingly, the Court finds that Shirokov has failed to show that GuardaLey substantially directed its activities to Massachusetts to constitute purposeful availment.

Because Shirokov has failed to establish the relatedness and purposeful availment components, this Court need go no further in its jurisdictional analysis.  Swiss Am. Bank, 274 F.3d at 625.  Accordingly, this Court recommends that the District Judge find that there is no jurisdiction over GuardaLey in this District Court.

> 5.    *Jurisdiction Under Rule 4(k)(2)*

The Court's findings above do not end the matter.  Shirokov also argues that GuardaLey is subject to the Court's jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure. (Docket No. 73 at 4-5).  Rule 4(k)(2) provides:

> (2) **Federal Claim Outside State-Court Jurisdiction**.  For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Rule 4(k)(2) serves as "a species of federal long-arm statute."
Swiss Am. Bank, 191 F.3d 30, 40 (1st Cir. 1999).  Before this rule was enacted, "foreign
defendants who lacked single-state contacts sufficient to bring them within the reach of a
given state's long-arm statute . . . but who had enough contacts with the United States as
a whole to make personal jurisdiction over them in a United States court constitutional,
could evade responsibility for civil violations of federal laws that did not provide
specifically for service of process."  Id.  Rule 4(k)(2) closed that loophole.  Id.

In order for Rule 4(k)(2) to apply, three requirements must be met: (1) the
plaintiff's claim must be one arising under federal law; (2) the putative defendant must be
beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the
federal court's exercise of personal jurisdiction over the defendant must not offend the
Constitution or other federal law.  Id. at 38.

Here, Shirokov has presented evidence that GuardaLey operates a sales division
in Los Angeles, California since at least early 2010, headed by Barbara Mudge.  (Docket
No. 56 at 7, Docket No. 56-1, Docket No. 56-9 at 3-4).  The presence of a business office
in California would likely subject GuardaLey to personal jurisdiction there.  Accordingly,
Shirokov has failed to carry his burden of proving that Rule 4(k)(2) applies to this case.

For the foregoing reasons, this Court finds that it does not have personal
jurisdiction over GuardaLey and recommends that the District Judge allow GuardaLey's
motion to dismiss for lack of personal jurisdiction and dismiss all claims against
GuardaLey.[6]

---

[6] Although the Court finds that GuardaLey is not subject to personal jurisdiction in this Court,
the Court also addresses GuardaLey's motion to dismiss based on the merits of Shirokov's
claims should the District Judge disagree with this Court's conclusion regarding personal
jurisdiction.

B.      Motions To Dismiss For Failure To State A Claim

1.      *Standard Of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor.  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions.  Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 129 S.Ct. at 1950.

2.      *The Plaintiff Has Standing To Bring This Action*

The defendants argue that Shirokov has no standing to bring this action because he has not suffered any injury in fact.  Specifically, they argue that because Shirokov did not pay to

settle Achte's claims, he does not have an injury sufficient to confer Article III standing. (Docket No. 29 at 8-10; Docket No. 44 at 27-31; Docket No. 48 at 6-7).  Shirokov argues that the threat of litigation and his subsequent incursion of attorneys' fees establishes standing.  (Docket No. 32 at 5-7).

If Shirokov lacks standing to bring this matter before the Court, the Court lacks jurisdiction to decide the merits of the case.  Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995) (citation omitted).  "Thus, standing is a threshold issue, determining whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case."  Id.

"Standing involves 'a blend of constitutional requirements and prudential considerations.'"  N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996) (quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, 454 U.S. 464, 471 (1982)).  A federal court is empowered only to decide "cases" and "controversies."  Id. (citing U.S. Const. art. III).  "Not every dispute is a case or controversy. 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.'"  Id.  (citation omitted).

In order to establish standing, Shirokov must show that (1) he personally has suffered some actual or imminent injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  An injury in fact must be concrete and particularized rather than conjectural or hypothetical.  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

The injury must be real but not necessarily economic.  United States v. AVX Corp., 962 F.2d 108, 113-14 (1st Cir. 1992).  "A mere interest in an event-no matter how passionate or sincere the interest and no matter how charged with public import the event-will not substitute for an actual injury."  Id. at 114.

In a putative class action, the named plaintiff must individually fulfill the standing requirement at the time of the filing before he can represent class members.  Cavallaro v. UMass Memorial Health Care, Inc., No. 09-40152-FDS, 2011 WL 2295023, at * 2 (D. Mass. June 8, 2011).  The fact that "a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20 (1976) (quotations omitted).  The plaintiff must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. Warth v. Seldin, 422 U.S. 490, 501 (1975).

Shirokov bears the burden of establishing Article III standing.  Lujan, 504 U.S. at 561. "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Id.; see also AVX Corp., 962 F.2d at 114. The First Circuit has held that "where standing is at issue, heightened specificity is obligatory at the pleading stage."  AVX Corp., 962 F.2d at 115.  The complainant must set forth reasonably definite factual allegations regarding each material element needed to sustain standing.  Id.

Accordingly, "the facts necessary to support standing must clearly appear in the record and 'cannot be inferred argumentatively from averments in the pleadings.'" Id. (quotations omitted).

The Complaint alleges that the defendants' copyright scheme has caused damages to the class members in the form of payment of inflated settlements and/or related expenses in defending themselves against the copyright scheme.  (Complaint, ¶ 324).  However, Shirokov alleges that he did not pay anything to the defendants in response to the Letter.  Instead, Shirokov alleges that he incurred legal costs "in reliance on the false allegations of the Letter and in order to determine the merits of its claims."  (Complaint, ¶ 232).  Shirokov also alleges that he would have avoided those costs had the Letter been truthful.  (Id.).

Based on the allegations in the Complaint, Shirokov argues that three distinct "injuries" confer standing: (1) the threat of potential litigation against him; (2) the fees incurred by him in determining the merits of Achte's copyright claims; and (3) the legal fees incurred by him in this action.  As detailed below, only the second category confers standing on Shirokov.

Shirokov argues that he has suffered an injury-in-fact based on the threat of potential litigation against him.  He states that Achte, via DGW, "has already sued Plaintiff and the entire Class in 2010, and Moving Defendants threatened to sue each member of the Class individually." (Docket No. 32 at 5).  However, the case cited by Shirokov to support this proposition arises out of the limited context of First Amendment rights that are inapplicable to the present case.  See Gardner, 99 F.3d at 11-12 (declaratory judgment action seeking ruling that state campaign finance statutes unlawfully abridged plaintiff's free speech rights).

In any event, any potential threat of litigation against Shirokov is speculative and too remote to support a finding of standing.[7]  In order to comply with Article III's requirements, "a

_____

[7] At oral argument, the parties confirmed that Shirokov has not been named or otherwise identified as a defendant in the Achte Lawsuit, which was filed almost two years ago.

plaintiff must face a threat of injury that is both 'real and immediate,' not 'conjectural' or 'hypothetical.'" In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 14 (1st Cir. 2008) (citation omitted).  Shirokov's own Complaint alleges that Achte abandoned its claims against 4,437 of the Class members.  He does not allege that he is one of the remaining defendants in the Achte Lawsuit.  (Complaint, ¶¶ 209-212).  He has also alleged that the defendants' alleged scheme is based on obtaining settlements, not judgments, and that the defendants do not actually intend to prosecute the vast majority of the copyright claims they bring.  (Complaint, ¶ 5, 8, 152-153).  Indeed, eighteen months after receiving the Letter, Shirokov has not been named as a defendant in the Achte Lawsuit or any other lawsuit by Achte.[8]

To the extent that Shirokov claims that the legal fees incurred in this action constitute an injury sufficient to confer Article III standing, he is wrong.  (Docket No. 32 at 6).  "[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998).  "The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.  An 'interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'"  Id. (citations omitted).

Nevertheless, Shirokov has standing to bring this action based on his allegations that he incurred legal fees in connection with the Letter.  Shirokov's out-of-pocket loss of money is an injury.  The natural and probable consequences of the defendants' alleged actions include the costs incurred in defending the copyright claims.  As such, fees incurred in connection with the

---

[8] In determining whether a plaintiff has standing, a court is required to look at the facts as they existed at the time when the lawsuit was filed.  Keene Corp. v. United States, 508 U.S. 200, 207 (1993); Lujan, 504 U.S. at 571 n. 4.

Letter would be considered compensatory damages, not attorneys' fees.  See, e.g., Millenium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 645 (2010) ("The 'natural and probable' consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge.  As such, fees incurred for defending such a lawsuit are considered compensatory damages, not attorney's fees.") (citation omitted).  Accordingly, the Court finds that Shirokov has standing to bring this suit.

3.   *The Noerr-Pennington Doctrine Does Not Bar Shirokov's Claims*

The Dunlap Defendants and Achte rely on the Noerr-Pennington doctrine as a ground for dismissal of all of Shirokov's claims.  (Docket No. 29 at 14-16; Docket No. 48 at 8-11).  Although, as set forth below, the Court ultimately concludes that there are independent bases supporting dismissal of most of Shirokov's claims, the Court finds that the Noerr-Pennington doctrine does not bar Shirokov's claims.

The Noerr-Pennington doctrine, which derives from United Mine Workers of America v. Pennington, 381 U.S. 657 (1965), and Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), shields from antitrust liability entities who join together to influence government action, even if they seek to restrain competition or to damage competitors.  Davric Maine Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000) (citations omitted).  The doctrine applies to petitions before legislatures, administrative agencies, and the courts.  Id. (citations omitted).  In addition, some courts have extended the doctrine to pre-litigation activities, such as threats to sue and demand letters.  See, e.g., Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc., 219 F.3d 92, 100 (2nd Cir. 2000) (collecting cases).

