UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12043-GAO

DMITRIY SHIROKOV,
Plaintiff,

v.

DULAP, GRUBB & WEAVER PLLC, U.S. COPYRIGHT GROUP, THOMAS DUNLAP,
NICHOLAS KURTZ, and ACHTE/NEUNTE BOLL KINO
BETEILIGUNGS GMBH & CO. KG,
Defendants.

ORDER
March 27, 2014

O'TOOLE, D.J.

The parties have jointly requested that the Court enter an agreed judgment in this case against Dunlap, Grubb & Weaver, PLLC ("DGW") in the amount of $3,179.52 plus reasonable costs and attorneys' fees, and an order dismissing with prejudice all claims against defendants US Copyright Group, Thomas Dunlap, and Nicholas Kurtz.[1] The parties have not agreed as to what should be awarded as reasonable attorneys' fees, and have asked the Court to determine that amount. Both sides have made submissions on that question.

This suit has had a protracted litigation history. The original complaint was filed in November 2010. The complaint was twice amended. The Second Amended Complaint contained nineteen counts spanning over a hundred pages. The essence of the complaint was that the defendants had identified individuals, including the plaintiff, who were believed to have infringed a copyright for a movie via internet use and had sent to each individual a settlement

---

[1] The Court was previously informed that Achte/Neutnte Boll Kino Beteiligungs GMBH & Co KG, filed for bankruptcy in Germany, has ceased operation, and been liquidated.

demand letter that was coercive and fraudulent. The plaintiff sought to represent a class of similarly situated individuals seeking compensatory damages, statutory and punitive damages, injunctive relief, as well as costs and attorneys' fees.

During the course of the litigation, the scale of the case was greatly reduced. First the Court, adopting the report and recommendation of a magistrate judge, dismissed one defendant and eleven of the nineteen counts. What remained were overlapping common law fraud claims, one count seeking declaratory relief for fraud on the copyright office, and one count for violation of the Massachusetts Consumer Protection Act, Massachusetts General Laws Chapter 93A ("Chapter 93A"). The scope of litigation was further reduced in March 2013 when the Court denied class certification. As pared down, the case was the individual claim of the named plaintiff against the law firm, associated copyright group and individual lawyers.

The amount of the agreed judgment is $1,059.84 in actual damages, trebled to $3,179.52 under Chapter 93A, plus reasonable attorneys' fees to be determined, as well as customary costs. The plaintiff's petition seeks $362,767 in fees. DGW argues that the amount claimed is excessive and suggests a much lower amount.

Success on a Chapter 93A claim allows for the collection of "reasonable attorney's fees." Mass. Gen. Laws ch. 93A, § 9(4). Under Massachusetts law, "[t]he basic measure of reasonable attorney's fees is a 'fair market rate for the time reasonably spent preparing and litigating a case.'" Stowe v. Bologna, 629 N.E.2d 304, 307 (Mass. 1994) (abrogated on other grounds); This is known as the "lodestar" method. Fontaine v. Ebtec Corp., 613 N.E.2d 881, 890 (Mass. 1993); Ross v. Cont'l Res., Inc., 899 N.E.2d 847, 861 (Mass. App. Ct. 2009) (Chapter 93A attorney's fees are determined by lodestar method). The results produced by the lodestar approach "should govern unless there are special reasons to depart from them." Stratos v. Department of Pub.

Welfare, 439 N.E.2d 778, 786 (Mass. 1982). In determining reasonable fees, "much is left to the discretion of the trial judge, for she typically is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." Killeen v. Westban Hotel Venture, LP., 872 N.E.2d 731, 737 (Mass. App. Ct. 2007) (internal quotations omitted).

The proper method for determining reasonable attorneys' fees under the lodestar approach was explained by the Supreme Judicial Court.

> The first component of the basic measure amount is the amount of time reasonably expended on the case. The judge should begin his inquiry with the amount of time documented by the plaintiff's attorney. Then the judge decides whether this amount of time was reasonably expended. . . . The second component of the basic measure amount is the amount of a reasonable hourly rate. This amount should be the average rate in the community for similar work by attorneys with the same years' experience.

Stowe, 629 N.E.2d at 307 (internal citations omitted). In this case, the plaintiff's attorneys are seeking fees for 1,024.50 hours worked at $409 dollars per hour for a total of $362,767. The real issue here is not the hourly rate but rather whether the number of hours expended is reasonable.