There is some debate, however, as to whether the Noerr-Pennington doctrine applies outside of the antitrust field.  Compare Sosa v. DirecTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006)

(Noerr-Pennington is "a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause.") with Cardtoons, L.C. v. Major League Baseball Players Ass'n, 208 F.3d 885, 891 (10th Cir. 2000) (holding that prelitigation threats communicated solely between private parties are not afforded immunity from suit by the right of petition guaranteed by the First Amendment).  Shirokov argues that the doctrine only applies to antitrust claims.  (Docket No. 32 at 16-18).  The First Circuit has not addressed the issue directly but its decisions indicate that it may view the Noerr-Pennington doctrine expansively.  See, e.g., Tomaiolo v. Mallinoff, 281 F.3d 1, 11 n. 9 (1st Cir. 2002).  Nevertheless, this Court declines to extend the doctrine to include the conduct at issue here at this stage of the case.  This Court finds the Tenth Circuit's analysis in Cardtoons persuasive.

The Noerr-Pennington doctrine, as originally formulated by the Supreme Court, rests on two separate grounds.  First, it relies on a statutory interpretation of the Sherman Act that limits the scope of the Act so as to not reach activity associated with the political process.  Noerr, 365 U.S. at 137-38.  Second, it rests on the First Amendment right of citizens to petition the government.  Id.

Because the instant dispute is not regulated by the Sherman Act, this Court is reluctant to apply the Noerr-Pennington doctrine.  A number of courts have acknowledged the incongruity of applying the Noerr-Pennington doctrine outside of the antitrust context where immunity is cognizable only on First Amendment grounds.  See generally Cardtoons, 208 F.3d at 891.  In Cardtoons, the Tenth Circuit explained:

> While we do not question the application of the right to petition outside of antitrust, it is a bit of a misnomer to refer to it as the Noerr-Pennington doctrine; a doctrine which was based on *two* rationales.  In our view, it is more appropriate to refer to immunity as Noerr-Pennington immunity only when applied to antitrust claims.  In all other contexts . . . such immunity derives from the right to petition.

Cardtoons, 208 F.3d at 889-90 (emphasis in original).  This Court therefore concludes that the

clearest, if not most legally accurate, manner to examine the defendants' claim of immunity is

under the Petition Clause of the First Amendment.

The First Amendment guarantees "the right of the people . . . to petition the Government

for a redress of grievances."  U.S. Const. amend. I.  The right to petition "is implicit in '[t]he

very idea of government, republican in form.'"  McDonald v. Smith, 472 U.S. 479, 482 (1985)

(quotations omitted).  The right to petition, however, is not absolute.  The Petition Clause

"neither enjoys 'special First Amendment status' nor confers an 'absolute immunity' for

privilege.'"  We, Inc. v. City of Philadelphia, 174 F.3d 322, 327 (3rd Cir. 1999) (quoting

McDonald, 472 U.S. at 484-85).  Accordingly, a claim of immunity under the Petition Clause

must be evaluated under the same First Amendment principles that apply to other

constitutionally protected activity.

In Cardtoons, the Tenth Circuit found that written, prelitigation threats between private

parties are not entitled to immunity under the First Amendment.  Cardtoons, 208 F.3d at 891.

The plaintiff contracted with a printing company to create parody baseball cards containing

images of major league players.  The Major League Baseball Players Association ("MLBPA")

sent cease and desist letters to both the plaintiff and the printing company.  Upon receiving its

letter, the printing company informed the plaintiff it would not print the cards.  The plaintiff then

filed suit alleging that the MLBPA had tortuously interfered with its printing contract.  Both the

district court and an appeals panel found the MLBPA was immune from liability under the

Noerr-Pennington doctrine even though the case did not involve antitrust law.  Cardtoons, L.C.

v. Major League Baseball Players Ass'n, 182 F.3d 1132 (10th Cir. 1999).  On rehearing,

however, an en banc panel found the prelitigation threats in the cease and desist letter were not

afforded immunity by either the First Amendment right to petition or the <u>Noerr-Pennington</u>

doctrine.  <u>Cardtoons</u>, 208 F.3d at 886.  The Tenth Circuit reasoned that if the plaintiff had sued

MLBPA for libel, the suit similarly would be allowed to proceed.  <u>Id.</u> at 891.  "Statements made

in a letter threatening litigation are not absolutely protected by the petition clause of the First

Amendment and are subject to the principles of state common law and state statutory law."  <u>Id.</u> at

892.  The court concluded by noting that "[w]hile there are many persuasive policy arguments in

favor of granting immunity to private threats of litigation, these do not override the clear

language of the First Amendment.  Such arguments are best addressed to state legislative

bodies."  <u>Id.</u>

Here, it is difficult to see how subjecting the defendants to liability for their conduct, if

appropriate, would satisfy the policy objectives of the doctrine.  At issue in this motion is not the

defendants' right to use demand letters as a means of encouraging settlement, but rather their use

of false or misleading statements in the demand letters.  If Shirokov's allegations were to be

proven at trial, punishing the defendants will not deter future use of demand letters.  At best, it

will encourage the defendants to investigate carefully their accusations and to be precise in the

language they use when attempting to settle with suspected infringers.  Accordingly, this Court

finds that the <u>Noerr-Pennington</u> doctrine does not apply under the circumstances of this case at

this time.

Even if the Court were to find the <u>Noerr-Pennington</u> doctrine applicable to this case, the

doctrine is also limited by the "sham" exception.  <u>Prof'l Real Estate Investors, Inc. v. Columbia</u>

<u>Pictures Indus., Inc.</u>, 508 U.S. 49, 60 (1993).  In order to qualify as a "sham," "the lawsuit must

be objectively baseless in the sense that no reasonable litigant could realistically expect success

on the merits."  <u>Id.</u>  "Only if challenged litigation is objectively meritless may a court examine

the litigant's subjective motivation."  Id.  In the Ninth Circuit, which has extended Noerr-Pennington to cases such as this one, the "sham exception" may apply in three circumstances: (1) where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; (2) where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and (3) if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.  Sosa, 437 F.3d at 939 (citations omitted).

Under the Copyright Act, a person who violates the exclusive rights of a copyright owner is an infringer of the copyright or right of the owner.  17 U.S.C. § 501(a).  The legal or beneficial owner of an exclusive right under a copyright "is entitled . . . to institute an action for any infringement of that particular right."  17 U.S.C. § 501(b).  Achte is the holder of copyright of Far Cry, a fact that Shirokov does not dispute.  Accordingly, Achte has the right to bring suit against an alleged infringer, assuming its copyright is valid.

Here, however, Shirokov alleges that DGW and Achte obtained a copyright registration for Far Cry by fraud.  (Complaint, ¶¶ 90-125).  Based on the fraudulently obtained copyright, they then filed the Achte Lawsuit knowing that Achte was not entitled to statutory damages. (Complaint, ¶¶ 134-155).  Shirokov also alleges that the defendants used the process of the lawsuit, as opposed to the outcome of the lawsuit, to extort settlements from the class based on the threat of statutory damages.  (Complaint, ¶ 156).  They never intended to actually litigate the claims.  (Complaint, ¶ 157).  He has also alleged that the defendants acted in bad faith.  (See generally Complaint at ¶¶ 24, 178, 236, 238).  Therefore, Shirokov has alleged sufficient facts

that, if proven, would establish that the Achte Lawsuit was a sham.  Accordingly, at this early stage of the proceedings, the Court cannot conclude that the <u>Noerr-Pennington</u> doctrine, even if applicable, bars Shirokov's claims.  Accordingly, the Court recommends that the District Judge deny the defendants' motions to dismiss to the extent that they are based on the <u>Noerr-Pennington</u> doctrine.

4.    *Shirokov's Claims Are Not Barred By The Massachusetts Litigation Privilege*

The Dunlap Defendants and Achte argue that Shirokov's claims are also barred by the absolute litigation privilege covering attorneys' statements made in connection with the conduct of litigation.  (Docket No. 29 at 17-21; Docket No. 48 at 15-16).  On a motion to dismiss, the Court finds that the defendants cannot show on the face of the Complaint and other materials properly before the Court that the litigation privilege bars Shirokov's claims.

"Under Massachusetts law,[9] an attorney's statements are absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'"  <u>Blanchette v. Cataldo</u>, 734 F.2d 869, 877 (1st Cir. 1984) (quoting <u>Sriberg v. Raymond</u>, 370 Mass. 105, 109 (1976)).  This doctrine was motivated by "the public policy of permitting attorneys complete freedom of expression and candor in communications in their

---

[9] It is not clear whether Massachusetts law applies to Shirokov's claims.  Other than the fact that Shirokov is a Massachusetts resident and presumably received the Letter in Massachusetts, the conduct of which he complains did not occur here.  Shirokov's claims involve alleged conduct by Virginia lawyers in connection with the Achte Lawsuit pending in the United States District Court for the District of Columbia.  Although the plaintiff has briefly referenced this issue (<u>see</u> Docket No. 32 at 14, n. 13), neither he nor any of the defendants have engaged in a choice of law analysis.  Normally, the first step in applying choice of law principles is to ascertain whether the choice will affect the outcome; in other words, whether there is an actual conflict of laws.  <u>See</u> <u>Williams v. Astra USA, Inc.</u>, 68 F. Supp. 2d 29, 36 (D. Mass. 1999).  None of the parties have raised the substantive law of any jurisdiction other than Massachusetts.  Given that the parties did not raise a conflict-of-laws issue, it is deemed that none exists.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Doricent v. Am. Airlines, Inc.</u>, No. 91-12084Y, 1993 WL 437670, at *8 (D. Mass. Oct. 19, 1993).

efforts to secure justice for their clients." Meltzer v. Grant, 193 F. Supp. 2d 373, 377 (D. Mass. 2002) (quotation omitted).  The privilege applies as a general bar to all civil liability based upon an attorney's statements, and it applies even if the offensive statements were uttered maliciously or in bad faith.  Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996).  The litigation privilege applies not only to statements by attorneys but also to communications by a party as long as the other conditions for the privilege are present.  Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 242 (2008).