"In deciding whether the documented time was reasonably expended the judge may, in addition to considering the interests at stake, also consider many of the factors articulated in Linthicum v. Archambault, 379 Mass. 381, 388–389, 398 N.E.2d 482 (1979), i.e., the nature of the case and the issues presented, the time and labor required, the amount of damages involved, and the result obtained." Killeen, 872 N.E.2d at 738.

In determining a fee award the court, "should not only consider the plaintiff's financial interests at stake but also the plaintiff's other interests sought to be protected by the statute in question and the public interest in having persons with valid claims under the statute represented by competent legal counsel." Stowe, 629 N.E.2d at 307. Consequently, success on a claim, although "*de minimis* as to the extent of relief[,] ... represent[s] a significant legal conclusion

3

serving an important public purpose," Diaz–Rivera v. Rivera–Rodriguez, 377 F.3d 119, 125 (1st Cir.2004), the fee award need not be proportionate to the damages recovered. See id.

However, the court must be realistic in assessment of the benefits the litigations actually produced. Killeen, 872 N.E.2d at 739. "Compensable hours may be reduced if the time spent was wholly disproportionate to the interests at stake." Stratos, 439 N.E.2d at 786. Furthermore, no fee should "be awarded for services [employed pursuing an] unsuccessful claim," Killeen, 872 N.E.2d at 739 (quoting Hensley v. Eckerhart, 461 U.S. 424 at 435 (1983)), unless "the unsuccessful claims are sufficiently interconnected with [the] claims on which [the] plaintiff prevails." Id. (quoting Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 842 (1st Cir.1990)).

The fee award requested by plaintiff's counsel does not bear a reasonable relationship to what was at stake in this case to either the individual plaintiff or the public generally. Counsel tries to defend the requested award arguing the complex nature of the case, the significant time required to obtain the result, and that the result had a greater impact then just what was at stake for the plaintiff.

The case that succeeded, the plaintiff's individual claim, was not complex. Litigating the class claims might have been, but they were not litigated because the Court determined the action could not be maintained as a class action. It is appropriate to recognize that some effort went into the attempt to seek a class-wide remedy, but awarding any substantial amount of fees for a failed theory is not appropriate. What remained after denial of class certification was a straightforward fraud case based on a single communication from the defendants to the plaintiff. The only possible "complex" legal issue resolved favorably to the plaintiff by the agreed judgment was the question whether lawyers may be held liable under Chapter 93A for acts performed on a client's behalf. That is not a matter that required a thousand hours to prepare and litigate.

The plaintiff also argues that the fees sought were justified because they achieved a significant benefit for the plaintiff. That is a significant overstatement. The plaintiff's individual stake in this litigation was very low. The letter sent by the defendants that provoked this suit demanded $1,500 from the plaintiff to settle the copyright claim asserted. In this suit, the plaintiff sought as damages the legal fees he incurred in seeking advice about the letter, which amounted to only $1,059.84.

The plaintiff finally argues that the result obtained benefited the proposed class members and the public as a whole by deterring improper copyright litigation. This is right to a limited degree. Abusive copyright litigation can be a problem, and the plaintiff's success here may well serve as a deterrent to improper demands by copyright holders. This effect is a reason why treble damages are available, and here awarded, under Chapter 93A. Because of the small amount of the actual damages, trebling in this case may not adequately serve the deterrent purpose, and some additional assessment in the way of attorneys' fees is therefore proper. But a fee that is 300 times the actual damages is a bit much. See Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs v. Ray Haluch Gravel Co., --F.3d--, 2014 WL 930829, at *4 (1st Cir. March 11, 2014) (proportionality to the total damages a plaintiff recovers is a relevant factor that may be considered in determining the amount of attorney fees to be awarded).

The defendant suggests an award of $31,795 which is ten times the amount of the settlement (and thirty times the actual damages). All things considered, that is a reasonable amount and I adopt it.

The Court has also reviewed the costs submitted by the plaintiff's counsel and the defendant's objections to those costs. The costs submitted are reasonable, including the costs for

the translation of the pleadings and the cost of service on DGW. Costs in the amount of $4,935.43 will be awarded as part of the judgment.

For the reasons stated herein, Plaintiff's Request for Entry of Judgment against Dunlap, Grubb & Weaver, PLLC and Request to Dismiss US Copyright Group, Thomas Dunlap and Nicholas Krutz with Prejudice (dkt. no. 130) is GRANTED. Judgment shall enter against Dunlap, Grubb & Weaver, PLLC in the amount of $3,179.52, plus attorneys' fees in the amount of $31,795, as well as the customary costs.

It is SO ORDERED.

                                            /s/ George A. O'Toole, Jr.
                                             United States District Judge