The litigation privilege applies to communications made preliminary to proposed judicial proceedings if judicial proceedings are contemplated in good faith and under serious consideration.  Meltzer, 193 F. Supp. 2d at 381.[10]  If judicial proceedings are already underway, the privilege applies if the statements are "pertinent" to the litigation.  Id. at 378 (citing Blanchette, 734 F.2d at 877).  In other words, the statements must have some reference to the subject matter of the litigation, although they need not be strictly relevant to any issue in the litigation.  Leavitt v. Bickerton, 855 F. Supp. 455, 456-57 (D. Mass. 1994).

"Whether an absolute privilege applies is determined on a case-by-case basis, after a fact-specific analysis."  Fisher v. Lint, 69 Mass. App. Ct. 360, 365-66 (2007) (citation omitted).  In addition, as the parties asserting the privilege, the defendants have the burden of establishing entitlement to the privilege.  Meltzer, 193 F. Supp. 2d at 381.  Here, Shirokov alleges that at the

_____

[10] The Massachusetts Appeals Court's statement in Doe, supra, that the litigation privilege applies even if a communication is in bad faith applies only in cases where the litigation is already underway.  See Meltzer, 193 F. Supp. 2d at 379-80.  In Doe, the Appeals Court was dealing with a particular scenario in which the allegedly offending letter was written by an attorney for the defendants in reply to a letter from plaintiff demanding relief and threatening litigation if relief was not forthcoming.  41 Mass. App. Ct. at 141.  What the Appeals Court seems to have been saying is that in such situations, the reply is not subject to the test of whether the defendant was contemplating litigation in good faith and that litigation was under serious consideration.  Rather, the test which is applies is the test applicable during the course of litigation, i.e., whether the communication was pertinent to the proceedings, or, in that case, pertinent to the demand which was made.  Id.

time that the Letter was written, litigation against him or the class members was not contemplated in good faith.  Although DGW had filed the Achte Lawsuit on Achte's behalf, Shirokov alleges that it was filed for the improper purpose of extorting settlement and that the defendants never intended to actually prosecute the Achte Lawsuit.  Cf. Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 340 (D. Mass. 2007) (litigation privilege will not bar a claim for tortious interference on the basis of the filing of a lawsuit if it is alleged that the suit was filed for the ulterior purpose of interfering with a prospective business relationship).  Indeed, in the twenty months since Shirokov received the Letter, he has not been sued.

Accordingly, in this case, the application of the privilege is not properly resolved on a motion to dismiss.  On a motion to dismiss, the Court must take all of the plaintiff's allegations as true.  Thus, a motion to dismiss on the basis of the litigation privilege only succeeds when the entitlement to the privilege is demonstrated by the complaint itself.  If the complaint construed in the plaintiff's favor does not support the application of the privilege, the issue is more properly resolved on a motion for summary judgment or at trial.  Here, viewing all of the Complaint's allegations as true, the Court cannot rule as a matter of law that the litigation privilege applies and bars Shirokov's claims. [11]

---

[11]  Even if the privilege applied, there remains an issue as to whether the privilege would bar anything more than Shirokov's state law causes of action.  The Dunlap Defendants argue that all claims are barred.  They further argue that the principle that a state privilege cannot bar a federal cause of action is limited to Fair Debt Collection Practices ("FDCPA") claims.  See Docket No. 71 at 3.  However, a number of cases undercut the Dunlap Defendants' arguments and refuse to apply state privileges to federal claims besides FDCPA claims.  See, e.g., Steffes v. Stepan Co., 144 F.3d 1070, 1074 (7th Cir. 1998) (citations omitted) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action"); Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996) (holding that the California absolute litigation privilege does not immunize attorneys from liability under 42 U.S.C. § 1983); Conditioned Ocular Enhancement, Inc. v. Bonaventura, 458 F. Supp. 2d 704, 708 (N.D. Ill. 2006) (Illinois litigation privilege cannot confer immunity against Lanham Act claims).

Having found that Shirokov has standing and that the <u>Noerr-Pennington</u> Doctrine and the Massachusetts litigation privilege do not bar Shirokov's claims at this stage of the case, the Court now turns to the merits of each of the Counts of the Complaint.

> 5.     *Shirokov Has Failed To State A Claim Under The Computer*
>        *Fraud And Abuse Act Because He Has Not Alleged Damage*
>        *Or Loss Within The Meaning Of The Statute*

In Count 4 of the Complaint, Shirokov pleads claims against the defendants under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, <u>et</u> <u>seq</u>. (the "CFAA").  "The CFAA is the centerpiece of federal enforcement efforts against computer based crimes."  <u>Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey</u>, 497 F. Supp. 2d 627, 646 (E.D. Pa. 2007).  Shirokov bases his claims on three subsections of the statute:  Sections 1030(a)(4), 1030(a)(5)(C), and 1030(a)(2)(C) (Complaint, ¶¶ 279, 283 and 284, respectively).  The defendants move to dismiss Count 4 on the grounds that Shirokov has failed to plead that he has suffered "damage" or "loss" within the meaning of the statute.  (Docket No. 29 at 23-26; Docket No. 44 at 25-27; Docket No. 48 at 18-20).  This Court agrees.

Section 1030(a)(4) makes it unlawful to access a protected computer without, or beyond the scope of any, authorization, knowingly and with intent to defraud and as a result obtaining anything of value.  18 U.S.C. § 1030(a)(4).  Section 1030(a)(5)(C) makes it a crime to "intentionally access[] a protected computer without authorization, and as a result of such conduct, [to] cause[] damage and loss."  18 U.S.C. § 1030(a)(5)(C).  Finally, Section 1030(a)(2)(C) makes it a crime to "intentionally access[] a computer without authorization or exceed[] authorized access, and thereby obtain[] . . . information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).

Although the CFAA is primarily a criminal statute, a person may bring a civil action against the violator so long as the person has suffered "damage or loss by reason of a violation" of the CFAA.  18 U.S.C. § 1030(g); see also EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 584 (1st Cir. 2001).  The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Shirokov's allegations that he suffered damage or losses as a result of the alleged CFAA violations constitute nothing more than "a formulaic recitation of the elements."  Bell Atlantic Corp., 550 U.S. at 555.  Shirokov has not alleged any damage to his computer or information or programs contained thereon, or loss of the use of his computer that fits within the statutory definition.  See 18 U.S.C. §1030(e)(8).

Similarly, he has not alleged any facts supporting a loss under the meaning of the CFAA.  Courts have interpreted loss to include the cost of responding to a security breach, such as the cost of performing a computer system damage assessment and remedying the damage and any costs incurred because the computer cannot function while or until repairs are made.  NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1063-64 (S.D. Iowa 2009); Wilson v. Moreau, 440 F. Supp. 2d 81, 109-10 (D.R.I. 2006).  "[T]here is nothing to suggest that the 'loss' or costs alleged can be unrelated to the computer."  Wilson, 440 F.Supp. 2d at 109-10.  Moreover, courts have held that legal fees do not constitute a loss under the CFAA.  See Wilson, 440 F. Supp. 2d at 110 (rejecting plaintiffs' argument that their loss met the $5,000 statutory threshold under the CFAA,

because "plaintiff's litigation expenses are not directly attributable to Defendants' computer browsing, and are not economic damages in excess of $5,000 as required by the statute"); see also NCMIC Fin. Corp., 638 F. Supp. 2d at 1065; Healthcare Advocates, Inc., 497 F. Supp. 2d at 647.[12]   Shirokov has not alleged that his ability to use his computer has been affected or impaired, or that he was required to repair his computer in any way.   As discussed elsewhere in this opinion, the only injury that Shirokov alleges in the Complaint as a result of the defendants' conduct is the incursion of legal fees in evaluating the Letter's claims.   Shirokov's legal expenses are not directly attributable to the defendants' alleged access of his computer and, therefore, do not constitute a loss under the CFAA.[13]

Accordingly, this Court recommends that the District Court dismiss Count 4 of the Complaint.

6.   *Shirokov Has Failed To State A Claim Of Conspiracy And Aiding And Abetting Against GuardaLey But Those Claims Survive Against the Dunlap Defendants And Achte*

Plaintiff brings a series of claims sounding in conspiracy: conspiracy to commit fraud (Count 3), aiding and abetting fraud (Count 5), and civil conspiracy (Count 13).   The defendants have moved to dismiss these counts on a variety of bases.   The Dunlap Defendants state that Shirokov has failed to state a claim for "true conspiracy."   (Docket No. 29 at 28).   They also argue that these claims all require liability for the predicate torts before liability can be

---

[12] Shirokov cites these cases, along with ResDev, LLC v. Lot Builders Ass'n, Inc., No. 6:04-cv-1374, 2005 U.S. Dist. LEXIS 19099, at *10-12 (M.D. Fla. Aug. 10, 2005) for the proposition that although "attorneys' fees in *prosecuting* a CFAA action do not count toward the $5,000 statutory threshold . . . attorneys' fees incurred *responding* to the CFAA violation do."   (Docket No. 32 at 32 n. 54) (emphasis in original).   These cases do not support Shirokov's argument.   On the contrary, they all emphasize that a loss under the CFAA must be related to the computer itself.

[13] Because the Court finds that Shirokov has failed to plead enough facts to support a loss or damage under the CFAA, it is not necessary to address whether the conduct alleged constitutes access without authorization or exceeding authorization under the CFAA.

apportioned to ultimate defendants, and, because the plaintiff's counts for the underlying torts

fail, the plaintiff's claims for conspiracy or aiding and abetting must fail as well.  (Docket No. 29

at 30-31).  Achte argues that it may not be held vicariously liable for the acts of its attorneys and

the Complaint fails to allege enough facts to impose vicarious liability on Achte as a knowing

and intentional participant in the alleged copyright scheme.  (Docket No. 48 at 11-14, 16-18).

Finally, GuardaLey argues that the Complaint fails to allege any facts supporting that GuardaLey

was a participant in the copyright scheme.  (Docket No. 44 at 16-20).  The Court finds that

Shirokov has failed to state a claim of conspiracy and aiding and abetting against GuardaLey but

these claims survive as to the Dunlap Defendants and Achte.

Massachusetts law recognizes two types of causes of action for civil conspiracy.  The

first, referred to as "true conspiracy," is a "rare" and "very limited" cause of action.  Aetna Cas.

Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994).  In order to state a claim for true

conspiracy, the plaintiff must allege and prove that by "mere force of numbers acting in unison,"

the defendants exercised "some peculiar power of coercion of the plaintiff which any individual

standing in a like relation to the plaintiff would not have had."  Fleming v. Dane, 304 Mass. 46,

50 (1939) (citations omitted).  "This cause of action seems to have been applied principally to

remedy direct economic coercion, as in 'the combined actions of groups of employers or

employees, where through the power of combination pressure is created and results brought

about different in kind from anything that could have been accomplished by separate individuals

or in other kinds of concerted refusals to deal."  Mass. Laborers' Health & Welfare Fund v.

Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999) (quoting Fleming, 304 Mass. at 50).

The second type of conspiracy claim is "more akin to a theory of common law joint

liability in tort."  Aetna Cas. Sur. Co., 43 F.3d at 1564.  To state a claim for this type of

conspiracy, the plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Id. The plaintiff need not prove the existence of an agreement by direct evidence but the agreement may be inferred from conduct of the parties suggesting that they had an implied meeting of the minds. Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981) (citations omitted). Thus, the distinction between the two types of conspiracy claims has been described as follows:

> For 'true conspiracy,' the plaintiff must prove that concerted action gave the defendants a 'peculiar power of coercion' over the plaintiff enabling them to bring about results that are different in kind from what any of them could achieve individually. The exercise of this 'peculiar power of coercion' is itself the wrong, and no other tortious act need be shown. In contrast, the 'concerted action' version extends liability to those who assist or encourage others to commit torts without necessarily any proof either of a 'peculiar power of coercion' or even of an explicit agreement among the defendants. Of course, there can be no joint liability for a tort unless there has been a tort, so the 'concerted action' version depends on proof of underlying tortious conduct for which liability can be assigned. While the term 'civil conspiracy' apparently has been used loosely to apply to both versions, only the 'true conspiracy' version defines an independent cause of action; the 'concerted action' version simply defines who may be liable for other torts.

Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 244 (internal citations omitted).

Finally, aiding and abetting is another variation of joint tort liability. "Under Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides 'substantial assistance or encouragement to the other party;' and (2) the defendant has 'unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.'" Go-Best Assets Ltd. v. Citizens Bank of Mass., 79 Mass. App. Ct. 473, 592 (2011) (citations omitted). Plaintiff "must at least demonstrate some measure of 'active participation' and the knowing provision of substantial assistance . . . to the principal's . . . alleged fraud." Schultz v. R.I. Hosp. Trust Nat'l Bank, 94 F.3d 721, 730 (1st Cir. 1996)

(citations omitted).  A claim of aiding and abetting must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Bamberg v. SG Cowen, 236 F. Supp. 2d 79, 91 (D. Mass. 2002).

In his Complaint, Shirokov appears to collapse "true" conspiracy with the "concerted action" theory of conspiracy.  The Complaint alleges that the defendants "acted in concert and participated in a common plan to achieve" unlawful ends, and that the defendants, acting together, "exercise[d] coercive powers, over Shirokov and the Class, that they would not have had if acting independently."  (Complaint, ¶¶ 385-386).  Other than the conclusory mention of "coercive powers" (see Complaint at ¶ 386), Shirokov has not alleged any facts that would give rise to a plausible claim that by the force of their number, the defendants exercised some exceptional coercive power over him.  He has not alleged that the defendants' combination was such that he was deprived of his ability to evaluate Achte's copyright claims against him.  Indeed, he did not succumb to any coercive power because he did not pay to settle the claims. "There is no question that an allegation of a generally exerted and generally felt power of coercion is not sufficient to plead the independent tort of 'true conspiracy' as recognized in Massachusetts." Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 245.  Thus, the Court finds that Shirokov has failed to state a claim for true conspiracy.

The Dunlap Defendants have moved to dismiss the "concerted action" conspiracy claim on the basis that the underlying tort claims fail and therefore, the conspiracy claim must fail as well.  (Docket No. 29 at 30-31).  However, as explained in Sections III(B)(7) and (14) below, this Court has recommended that the District Court deny the defendants' motions to dismiss with respect to Shirokov's negligent misrepresentation and Chapter 93A claims.[14]  Accordingly, the

---

[14] In addition, although the Dunlap Defendants moved to dismiss the entire Complaint on the basis of standing, the Noerr-Pennington Doctrine, and the litigation privilege, the Dunlap

Court recommends that the District Court deny the Dunlap Defendants' motion to dismiss with respect to Shirokov's claim of conspiracy by concerted action.

Achte argues that it cannot be held vicariously liable for the acts of its attorneys and that Shirokov has failed to allege enough facts to show that Achte joined in the alleged copyright scheme.  However, the Complaint alleges that Achte knew that its copyright registration contained false information and that Achte lied to the Copyright Office and the District Court for the District of Columbia in conjunction with its attorneys.  See generally Complaint, ¶¶ 10-11, 22, 115, 156.  Taking all facts in the Complaint as true and drawing all reasonable inferences in favor of Shirokov, as the Court must do at this stage, the Court finds that the Complaint alleges enough facts to make a plausible claim that Achte joined in the alleged copyright scheme or at least rendered substantial assistance to the Dunlap Defendants with knowledge of the fraudulent purpose of the scheme.  Accordingly, the Court also recommends that the District Court deny Achte's motion to dismiss the conspiracy and aiding and abetting claims against it.

GuardaLey stands in different footing.  The only allegations against GuardaLey are that: (1) GuardaLey monitors and records online instances of copyright infringement (Complaint, ¶ 4); (2) GuardaLey is a partner with DGW in managing USCG (Complaint, ¶ 38); (3) at least one of the managers of USCG, Benjamin Perino, is also a manager of GuardaLey (Complaint, ¶ 73); and (4) Achte engaged USCG and, in turn, USCG retained GuardaLey to document instances of purported infringement of Achte's copyright in the motion picture Far Cry.  (Complaint, ¶ 133). Shirokov does not allege that GuardaLey had any role in the filing of Achte's copyright registration application, in the filing of the Achte Lawsuit, or in the drafting or sending of the Letter.  He does not allege that GuardaLey made any representations to him.  In sum, the

Defendants did not move to dismiss the fraud and fraudulent omissions/nondisclosure claims (Counts 1 and 2) on the basis that they fail to state a claim.

Complaint sets forth no facts, apart from conclusory allegations, that GuardaLey entered into any agreement with the other defendants in connection with the alleged copyright scheme, or that GuardaLey knew about the copyright scheme.  Therefore, the Court finds that Shirokov has failed to state a claim of civil conspiracy or aiding and abetting against GuardaLey.[15]

Accordingly, the Court recommends that the District Court dismiss Counts 3, 5 and 13 against GuardaLey but not against the remaining defendants.

7.      *Shirokov's Claims Of Fraudulent And Negligent Misrepresentation Survive Against The Dunlap Defendants And Achte But Not Against GuardaLey*

Shirokov brings a number of claims based on the defendants' alleged misrepresentations and failure to provide certain information: fraudulent misrepresentation (Count 1), fraudulent omission/nondisclosure (Count 2), and negligent misrepresentations and omissions (Count 8). GuardaLey has moved to dismiss those counts on the basis that the Complaint does not allege that GuardaLey made any representations to Shirokov or any class member.  (Docket No. 44 at 23-24).  Although the Dunlap Defendants and Achte have moved to dismiss the entire Complaint on a number of grounds, they have not moved to dismiss Counts 1 and 2 on the basis that the Complaint fails to state a claim for fraudulent misrepresentations or fraudulent omissions.[16]

---

[15] In his opposition to GuardaLey's  motion to dismiss, Shirokov requests leave to amend the Complaint "as needed" to incorporate recent information that he alleges provides sufficient basis for GuardaLey's liability "if this court deems it necessary."  (Docket No. 56 at 24).  The Court notes that Shirokov has twice amended his Complaint in this action, and that he could have amended it as of right within 21 days of GuardaLey's filing of its motion to dismiss.  See Fed. R. Civ. P. 15(a)(1)(B).  In any event, there is no present motion to amend the Complaint and all that is before this Court are certain specified motions.

[16] Although Achte states in its motion that all claims related to misrepresentations and omissions, including Counts 1 and 2 of the Complaint fail to state a claim, it provides no basis for the dismissal of the fraudulent misrepresentation claims.  (Docket No. 48 at 21).  It simply states that it "adopts and incorporates herein the additional grounds for dismissal of the misrepresentation and omission claims that are presented in Part III(G) of DGW's Memorandum of Law (Document No. 29 at pp. 24-26)."  Id.  However, DGW and the Dunlap Defendants did not move to dismiss Counts 1 and 2 on the basis that they fail to state a claim.

They have moved to dismiss the negligent misrepresentation claim on the basis that they owe no duty to Shirokov.  (Docket No. 29 at 31-33; Docket No. 48 at 21).

To state a claim of fraud under Massachusetts law, the plaintiff must show that the defendants "made a false representation of a material fact with knowledge of its falsity for purposes of inducing the plaintiff to act thereon, and that the plaintiff actually relied on the representation."  Platten v. HG Bermuda Exempted, Ltd., 437 F.3d 118, 132 (1st Cir. 2006) (citing Slaney v. Westwood Auto, Inc., 366 Mass. 688 (1975)).  For a claim of misrepresentation, the plaintiff must show that the defendants (1) made false statements of material fact (2) to induce the plaintiff to settle the copyright claims, and (3) that the plaintiff reasonably relied on those statements to his detriment.  Id. (citations omitted).

GuardaLey is correct that the Complaint fails to state a claim against it under Counts 1, 2 and 8 of the Complaint.  (Docket No. 44 at 23-24).  The Complaint contains no allegations of any representations by GuardaLey to Shirokov or any class member.  There is no allegation that GuardaLey made any representations with respect to the copyright registration for Far Cry or brought or threatened to bring a lawsuit against Shirokov or anyone else.  There is simply no allegation that GuardaLey made any statement to Shirokov upon which he could have relied.[17]

_____

At oral argument, counsel for the Dunlap Defendants suggested that they did not move to dismiss Counts 1 and 2 because of the twenty-page limit on legal briefs.  However, the District Court granted them leave to file a brief in support of their motion to dismiss of thirty-five pages. (Docket No. 25).  Under the circumstances, thirty-five pages was more than sufficient to set forth any arguments in support of their motion to dismiss, including any arguments regarding Counts 1 and 2.  In the alternative, the Dunlap Defendants could have asked the District Court for a longer page limit.

[17] Although Shirokov alleges that all of the defendants "made knowingly false statements in court concerning the copyright, the remedies available to Achte, and/or the basis for Achte's claims of jurisdiction over members of the Class, including Shirokov" (Complaint at ¶ 386), this is no more than a formulaic recitation of the elements of the cause of action in Count 13.  Despite very detailed factual allegations in the rest of the Complaint with respect to the other defendants,

The only basis for liability against GuardaLey appears to be that of joint liability under conspiracy or aiding or abetting theories.  As discussed above, the Complaint fails to state a claim against GuardaLey under those theories.  Accordingly, Shirokov has not stated a claim against GuardaLey under Counts 1, 2 or 8 of the Complaint.

The Dunlap Defendants move to dismiss the negligent misrepresentation and omissions claim on the basis that the defendant attorneys owed Shirokov no duty because there was no attorney-client relationship.  (Docket No. 29 at 31).  However, the Dunlap Defendants appear to confuse the torts of negligence and negligent misrepresentation.  In their brief, the Dunlap Defendants only cite to cases regarding negligence and/or legal malpractice.  (Docket No. 29 at 31-32).  Those cases are inapposite.

Generally, negligent misrepresentation does require privity between the parties.  In re Bank of Boston Corp. Securities Litig., 762 F. Supp. 1525, 1536 (D. Mass. 1991).  Absent privity, however, a plaintiff can state a claim for negligent misrepresentation so long as the defendant had actual knowledge that its statements were going to be used and relied on by the plaintiff.  Id.; Craig v. Everett M. Brooks Co., 351 Mass. 497, 501 (1967); Bamberg, 236 F. Supp. 2d at 91 (citations omitted).  In addition, a lawyer may held liable for negligent misrepresentation to a nonclient where he or she knows that his or her representation will be relied upon by the nonclient.  Nova Assignments, Inc. v. Kunian, 77 Mass. App. Ct. 34, 38 (2010); Kirkland Constr. Co. v. James, 39 Mass. App. Ct. 559, 562-63 (1995).

---

Shirokov did not allege anywhere in the Complaint what false statements were made by GuardaLey.  Again, other than the allegation that GuardaLey tracked the IP addresses of alleged infringers and provided that information to the other defendants, Shirokov has not made any factual allegations supporting GuardaLey's involvement in the alleged copyright scheme.  See Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, "although mere nondisclosure by itself generally will not support a cause of action for negligent misrepresentation, it is well settled under Massachusetts law that 'a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party.'" Barden v. HarperCollins Publishers, Inc., 863 F. Supp. 41, 43 (D. Mass. 1994) (internal citations omitted).  Here, Shirokov has alleged that the Dunlap Defendants made a number of false statements to him and others, including statements regarding the potential fees that may be incurred in connection with the defense of a copyright claim and statements regarding Achte's rights and the remedies Achte was entitled to receive were it to prevail on its claims.  (Complaint, ¶¶ 337, 339).  He also alleges that the information provided to him and other class members was materially incomplete.  (Complaint, ¶ 337).  At this stage of the litigation, the Court is not deciding liability but merely whether the Complaint contains enough allegations to state a plausible claim.  The Dunlap Defendants grounds for dismissal of the negligent misrepresentation claim are incorrect and, accordingly, this Court recommends that the District Judge deny the Dunlap Defendants' and Achte's motion to dismiss with respect to the negligent misrepresentation claim.

8. *Shirokov Has Failed To Allege A Sufficient Injury To Support A Claim Under RICO*

Defendants argue that Shirokov has no standing to bring a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") because he has not alleged an injury caused by racketeering activity.  (Docket No. 29 at 26-27; Docket No. 44 at 24-25; Docket No. 48 at 22).  This Court agrees.

RICO creates a private right of action for individuals suffering an injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).  An essential element of a RICO claim is

an injury to business or property.  See Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 987 (2010).  "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"  Id. at 989 (quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).  "Proximate cause for RICO purposes . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'"  Id.  "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient."  Id.

The Complaint alleges that the defendants' copyright scheme caused damages to the class members in the form of payment of inflated settlements and/or related expenses in defending themselves against the copyright scheme.  (Complaint, ¶ 324-325).  However, Shirokov alleges that he did not pay anything to the defendants in response to the Letter.  Instead, Shirokov alleges that he incurred legal costs "in reliance on the false allegations of the Letter and in order to determine the merits of its claims."  (Complaint, ¶ 232).  Shirokov also alleges that he would have avoided those costs had the Letter been truthful.  (Id.).

Shirokov has not alleged sufficient facts to establish that he suffered an injury under RICO.  Shirokov claims that the defendants conspired to attempt to extort money out of individuals who may have infringed upon Achte's copyright.  He alleges that Achte, through DGW, knowingly and intentionally made false representations to the Copyright Office in order to obtain a copyright registration.  Then, based on the fraudulently procured copyright registration, DGW filed a copyright infringement claim and obtained a subpoena to obtain Shirokov and other Class members' identifying information.  Using that information, DGW sent the Letter to Shirokov and other Class members in an effort to get Shirokov and the Class members to pay to settle the claims with the threat of statutory damages to which they knew

Achte was not entitled.  However, according to Shirokov's own allegations, he did not fall for

the defendants' alleged scheme:  he contacted an attorney, and afterwards did not pay to settle

the claims.  Instead, Shirokov filed this suit.

The only injury Shirokov alleges he suffered was the payment of legal fees to his attorney

to determine the validity of DGW and Achte's claims.[18]  (Complaint, ¶ 232).  The expenditure of

legal fees is ordinarily not considered an injury for RICO purposes, unless the legal fees were

expended as an "intended consequence" of a defendant's racketeering activities.  Lemelson v.

Wang Labs., Inc., 874 F. Supp. 430, 433 (D. Mass. 1994) (citations omitted);[19] see also Aramony

v. United Way of America, 969 F. Supp. 226, 233 (S.D.N.Y. 1997) ("A plaintiff's prior

expenditure on legal fees is only a sustainable RICO injury where defendant's underlying

wrongful acts contemplate the victim responding in court.").  Here, as alleged, the intended

---

[18] Although Shirokov argues that the attorneys' fees incurred in this action are an injury
sufficient to confer Article III standing (an argument that this Court rejected), he does not argue
that attorneys' fees in this action are sufficient to satisfy the RICO injury requirement.  In any
event, such an argument would also be wrong.  See, e.g., Walter v. Palisades Collection, LLC,
480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) (citation omitted) ("It would be illogical to allow a
plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney
to file the RICO action.  RICO's injury requirement would be a nullity if paying an attorney to
initiate the RICO action itself sufficed as damage.").

[19] Shirokov cites this case as supporting his argument that the legal fees he spent in investigating
the defendants' claims are sufficient to satisfy the RICO injury requirement.  (Docket No. 32 at
34; Docket No. 77 at 13).  In Lemelson, the Court found that the costs incurred in investigating
and defending vexatious litigation constitute a sufficient RICO injury to survive a motion to
dismiss.  874 F.Supp. at 433.  However, that case is distinguishable.  First, the parties were
competitors and the expenditure of attorneys' fees by the victim was an intended consequence of
the alleged racketeering scheme.  Id. at 432-33.  Here, the expenditure of attorneys' fees is not
an intended consequence, but a byproduct, of the defendants' alleged scheme: the intended
consequence was the payment of settlements to the defendants.  (Complaint at ¶¶ 324-325).
There are no allegations that the object of the defendants' action was the expenditure of legal
fees.  The object of the alleged scheme was the payment of settlement amounts.  Second, that
case was decided prior to Iqbal under the more lenient Rule 12(b)(6) standard of Conley v.
Gibson, 355 U.S. 41 (1957).  Id. at 433 ("I hold that the costs incurred in investigating and
defending that litigation are a sufficient RICO injury to satisfy the indulgent pleading
requirements of Rule 12(b)(6).").

consequence of the racketeering activities was the payment of "inflated settlements." (Complaint, ¶ 324-325).  While he may have spent money in the form of attorneys' fees in order to determine whether DGW and Achte's claims had any merit, those legal fees were not proximately caused by the defendants' alleged actions.  He has not alleged that he incurred any fees in connection with the Achte Lawsuit itself, that he or his attorney entered an appearance in that case or that he did anything to defend Achte's claims against him.  The object of the defendants' alleged wrongful is not a response in court and there is no allegation that the defendants intend or prefer that the alleged targets obtain legal representation and incur attorneys' fees.[20]  Indeed, the alleged copyright scheme works because the victims generally settle the claims in order to avoid responding in court.  See, e.g., Sanchez v. Triple-S Mgmt. Corp., 492 F.3d 1, 14 (1st Cir. 2007) ("The plaintiffs cannot press a RICO claim based on attempts at extortion that did not succeed in harming them.").  Accordingly, the Court finds that Shirokov has failed to state a RICO claim.[21]

Because the Court finds that Shirokov's RICO claim fails, it also finds that his conspiracy to violate RICO must fail as well.  "[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails."  Efron v. Embassy Suites

---

[20] Although the Letter encourages class members to obtain legal representation, the object of the scheme was not the incursion of legal fees by class members.  (Complaint, ¶¶ 324-25; Ex. N to Complaint).

[21] Although this Court has found that Shirokov has alleged an injury sufficient to confer him standing under Article III of the Constitution (see Section III(B)(2) above) and an injury sufficient to state a Chapter 93A claim (see Section III(B)(14) below), the RICO statute sets forth additional requirements for a showing of injury.  See DeMauro v. DeMauro, 115 F.3d 94, 96 (1st Cir. 1997) ("There is plainly a case or controversy under Article III; but the statutory precondition of injury to business or property must also be met."); In re Neurontin Mktg. and Sales Practices Litig., 677 F. Supp. 2d 479, 497 (D. Mass. 2010) ("A showing of injury is generally necessary for the purposes of Article III standing . . ., but the RICO statute sets forth additional requirements for a showing of injury.").

(Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000).  This Court therefore recommends that the District Court dismiss Counts 6 and 7 of the Complaint.

9.      *Fraud On The Court Is Not An Independent Cause Of Action*

Count 9 of the Complaint asserts a claim for fraud on the court.  "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."  Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989).

The defendants argue that fraud on the court is not an independent cause of action under Massachusetts law and should therefore be dismissed.  (Docket No. 29 at 33).  However, fraud on a federal court is governed by federal common law.  See Davidson v. Cao, 211 F. Supp. 2d 264, 276-77 (D. Mass. 2002) (citing Aoude, 892 F.2d at 1117-18) ("Fraud on the court . . . has its genesis in the federal court's inherent power to regulate and control abusive litigation tactics effecting the institutional integrity of the court.").  Nevertheless, the result is the same.

Fraud on the court is not a recognized independent cause of action in the First Circuit. See Barrett v. Ambient Pressure Diving, Ltd., No. 06-cv-240-SM, 2008 WL 4280360, at * 4 (D.N.H. Sept. 16, 2008).  The cases cited by Shirokov do not universally support his argument to the contrary.  In Premier Homes & Land Corp. v. Cheswell, Inc., the court granted the defendant's motion to dismiss the complaint based on fraud on the court and then assessed attorneys' fees against the plaintiff as a sanction.  240 F. Supp. 2d 97, 99-100 (D. Mass. 2002).  In Leber-Krebs, Inc. v. Capitol Records, the circumstances were inapposite and involved a

court's ability to vacate its own judgment.  779 F.2d 895, 900-01 (2d Cir. 1985).[22]  Finally, in

Canty v. Chase Home Finance, LLC, the alleged fraud on the Court had been perpetrated in the

same court.  2010 WL 1880710, at *4 (N.D. Ala. May 7, 2010).[23]

Under federal common law, fraud on the court may form the basis for a motion to dismiss

or for seeking relief from judgment.  See Davidson, 211 F. Supp. 2d at 277.  Here, Shirokov does

not seek to have the Achte Lawsuit dismissed.  Neither is there a judgment against Shirokov in

the Achte Lawsuit that could form the basis for an action seeking relief from judgment.

Accordingly, the Court recommends that the District Court dismiss Count 9 of the

Complaint.

> 10.     *Shirokov May Seek A Declaration That Achte's Copyright*
>         *Is Invalid Based On Fraud On The Copyright Office*
>         *But He May Not Seek Damages Against The Defendants*

Shirokov has brought a claim for fraud on the Copyright Office (Count 11).  He seeks a

declaration that Achte's copyright in Far Cry is invalid.  (Complaint, ¶ 373).  He also seeks

damages from the defendants.  Id.  The defendants seek dismissal of this claim on the grounds

that fraud on the Copyright Office is not a recognized independent cause of action.  (Docket No.

29 at 34; Docket No. 44 at 21; Docket No. 48 at 20-21).  The Court finds that although Shirokov

---

[22] In that case, the plaintiff obtained an ex parte attachment order against the debtor's property in attempts to garnish assets of the debtor in the hands of a third party.  779 F.2d at 896.  The plaintiff alleged that its rights to enforce the judgment against the debtor were lost because the garnishee falsely denied holding any of the debtor's property.  Id.  As a result, when the plaintiff moved to confirm the attachment, the district court denied the motion.  The plaintiff then filed an action against the defendant claiming that defendant's failure to reveal debtor's property in its hands was a damaging lie constituting fraud on the court and causing it damage.  Id.  The Second Circuit reversed the district court's order dismissing the action and remanded the case for an evidentiary hearing to examine whether the defendant's garnishee statement was fraudulent.  Id. at 901.  If so, the district court was free to enter a judgment in the amount plaintiff would have obtained if the defendant had filed an accurate statement.  Id.

[23] Although that case states that fraud on the court may be an independent cause of action, this Court declines to follow it.

may seek a declaration that Achte's copyright is invalid based on fraud on the Copyright Office, he cannot seek damages against the defendants on that basis.

A party seeking to establish fraud on the Copyright Office must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those representations.  Lennon v. Seaman, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citations omitted).  Some courts also require that a party alleging fraud on the Copyright Office prove that it has been prejudiced, or suffered some damage, as a result of the alleged fraud.  Id. (citations omitted).  Ordinarily, fraud on the Copyright Office is an affirmative defense to copyright infringement, not a cause of action.  Id. To the extent that courts have allowed infringers to assert such a claim, they have done so as a declaratory judgment action against the copyright holder.  See, e.g., Crew Knitwear, Inc. v. U.S. Textile Printing, Inc., No. 07-7658, 2009 WL 305526, at * 2-3 (C.D. Cal. February 6, 2009).

Here, in addition to declaratory relief, Shirokov seeks damages against the defendants for allegedly providing false information to the Copyright Office.  Claims for damages are not available to an alleged infringer who claims that the copyright holder committed fraud on the Copyright Office.  See, e.g., Chivalry Film Prods. v. NBC Universal, Inc., No. 05 Civ. 5627 (GEL), 2006 WL 89944, at *3 (S.D.N.Y. Jan. 11, 2006) (alleged infringer cannot state a claim for damages for fraud on the Copyright Office).  Accordingly, the Court recommends that the District Court dismiss Count 11 of the Complaint except to the extent that it seeks a declaration of invalidity against Achte.

11.    *Copyright Misuse Is Not An Independent Cause Of Action In This Circuit*

Count 12 of the Complaint asserts a claim of copyright misuse by which Shirokov seeks a declaration that Achte's copyright is invalid.  (Complaint, ¶ 383).  The defendants have moved to

dismiss this Count on the grounds that copyright misuse has not been recognized as an independent cause of action.  (Docket No. 29 at 35; Docket No. 44 at 21; Docket No. 48 at 20-21).  This Court agrees.

"Copyright misuse occurs when a copyright owner restrains competition in the sale of an item that is not within the scope of the privilege granted under the copyright." Broad. Music, Inc. v. Hampton Beach Casino Ballroom, Inc., No. CV-94-248-B, 1995 WL 803576, at *5 (D.N.H. Aug. 30, 1995) (citing Lasercomb Am. Inc. v. Reynolds, 911 F.2d 970, 975 (4th Cir. 1990)).  A party may prove copyright misuse by either proving (1) violation of the antitrust laws, or (2) that the copyright holder otherwise illegally extended its monopoly or violated the public policies underlying the copyright laws. Id.  Like fraud on the copyright office, copyright misuse is normally an affirmative defense to copyright infringement, not a cause of action.  See, e.g., Amaretto Ranch Breedables, LLC v. Ozimals, Inc., 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011).  Unlike a claim of fraud on the Copyright Office, a finding of copyright misuse does not invalidate the copyright but precludes its enforcement during the period of misuse. Id. (citing Practice Mgmt. Info. Corp. v. Am. Med. Ass'n, 121 F.3d 516, 520 (9th Cir. 1997)).

Although the First Circuit has not rejected the defense of copyright misuse, it has not yet recognized it either. See Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 21 n. 7 (1st Cir. 2005).  Other circuits have recognized misuse of a copyright as a defense to infringement. See Broad. Music, Inc., 1995 WL 803576 at *8 n. 7 (collecting cases).

Shirokov argues that copyright misuse can be brought as a claim for affirmative declaratory relief.  (Docket No. 32 at 38-40).  The courts that have addressed this issue are divided on the matter.  Some courts have found that copyright misuse may not be affirmatively asserted as a declaratory judgment action because pleading an affirmative defense as an

independent claim seeks an illegitimate litigation advantage.  See Nielsen Co., LLC v. Truck Ads, LLC, No. 08 C 6446, 2011 WL 221838, at * 7 (N.D. Ill. January 24, 2011) (collecting cases); see also Amaretto Ranch Breedables, LLC, 790 F. Supp. 2d at 1033 ("There is no consensus on whether copyright misuse can be brought as an independent claim (as opposed to as an affirmative defense) and district courts come down on both sides of the issue.").  Other courts have recognized copyright misuse as a claim, noting the analogous doctrine of patent misuse and recognizing that defendants may have reasons for seeking a declaration of their rights aside from the infringement claim they are defending. See Nielsen Co., LLC, 2011 WL 221838 at *7 (collecting cases).

This Court agrees with those courts that have found that copyright misuse may not be brought as an independent cause of action, especially in light of the fact that the First Circuit has not yet recognized the doctrine even as a defense to copyright infringement claims.[24] Accordingly, this Court recommends that Count 12 be dismissed.

### 12.   Shirokov Has Failed To State A Claim For Abuse Of Process And Malicious Prosecution

The defendants argue that Shirokov has not pled facts which would establish abuse of process (Count 10) or malicious prosecution (Count 19) (Docket No. 29 at 36-38; Docket No. 44 at 21; Docket No. 48 at 21).  The Court agrees.

To sustain an abuse of process claim, Shirokov must establish that "process was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"  Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010) (quoting Quaranto v. Silverman, 345 Mass. 423, 426

---

[24] In addition, the Court notes that Shirokov seeks a declaration of invalidity based on copyright misuse, which is not available to him under such a claim.  Amaretto Ranch Breedables, LLC, 790 F. Supp. 2d at 1033.

(1963)).  Thus, the three elements of abuse of process are (1) "process" was used, (2) for an

ulterior or illegitimate purpose, (3) resulting in damage.  Id. (citations omitted); Gutierrez v.

Mass. Bay Transp. Auth., 437 Mass. 396, 407 (2002) (citations omitted); Jones v. Brockton Pub.

Mkts., Inc., 369 Mass. 387, 389 (1975).

"Process" refers to "the papers issued by a court to bring a party or property within its

jurisdiction."  Jones, 369 Mass. at 390.  Massachusetts courts have limited process to three types:

writs of attachment, the process used to institute a civil action, and the process related to the

bringing of criminal charges.  Id. at 389-90.

Here, Shirokov has not alleged sufficient facts to support an abuse of process claim.

Process never issued against him because he was never named in the Achte Lawsuit.  The term

process does not encompass a courtesy copy of the complaint and a settlement demand.  See

Complaint at ¶ 359 ("Defendants provided (without serving) the operative compliant to the class

members by mailing them letter that direct them to the *Far Cry* website, where the complaint

was posted.").  Accordingly, he has failed to state a claim for abuse of process.

Similarly, he cannot maintain a malicious prosecution claim.  In order to state a claim for

malicious prosecution, Shirokov must allege that an action was brought maliciously and without

probable cause and was terminated in his favor.  Hubbard v. Beatty & Hyde, Inc., 343 Mass. 258,

261 (1961); MHA Fin. Corp. v. Varenko Inv. Ltd., 583 F. Supp. 2d 173, 181 (D. Mass. 2008)

(citing Chervin v. Travelers Ins. Co., 448 Mass. 95, 103 (2006)).

Unlike abuse of process, service of process is not an element of a malicious prosecution

claim.  MHA Fin. Corp., 583 F. Supp. 2d at 181.  "An action can be 'commenced,' for purposes

of a malicious prosecution claim, by the filing of a complaint without the service of process."  Id.

Nevertheless, Shirokov has failed to state a malicious prosecution claim.  No action was ever

commenced against Shirokov.  Although he presumably was one of the John Doe Defendants, he was never named in the Achte Lawsuit.  See Cuddy v. Sweeney, 7 Mass. App. Ct. 880 (1979) (plaintiff who was never a party to a lawsuit could not show that a claim was brought against her which was terminated in her favor).

Even if the Court were to hold that being one of the John Does is sufficient to establish that an action was commenced against Shirokov, he also could not establish that the action terminated in his favor.  Achte dismissed its claims against most of the John Doe Defendants, including Shirokov, without prejudice.  Thus, Achte could refile copyright infringement claims against Shirokov.  As such, the Court finds that the Achte Lawsuit was not terminated in Shirokov's favor.  Cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) (dismissal without prejudice does not operate as an adjudication upon the merits).

Accordingly, the Court recommends that the District Court dismiss Counts 10 and 19 of the Complaint.

13.     *Shirokov's Claims Of Unjust Enrichment, Money Had And Received, Conversion, And Constructive Trust Fail Because He Has Not Alleged That He Paid Any Money To The Defendants*

Shirokov brings four claims based on the alleged settlement payments by some members of the proposed class.  These claims are as follows: unjust enrichment (Count 14); money had and received (Count 15); conversion (Count 16); and constructive trust (Count 17).  Shirokov states that he has not paid to settle any claims.  (Complaint, ¶ 232).  Accordingly, defendants argue that because payment of funds from Shirokov to one or more of the defendants is an element of each of these claims, all of these claims are subject to dismissal for failure to state a claim.  (Docket No. 29 at 39-40; Docket No. 48 at 21-22; Docket No. 44 at 24).  Shirokov does not defend these claims on the merits but argues that he has sufficient standing to maintain these

counts because he is not required to have standing to bring every count as long as he has standing for multiple counts.[25]   (Docket No. 32 at 17).   The Court finds that Shirokov has failed to state a claim under these counts.

In Massachusetts, in order for a party to prevail on a claim for unjust enrichment, there must be "unjust enrichment of one party and unjust detriment to another party."   Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (internal citations omitted).   Unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."   Id.   In addition, as unjust enrichment is an equitable remedy, it is not available to parties with an adequate remedy at law.   See Santage v. Tower, 64 Mass. App. Ct. 324, 329 (2005).   Here, there is no evidence of a benefit conferred upon the defendants by Shirokov. Without proof of a benefit, it is not necessary to analyze the remaining elements of unjust enrichment.   See, e.g., Kerr v. Vince, No. 07-30021-MBB, 2010 WL 1416511, at *19 (D. Mass. April 1, 2010).

---

[25]   Shirokov's claim in this respect is wrong, particularly because he is the only named plaintiff. At this stage of the litigation, the District Court must dismiss his claims if he has not stated a cause of action on his own right.   See Katz v. Pershing, LLC, __F.3d __, 2012 WL 612793, at * 3 (1st Cir. 2012) (citation omitted) ("Because no class was certified below, we evaluate only whether the plaintiff herself has constitutional and statutory standing to pursue the action."); Booklocker.com, Inc. v. Amazon.com, Inc., 650 F. Supp. 2d 89, 97 n. 3 (D.Me. 2009) ("As a consequence of the precertification nature of the matter, for the purposes of assessing the pending motion to dismiss, 'the potential claims of putative class members other than the named plaintiff are simply not before the court.'") (citations omitted); Simonet v. Smithkline Beecham Corp., 506 F. Supp. 2d 77, 81 (D.P.R. 2007) ("A named plaintiff who cannot establish her own case may not seek relief on behalf of other class members.") (citations omitted); Evans v. Taco Bell Corp., No. 04CV103JD, 2005 WL 2333841, at * 4 (D.N.H. Sept. 23, 2005) ("To be sure, [plaintiff] has filed the case as a putative class action …   But unless and until the court certifies such a class, the potential claims of putative class members other than the named plaintiff are simply not before the court.") (citations omitted).

Money had and received is essentially the same claim as unjust enrichment except that unjust enrichment is not limited to enrichment by money or its equivalent.  <u>Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.</u>, 470 F.3d 14, 17 n. 2 (1st Cir. 2006).  Again, the Complaint contains no allegations that the defendants received any money from Shirokov.

In order to state a claim for conversion, a plaintiff must show:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the [plaintiff's] personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

<u>Evergreen Marine Corp. v. Six Consignments of Frozen Scallops</u>, 4 F.3d 90, 95 (1st Cir. 1993); <u>see</u> <u>In re Brauer</u>, 452 Mass. 56, 67 (2008).  Shirokov has not alleged that the defendants exercised control or dominion over any of his property.  Therefore, Count 16 fails.

Finally, a constructive trust is not a theory of liability but rather an equitable remedy fashioned by courts to right a perceived wrong.  <u>See</u> <u>Maffei v. Roman Catholic Archbishop of Bos.</u>, 449 Mass. 235, 246-47 n. 23 (2007).  "A constructive trust is 'a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property . . . was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.'"  <u>Cox v. Cox</u>, 247 B.R. 556, 571 (Bankr. D. Mass. 2000) (quotations omitted).  In order to establish grounds for the imposition of a constructive trust, the plaintiff must be able to trace the proceeds or profits of the corpus.  <u>Id.</u> (citation omitted).  Here again, there is no allegations that the defendants obtained any property from Shirokov and thus, he has not alleged sufficient facts that would entitle him to the imposition of a constructive trust.

Accordingly, the Court recommends that the District Court dismiss Counts 14 to 17 of the Complaint.

14.     *The Complaint States A Claim Under Chapter 93A*

Shirokov asserts a claim in Count 18 for unfair and/or deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 9 ("Chapter 93A"). The defendants have moved to dismiss this count on the grounds that the defendants' alleged actions were not in connection with trade or commerce as required to support a claim under Chapter 93A.  (Docket No. 29 at 40-41; Docket No. 48 at 22).  In addition, the defendants argue that Shirokov cannot maintain a Chapter 93A action because he has not alleged an actual loss. (Docket No. 29 at 41-42; Docket No. 44 at 27; Docket No. 48 at 22).  This Court disagrees.

Chapter 93A prohibits "unfair or deceptive acts or practices in the <u>conduct of any trade or commerce</u>."  Mass. Gen. Laws ch. 93A, §2(a) (emphasis added).  A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer, and (3) a causal connection between the defendant's deceptive act or practice and the consumer's injury.  <u>Casavant v. Norwegian Cruise Line, Ltd.</u>, 76 Mass. App. Ct. 73, 76 (2009), <u>aff'd</u>, 460 Mass. 500 (2011) (citing G.L. c. 93A, § 9); <u>Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc.</u>, 445 Mass. 790, 797 (2006)). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'"  <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law."  <u>Id.</u> at 54 (quoting <u>Ahern v. Scholz</u>, 85 F.3d 774, 797 (1st Cir. 1996)).

Though Chapter 93A provides a broad remedy, it is only directed at unfair or deceptive acts that arose "in the course of trade or commerce."[26] St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 66 (1st Cir. 2001); (citing Lantner v. Carson, 374 Mass. 606, 607-08 (1978); First Enters., Ltd. v. Cooper, 425 Mass. 344 (1997)).  Thus, before liability may be imposed for an allegedly unfair or deceptive act, the plaintiff must establish that the act occurred in the conduct of trade or commerce.  "'Unfair or deceptive acts or practices' . . . can only form the basis of a ch. 93A claim if those acts 'are perpetrated in a business context.'"  Id.  To determine whether a defendant is engaged in trade or commerce for Chapter 93A purposes, the court should consider (1) the nature of the transaction; (2) the character of the parties involved; (3) the activities engaged in by the parties; and (4) whether the transaction was motivated by business or personal reasons.  Feeney v. Dell,  Inc., 454 Mass. 192, 212 (2009) (citations omitted).

The defendants argue that any allegedly unfair or deceptive acts were not perpetrated in a business context because there was no commercial relationship between the parties and their only contacts occurred in the context of litigation.  The Dunlap Defendants specifically argue that an attorney or law firm may not be liable to his client's adversary under Chapter 93A for

---

[26] The statute defines trade and commerce as:

> . . . the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security  . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

M.G.L. c. 93A, § 1(b).

acts performed on the client's behalf.[27]  (Docket No. 29 at 33-34).  The defendants are correct

that the mere filing of litigation, without more, does not constitute trade or commerce.  See

Arthur D. Little, Inc. v. East Cambridge Sav. Bank, 35 Mass. App. Ct. 734, 743 (1994).  The

Dunlap Defendants are also correct that, ordinarily, a lawyer is not liable under Chapter 93A for

acts performed on the client's behalf.  Id.; First Enter., Ltd. v. Cooper, 425 Mass. 344, 347

(1997).  However, the allegations here are more textured: Shirokov's Chapter 93A claim is based

on allegations that the defendants were engaged in a scheme to defraud him and others and used

the Achte Lawsuit to add a veneer of legitimacy to their claims that Achte was entitled to

statutory damages.  (Complaint, ¶¶ 12-15, 156-57; see generally id. at ¶¶ 195-217).  In addition,

Shirokov alleges that the Dunlap Defendants were not only knowing participators in the alleged

scheme, but in fact designed it.  (Complaint, ¶¶ 2-3, 6-8, 72, 76-78).  Under those circumstances,

the Court cannot conclude that Shirokov has failed to allege enough facts to establish the trade

and commerce requirement.

Indeed, the First Circuit has held that conduct in the context of litigation may form the

basis for a Chapter 93A claim.  In Ellis & Ellis, a workers' compensation insurer brought suit

against an attorney and his law firm who had represented a claimant, asserting, inter alia, a

Chapter 93A claim.  262 F.3d at 56.  The plaintiff argued that the attorney had knowingly

concealed the claimant's prior back injury.  Id. at 60-61.  The defendants argued that any

misrepresentations were made in the context of litigation and, as such, were not made in the

conduct of trade or commerce and could not form the basis for a Chapter 93A claim.  After the

conclusion of the plaintiff's case-in-chief at trial, the defendants moved for judgment as a matter

of law and the District Court granted the motion.  Id. at 61.  The District Court based its decision

---

[27] Shirokov argues that not all defendants are attorneys and therefore may not avail themselves of
this argument.  (Docket No. 32 at 33, 43).

on the finding that any allegedly unfair acts were not perpetrated in a business context:  "In this

case, any representations made by the defendants to St. Paul were pursuant to a legal action,

namely the adversarial workers' compensation litigation in which Formoso's benefits were

determined."  Id. at 67.

The First Circuit reversed the District Court's decision.  In so doing, the First Circuit

stated:

> We disagree with the court's characterization of the events at issue here.  To be
> sure, the 'adversarial workers' compensation litigation' formed a backdrop to
> Ellis's actions.  The jury could have easily concluded, however, that those actions
> were not vigorous advocacy in pursuit of Formoso's workers' compensation
> claim.  Instead, the jury could have found that Ellis used the workers'
> compensation litigation to add a veneer of legitimacy to a fraudulent scheme to
> dupe St. Paul into paying benefits to which Formoso was not entitled.  Such a
> scheme affects trade or commerce and can be a basis for ch. 93A liability.

Id. at 67 (citations omitted).

In addition, an attorney or law firm may incur Chapter 93A liability to a nonclient or

adversary if it joins its client in marketplace communications to the adversary rather than merely

relays its client's positions, and those communications knowingly or carelessly turn out to be

false, misleading, and harmful.  See Kirkland Constr. Co. v. James, 39 Mass. App. Ct. 559, 561-

564 (1995) (reversing Rule 12(b)(6) dismissal of 93A claim against a lawyer and firm).  "In such

situations the attorney has arguably crossed from traditional representation into active

participation in trade and commerce.  If the attorney or law firm confines itself to the functions

of traditional representation, such as the commencement of litigation against the adversary or the

counseling about and drafting of testamentary documents, it has not acted in a 'business context'

or injected itself into trade or commerce so as to have Chapter 93A exposure."  Coggins v.

Mooney, No. Civ. A 94-0844, 1998 WL 156998, at *5 (Mass. Super. Apr. 3, 1998), aff'd, 431

Mass. 57 (2000).  Again, here the Complaint alleges that the Dunlap Defendants not only

knowingly made false representations on behalf of their clients but that they in fact designed the allegedly fraudulent copyright scheme described in the Complaint.  (Complaint, ¶¶ 2-3, 6-8, 72, 76-78).  Accordingly, the Court finds that the Complaint alleges sufficient facts to survive a motion to dismiss based on the trade or commerce requirement.

The Court also finds that Shirokov has sufficiently alleged an injury cognizable under Chapter 93A.  The defendants argue that the plaintiff cannot bring a claim under Chapter 93A because he claims no actual damages.  (Docket No. 29 at 34).  They further argue that the plaintiff must prove "reliance as 'an essential link in the proof of causation,'" and that he cannot do so because he has admittedly did not settle the Achte Lawsuit.  (Id.).  The Court disagrees.

As stated above, to state a claim under Chapter 93A, Shirokov must allege sufficient facts to establish an injury.  Casavant v.  Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011).  In addition, there must be a causal connection between the alleged deceptive act and the consumer's injury or loss.  Id.  "If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss—whether that loss be economic or noneconomic—the consumer is entitled to redress under our consumer protection statute."  Id. (quoting Hershenow, 445 Mass. at 802.).  However, contrary to the defendants' arguments, "the plaintiffs need not show proof of actual reliance on a misrepresentation in order to recover damages under G.L. c. 93A, but rather must show a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception."  Id. (quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 630-31 n. 12 (2008) (internal modifications omitted)); cf. Advanced Sys. Consultants Ltd. v. Eng'g Planning and Mgmt., Inc., 899 F. Supp. 832, 834 (D. Mass. 1995) (finding Chapter 93A violation and awarding attorneys' fees to target of unfair or deceptive act

or practice that incurred legal expenses in obtaining and defending injunctive relief to safeguard itself against economic loss).

Here, Shirokov has alleged that he was the target of a fraudulent scheme by the defendants.  Although he did not pay any money to the defendants as a result of receiving the Letter, he did consult an attorney and paid legal fees in connection with the attorney's review and evaluation of the Letter.  He is now worse off by having paid legal fees to evaluate the allegedly fraudulent claims.  For purposes of Chapter 93A, it would be reasonably foreseeable to the defendants that Shirokov could incur legal fees in evaluating the allegedly false claims. Indeed, the Letter invites its recipient to seek legal advice.  Accordingly, the Court finds that Shirokov has sufficiently alleged an injury and a causal connection between the injury and the allegedly deceptive conduct and recommends that the District Court deny the defendants' motions to the extent that they seek dismissal of Shirokov's Chapter 93A claims.

## IV.   RECOMMENDATION

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that the defendants' motions to dismiss be ALLOWED in part and DENIED in part as follows:

1.   This Court recommends that the District Judge dismiss all Counts of the Complaint Against GuardaLey;

2.   This Court recommends that the District Judge dismiss Counts 4, 6-7, 9-10, 12, 14-17, and 19 of the Complaint against the Dunlap Defendants and Achte;

3.   This Court recommends that the District Judge dismiss Count 11 of the Complaint to the extent that Shirokov seeks damages against the Dunlap Defendants and Achte; and

4.      Counts 1-3, 5, 8, 11 (to the extent that it seeks declaratory relief), 13, and 18 of

the Complaint should survive against the Dunlap Defendants and Achte.

V.      <u>REVIEW BY DISTRICT JUDGE</u>

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report

and Recommendation.  The written objections must specifically identify the portion of the

proposed findings, recommendations, or report to which objection is made, and the basis for such

objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court

of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation.  <u>See</u> <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1 (1st Cir. 1999);

<u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge
